TONY LOPRESTI, SBN 289269
County Counsel
KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
RAPHAEL N. RAJENDRA, SBN 255096
HANNAH M. GODBEY, SBN 334475
Deputy County Counsels
70 West Hedding Street, East Wing, Ninth Floor
San José, California  95110-1770
Telephone: (408) 299-5900
E-Mail:      Raphael.Rajendra@cco.sccgov.org
                  Hannah.Godbey@cco.sccgov.org

*Attorneys for Plaintiff*
*County of Santa Clara*

DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
DAVID S. LOUK, SBN 304654
STEVEN A. MILLS, SBN 328016
Deputy City Attorneys
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5408
Telephone:      (415) 355-3308
E-Mail:          David.Louk@sfcityatty.org
                      Steven.Mills@sfcityatty.org

*Attorneys for Plaintiff*
*City and County of San Francisco*

*[additional counsel on signature page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COUNTY OF SANTA CLARA; CITY AND COUNTY OF SAN FRANCISCO, *et al.*,<br><br>    Plaintiffs,<br><br>    vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, *et al.*,<br><br>    Defendants. | Case No. 5:25-cv-08330-EJD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date:  November 20, 2025<br>Time:         9:00 a.m.<br>Before:      Hon. Edward J. Davila<br>Place:       U.S. District Court<br>           San Jose Courthouse<br>           280 South 1st Street<br>           Courtroom 4—5th Floor<br>           San Jose, CA 95113<br><br>Trial Date:    None set |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

NOTICE OF MOTION AND MOTION ........................................................... viii

INTRODUCTION .................................................................................................1

BACKGROUND ....................................................................................................2

I.      Congressional Funding for Local Emergency Management and Preparedness.......2

II.     Defendants Have Attached Unlawful Conditions on Plaintiffs' Awards. ...............3

        A.      Discrimination Condition....................................................................5

        B.      Executive Order Condition ..................................................................6

LEGAL STANDARD............................................................................................7

ARGUMENT .........................................................................................................7

I.      Plaintiffs Are Likely to Succeed on the Merits of Their Claims. ...........................7

        A.      Plaintiffs Have Standing to Contest the Unlawful DHS Conditions. ..........7

        B.      The Unlawful DHS Conditions Are Unconstitutional. ...............................8

                1.      The Unlawful DHS Conditions Violate the Separation of Powers..8

                2.      The Unlawful DHS Conditions Violate Spending Power
                        Constraints. ...................................................................12

                        a.      The Unlawful DHS Conditions Are Ambiguous. ..............12

                        b.      The Unlawful DHS Conditions Are Unrelated to the
                                Purpose of the Grants........................................18

        C.      The Unlawful DHS Conditions Violate the APA. ....................................19

                1.      The Unlawful DHS Conditions Are Final Agency Action. ...........19

                2.      The Unlawful DHS Conditions Exceed Defendants' Statutory
                        Authority and Are Contrary to the Constitution. ..........................20

                3.      The Unlawful DHS Conditions Are Arbitrary and Capricious......20

II.     Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief. ....23

III.    The Balance of Hardships and Public Interest Strongly Favor Preliminary
        Relief.............................................................................................24

CONCLUSION....................................................................................................25

# **TABLE OF AUTHORITIES**

**Federal Cases**

*All. for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) ..................................................................7

*Am. Fed'n of Tchrs. v. Dep't of Educ.*
    SAG-25-628, 2025 WL 2374697 (D. Md. Aug. 14, 2025) ......................16

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*
    559 F.3d 1046 (9th Cir. 2009) ................................................................23

*Ariz. Dream Act Coal. v. Brewer*
    757 F.3d 1053 (9th Cir. 2014) ................................................................24

*Arizona v. Yellen*
    34 F.4th 841 (9th Cir. 2022) ....................................................................7

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*
    548 U.S. 291 (2006) ..........................................................................10, 13

*Becerra v. Sessions*
    284 F. Supp. 3d 1015 (N.D. Cal. 2018) ................................................20

*Bennett v. Spear*
    520 U.S. 154 (1997) ................................................................................19

*Biden v. Nebraska,*
    600 U.S. 477 (2023) ..................................................................................8

*Bostock v. Clayton Cnty., Georgia*
    590 U.S. 644 (2020) ................................................................................14

*California v. EPA*
    72 F.4th 308 (D.C. Cir. 2023) ................................................................17

*Chicago Women in Trades v. Trump*
    No. 25-cv-02005, 2025 WL 933871 (N.D. Ill. Mar. 27, 2025) ..............17

*City & Cnty. of San Francisco v. Barr*
    965 F.3d 753 (9th Cir. 2020) ..................................................................12

*City & Cnty. of San Francisco v. Garland*
    42 F.4th 1078 (9th Cir. 2022) ................................................................12

*City & Cnty. of San Francisco v. Sessions*
    349 F. Supp. 3d 924 (N.D. Cal. 2018) ..................................................12

*City & Cnty. of San Francisco v. Sessions*
    372 F. Supp. 3d 928 (N.D. Cal. 2019) ..................................................12

*City & Cnty. of San Francisco v. Trump*
    897 F.3d 1225 (9th Cir. 2018) ...................................................................7, 8, 11

*City & Cnty. of San Francisco v. Trump*
    779 F. Supp. 3d 1077 (N.D. Cal. 2025) ..............................................12, 23

*City & Cnty. of San Francisco v. Trump*
    782 F. Supp. 3d 830 (N.D. Cal. 2025) ........................................................12

*City & Cnty. of San Francisco v. Trump*
    783 F. Supp. 3d 1148, 1203 (N.D. Cal. May 3, 2025)................................17

*City & County of San Francisco v. Trump*
    No. 25-cv-01350-WHO, 2025 WL 1738675 (N.D. Cal. June 23, 2025)..............4, 12

*City of Arlington v. FCC*
    569 U.S. 290 (2013)......................................................................................8

*City of Fresno v. Turner*
    No. 25-cv-07070-RS, 2025 WL 2721390 (N.D. Cal. Sept. 23, 2025)....................12, 17, 20, 22

*City of Los Angeles v. Barr*
    941 F.3d 931 (9th Cir. 2019) ........................................................................8

*City of Los Angeles v. Sessions*
    No. Cv-17-7215-R, 2018 WL 6071072 (C.D. Cal. Sept. 13, 2018) .........................23

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013)......................................................................................7

*Climate United Fund v. Citibank, N.A.*
    775 F. Supp. 3d 335 (D.D.C. 2025).............................................................24

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.*
    68 F.4th 864 (4th Cir. 2023) .......................................................................14

*Drakes Bay Oyster Co. v. Jewell*
    747 F.3d 1073 (9th Cir. 2014) ....................................................................24

*F.C.C. v. Fox Television Stations, Inc.*
    556 U.S. 502 (2009)....................................................................................21

*Hecox v. Little*
    104 F.4th 1061 (9th Cir. 2024) ...................................................................23

*Hernandez v. Sessions*
    872 F.3d 976 (9th Cir. 2017) ......................................................................23

*Illinois v. FEMA*, No. 25-206 WES
    2025 WL 2716277 (D.R.I. Sept. 24, 2025).....................................2, 4, 5, 19, 21, 22

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*
   591 U.S. 657 (2020) ............................................................................................21

*Loper Bright Enters. v. Raimondo*
   603 U.S. 369 (2024) ............................................................................................10

*Martin Luther King, Jr. Cnty. v. Turner*
   785 F.3d 863 (W.D. Wash. 2025) ...........................................................9, 12, 20

*Maryland v. King*
   567 U.S. 1301 (2012) ..........................................................................................23

*Melendres v. Arpaio*
   695 F.3d 990 (9th Cir. 2012) ...............................................................................24

*Michigan v. EPA*
   576 U.S. 743 (2015) ............................................................................................21

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*
   463 U.S. 29 (1983) ........................................................................................21, 22

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*
   767 F. Supp. 3d 243 (D. Md. 2025) .....................................................................24

*Nat'l Educ. Ass'n v. United States Dep't of Educ.*
   779 F. Supp. 3d 149 (D.N.H. 2025) .....................................................................16

*New York v. Trump*
   769 F. Supp. 3d 119 (D.R.I. 2025) .......................................................................21

*New York v. U.S.*
   505 U.S. 144 (1992) ......................................................................................18, 19

*Ohio v. EPA*
   603 U.S. 279 (2024) ............................................................................................21

*Or. Nat. Res. Council v. Thomas*
   92 F.3d 792 (9th Cir. 1996) .................................................................................21

*Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*
   465 F.3d 977 (9th Cir. 2006) ...............................................................................19

*Pennhurst State Sch. & Hosp. v. Halderman*
   451 U.S. 1 (1981) ....................................................................................12, 13, 17

*Rhode Island Coal. Against Domestic Violence v. Bondi*
   No. CV 25-279 WES, 2025 WL 2271867 (D.R.I. Aug. 8, 2025). .........................20

*Rodriguez v. Robbins*
   715 F.3d 1127 (9th Cir. 2013) .............................................................................25

*S. Dakota v. Dole*
    483 U.S. 203 (1987)................................................................................12, 18

*San Francisco A.I.D.S. Found. v. Trump*
    No. 25-CV-01824-JST, 2025 WL 1621636 (N.D. Cal. June 9, 2025) ...................7, 12

*San Francisco Unified Sch. Dist. v. AmeriCorps*
    No. 25-CV-02425-EMC, 2025 WL 1713360 (N.D. Cal. June 18, 2025)...................16, 17, 20

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*
    576 U.S. 519 (2015)...............................................................................14

*Universal Health Servs., Inc. v. United States ex rel. Escobar*
    579 U.S. 176 (2016)...............................................................................15

*W. Virginia v. EPA*
    597 U.S. 697 (2022)...............................................................................9, 10

*Winter v. Nat. Res. Def. Council, Inc.*
    555 U.S. 7 (2008)...................................................................................7

**Constitutional Provisions**
U. S. Const.
    Art. I, § 9, cl. 7....................................................................................8
    Art. III...............................................................................................7

**Federal Statutes**
5 U.S.C.
    § 596b...............................................................................................11
    § 704.................................................................................................19
    § 706(2).............................................................................................19
    § 706(2)(A)-(C)............................................................................. vi, 1, 19, 20
    § 706(2)(D).........................................................................................22
    § 5121(b)............................................................................................11
    § 5165f(I)...........................................................................................11

6 U.S.C.
    § 111(b)(1)(G)......................................................................................21
    § 313(b)(1).........................................................................................10
    § 596b(a)............................................................................................2
    § 603............................................................................................10, 11
    § 604.................................................................................................2
    § 604(a).............................................................................................11
    § 605.................................................................................................2
    § 605(a).............................................................................................11
    § 762.............................................................................................2, 11
    § 1135............................................................................................2, 9
    § 1135(a)............................................................................................9
    § 1135(b)............................................................................................9

1135(b)(1)(L) ............................................................................................................9
1135(c)(5) ................................................................................................................9
1135(e) ....................................................................................................................9

15 U.S.C.
§ 2229 ................................................................................................................2, 10
§ 2229a ..............................................................................................................2, 10
§ 2229a(a)(1)(A) ...................................................................................................10
§ 2229(c)(1) ...........................................................................................................10
§ 2229(c)(3) ...........................................................................................................10
§ 2229(c)(3)(N) ......................................................................................................11
§ 2205 ....................................................................................................................10

20 U.S.C.
§§ 1681-1688 ...........................................................................................................5

28 U.S.C.
§ 1491 ....................................................................................................................20

31 U.S.C.
§ 372(b)(4) ...............................................................................................................5
§§ 3729–3733 ...................................................................................................14, 25
§ 3729(a) ................................................................................................................15
§ 3729(a)(1)(A) ......................................................................................................14

42 U.S.C
§ 2000d et seq. .........................................................................................................5
§ 2000e et seq ........................................................................................................14
§§ 5121 et seq. .........................................................................................................2
§ 5165f ...............................................................................................................2, 11
§ 5170c(a) ..........................................................................................................2, 11
§§ 6101 et seq. .........................................................................................................5
§§ 12101 et seq. .......................................................................................................5

46 U.S.C.
§ 70107 ....................................................................................................................2
§ 70107(a) ................................................................................................................9
§ 70107(b) ................................................................................................................9
§ 70107(h) ................................................................................................................9
§ 70107(i) .................................................................................................................9

Pub. L. No. 107–295, 116 Stat. 2064 (2002) ...........................................................2

Pub. L. No. 107-56, 115 Stat. 272 (2001) ...............................................................2

Pub. L. No. 109–295, 120 Stat. 1386 (2006) ...........................................................2

Pub. L. No. 88-352, 78 Stat. 241 (1964) ................................................................5

**Regulations**

2 C.F.R.

   § 200.208(a) ..............................................................................................22

   § 200.208(d)(2) ..........................................................................................22

   § 3002.10 ....................................................................................................22

Exec. Order No. 14173, 90 Fed. Reg. 8,633 (Jan. 21, 2025) ..........................13

Exec. Order No. 14190, 90 Fed. Reg. 8,853 (Jan. 29, 2025) ..........................15

Exec. Order No. 14332, 90 Fed. Reg. 38929 (Aug. 7, 2025) ..........................13

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on November 20, 2025 at 9:00 a.m., or as soon thereafter as may be heard[1] before the Honorable Edward Davila in Courtroom 4 of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, Plaintiffs[2] will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction against Defendants: Kristi Noem in her official capacity as Secretary of Homeland Security (Secretary); the United States Department of Homeland Security (DHS); David Richardson in his official capacity as the Senior Official Performing the Duties of the Administrator of FEMA; the Federal Emergency Management Agency (FEMA); and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively, "Defendants"). Plaintiffs respectfully move the Court to enter a preliminary injunction before October 24, 2025, preventing Defendants from imposing, enforcing, or implementing unlawful and unauthorized grant conditions or any materially similar terms or conditions to any federal funds received or awarded to Plaintiffs, directly or indirectly.

This Motion presents the following issues to be decided: (1) whether Plaintiffs have shown a likelihood of success on the merits of their claims that Defendants' imposition, enforcement, or

---

[1] Plaintiffs are moving to shorten time since relief is needed no later than October 24, 2025. Plaintiffs are also seeking to relate this case to *City & County of San Francisco v. Trump* (N.D. Cal., Case No. 3:25-cv-01350-WHO).

[2] Plaintiffs are the County of Santa Clara, City and County of San Francisco, City of Alameda, City of Bellingham, City of Berkeley, City of Culver City, City of Los Angeles, County of Los Angeles, Los Angeles County Consolidated Fire Protection District, Martin Luther King, Jr. County, County of Marin, City of Oakland, City of Palo Alto, City of Pasadena, City of Petaluma, Pierce County, City of Sacramento, City of San Diego, County of San Diego, City of San José, County of San Mateo, City of Santa Monica, City of Santa Rosa, Snohomish County, County of Sonoma, Sonoma County Community Development Commission, Sonoma County Water Agency ("Sonoma Water"), Sonoma Valley County Sanitation District ("SVCSD"), and the City of Tucson.

implementation of the grant conditions violate the Separation of Powers and spending power in the United States Constitution; (2) whether Plaintiffs have shown a likelihood of success on the merits of their claims that Defendants' imposition, enforcement, or implementation of the grant conditions violate the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)-(C); (3) whether Plaintiffs face a likelihood of irreparable harm in the absence of a preliminary injunction; and (4) whether the balance of equities and public interest favor preliminary injunctive relief.

Plaintiffs Motion is based on this Notice of Motion and Motion, the accompanying supporting Memorandum of Points and Authorities, the accompanying supporting declarations and exhibits thereto, the Request for Judicial Notice, as well as the papers, evidence, and records on file in this action, and any other written or oral evidence or argument as may be presented at or before the time this motion is heard by the Court.


Dated:  October 1, 2025

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
MOLLIE M. LEE
Chief of Strategic Advocacy
SARA J. EISENBERG
Chief of Complex and Affirmative Litigation
DAVID S. LOUK
STEVEN A. MILLS
Deputy City Attorneys

By:  /s/Steven A. Mills

STEVEN A. MILLS
Deputy City Attorney

Attorneys For Plaintiff
CITY AND COUNTY OF SAN FRANCISCO


[*Additional signatories identified on signature page*]

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs move for a preliminary injunction preventing the Secretary of Homeland Security Kristi Noem (Secretary), U.S. Department of Homeland Security (DHS), David Richardson as the Senior Official Performing the Duties of the Administrator of FEMA, and the Federal Emergency Management Agency (FEMA) (collectively, "Defendants") from imposing and enforcing unauthorized and unlawful conditions on Plaintiffs' public safety, disaster preparedness, and emergency response management awards. Specifically, Defendants attempt to require grantees to comply with the Trump Administration's ill-defined, unrestrained, and legally incorrect rewrite of federal anti-discrimination laws; prohibit grantees from undertaking any activities advancing or promoting diversity, equity, inclusion, and accessibility; and force compliance with roving executive orders—including those it might issue in the future. Defendants do so without statutory or constitutional authorization, in disregard of bedrock principles of separation of powers and the spending power, and in direct contravention of the requirements of the Administrative Procedure Act (APA). This disregard of the rule of law is an effort to further President Donald Trump's political agenda at the expense of public safety and emergency management and preparedness intentionally redressed by Congress.

Plaintiffs are a compilation of local governments and local government agencies that serve communities characterized by unique topography, diverse demographics, and scores of distinct emergency management and preparedness needs. They also contain hubs for business and tourism, national and historical landmarks, and cutting-edge industries. The funding at issue includes grants that enhance public safety, disaster preparedness, and emergency response management throughout Plaintiffs' streets, transit systems, and port systems, deter acts of terrorism threatening their communities and critical infrastructure, and promote the health and safety of the public and the first responders supporting them.

Defendants have forced Plaintiffs to make the Hobson's choice between agreeing to abandon values, laws, and policies and commit to flagrantly unclear and unlawful conditions, or forgoing millions of dollars of funding earmarked for public safety, disaster preparedness, and emergency management at a time when Plaintiffs are already operating under severe financial strain. The risk to

Plaintiffs is not hypothetical—Plaintiffs must decide as early as **October 24, 2025** whether to agree to Defendants' unlawful conditions or forfeit federal funding they would otherwise be able to accept without unlawful conditions. *See* Chi Decl. (Santa Monica) ¶ 19. Since Plaintiffs are likely to succeed on the merits of their claims and will be immediately and irreparably harmed if these unlawful conditions are allowed to stand, and since the balance of the equities weighs strongly in Plaintiffs' favor, the Court should issue a preliminary injunction before **October 24** that bars Defendants from imposing and enforcing the unlawful grant conditions identified in this Motion.

## BACKGROUND

### I.    Congressional Funding for Local Emergency Management and Preparedness.

For decades, Congress has appropriated billions of dollars to support state and local disaster preparedness and emergency response to prevent and mitigate the harms caused by unpredictable disasters, emergencies, and security threats. *See Illinois v. FEMA*, No. 25-206 WES, 2025 WL 2716277, at *1 (D.R.I. Sept. 24, 2025). "Over time, this support has been expanded through various statutes such as the Stafford Act, the USA PATRIOT Act, the Maritime Transportation and Security Act, and the Post-Katrina Emergency Management Reform Act, among others." *Id.* To carry out these appropriations, Congress has authorized a large and varied portfolio of grant programs that it has directed Defendants to administer. These congressionally authorized programs vary in scope and purpose, including to respond to, prevent, and prepare for wildfires, floods, acts of terrorism, and more.[3] Despite the nuance of each authorization, they are united by a common theme: to provide local governments with critical financial support to prepare for and respond to emergencies, threats, and

---

[3] *See, e.g.*, 15 U.S.C. § 2229 (Assistance to Firefighters [AFG]); 15 U.S.C.§ 2229a (Staffing for Adequate Fire and Emergency Response [SAFER]); 6 U.S.C. § 604 (Urban Area Security Initiative [UASI]); 6 U.S.C. § 605 (State Homeland Security Grant Program [SHSP]); 6 U.S.C. § 762 (Emergency Management Performance Grants [EMPG]); 6 U.S.C. § 1135 (Transit Security Grant Program [TSGP]); 42 U.S.C § 5165f (National Urban Search and Rescue Response System [US&R]); 46 U.S.C. § 70107 (Port Security Grant Program [PSGP]); 42 U.S.C. § 5170c(a) (Hazard Mitigation Grant Program [HMGP]); 6 U.S.C. § 596b(a) (Securing the Cities [STC]).

similar safety needs.

Plaintiffs have consistently relied on these funds to protect and serve their communities through a range of initiatives, ranging from increasing staffing of and programs for first responders, securing equipment to promote health, safety, and security, developing and protecting critical infrastructures, preparing for disasters like fires, floods, and earthquakes, updating technological capabilities, and building robust regional partnerships. *E.g.*, Ott Decl. (Alameda) ¶ 11; Milstein Decl. (Sacramento) ¶ 23; Spaulding Decl. (SVCSD) ¶ 6; Spaulding Decl. (Sonoma Water) ¶ 10; McCluskey Decl. (King County) ¶ 13; Johnson Decl. (Oakland) ¶ 23; Jeakle Decl. (San Diego County) ¶ 34; Bowman Decl. (SF) ¶¶ 4-7; Kim Decl. (SF) ¶¶ 4-10; Thomas Decl. (SF) ¶¶ 3-5; Wu Decl. (SF) ¶¶ 3-5; Reed Decl. (Santa Clara) ¶¶ 30-33; Burrus Decl. (SF) ¶¶ 8-11. In exercising its legislative authority to designate these programs and support local emergency management capabilities, Congress did not provide Defendants unfettered authority to attach conditions to awards unrelated to the primary purpose of the funding programs. Nor did Congress authorize Defendants to pick and choose funding recipients based on the political agenda of the current Administration in office.

## II.    Defendants Have Attached Unlawful Conditions on Plaintiffs' Awards.

Each of the Plaintiffs has applied for or received, will imminently apply for, or anticipate receiving, funding under one or more of the following DHS grant programs: Port Security Grant Program (PSGP); Transit Security Grant Program (TSGP); Assistance to Firefighters (AFG); Staffing for Adequate Fire and Emergency Response (SAFER); Homeland Security Grant Programs (HSGP); Emergency Management Performance Grants Program (EMPG); Urban Search & Rescue (US&R); Hazard Mitigation Grant Program (HMGP); and Securing the Cities (STC). In the final days of the 2025 federal fiscal year, Defendants began issuing awards for these grants and presenting Plaintiffs with grant agreements incorporating terms from DHS's FY 2025 DHS Standard Terms and Conditions Version 3 Dated April 18, 2025. (Request for Judicial Notice ["RJN"], Ex. 1 ("Standard DHS Terms").) On their face, the Standard DHS Terms "apply to all new federal awards of federal financial assistance (federal awards) for which the federal award date occurs in FY 2025 and flow down to subrecipients unless a term or condition specifically indicates otherwise." Standard DHS Terms at p. 1. And in practice, Defendants have incorporated many of these terms directly into Plaintiffs' grant

awards.[4] These unprecedented new terms include conditions that are not authorized by the

Constitution or any statute, and instead stem from President Trump's executive orders directing

agencies to require grant recipients to implement his political agenda as a prerequisite to receiving and

maintaining funding. In short, this agenda includes redefining the meaning of federal anti-

discrimination law inconsistently with *actual* federal anti-discrimination law, prohibiting whatever the

Administration believes DEIA activities are, and demanding compliance with an unknown set of

current and future executive orders, among other things.

Specifically, Plaintiffs' awards contain two categories of unlawful conditions addressed in this

Motion: (1) a Discrimination Condition and requirements implementing that condition; and (2) an

Executive Order Condition requiring compliance with all executive orders related to grants.[5] These

---

[4] Defendants have incorporated the Standard DHS Terms by copying and pasting the terms into

Plaintiffs' awards as "Articles" in FEMA's grant package. Exemplars of the final awards for each

program are attached to the Declaration of David S. Louk ("Louk Decl.") as Exhibits 2-9. For

readability, Plaintiffs cite to the Standard DHS Terms rather than the specific award.

[5] Plaintiffs' complaint also sets forth Defendants' unlawful attempt to force Plaintiffs to

comply with civil immigration conditions contained in the Standard DHS Terms. (Compl. ¶¶ 169-170,

172, 183-190.) Plaintiffs are not moving at this time for relief from those conditions because they were

already vacated as arbitrary and capricious in *Illinois v. FEMA*, No. 25-206 WES, 2025 WL 2716277

(D.R.I. Sept. 24, 2025). (*See, e.g.*, Louk Decl., Ex. 3 (SF PSGP Award 1), Article 60 ("Impact of State

of Illinois v. FEMA Injunction"). In addition, as to some Plaintiffs in this case, a court has prohibited

Defendants from applying the civil immigration conditions to DHS grants because doing so would

violate the court's injunction of executive orders that mandate the defunding of jurisdictions that limit

cooperation with ICE. *City & County of San Francisco v. Trump*, No. 25-cv-01350-WHO, 2025 WL

1738675, at *1-3 (N.D. Cal. June 23, 2025). (*See, e.g.*, SF PSGP Award 1, Article 59 ("Impact of San

Francisco v. Trump Preliminary Injunction").) Despite these two court orders and Defendants' sworn

assertion to another court that the immigration conditions would not appear in many grants (*see* RJN,

Ex. 2 (Richardson Decl.)), at least one of Plaintiffs' awards to date include the civil immigration terms

conditions are referred to as the "Unlawful DHS Conditions." Each is addressed in turn.

### A.    Discrimination Condition

Under the new DHS terms Plaintiffs must certify that "[t]hey do not, and will not . . . operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws," and that "[t]hey do not engage in and will not . . . engage in, a discriminatory prohibited boycott." Standard DHS Terms § C.XVII.2.a.i-ii. The Standard DHS Terms also broadly require recipients to comply with various specified civil rights laws.[6] And DHS also broadly requires that "[r]ecipients must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4)." *Id*. § C.XVII.[7]

Though at least some of these conditions may seem to do nothing more than require compliance with federal law, they are in fact far more pernicious. Plaintiffs have regularly agreed to comply with federal antidiscrimination laws as a condition of federal funding in the past, but—as detailed in Section I.B.2.a, below—the federal government has now cast doubt on the well-established meaning of those provisions. President Trump, DHS, and other federal agencies have provided skewed

---

without any carveouts for the litigation identified. (*See* Louk Decl., Ex. 7 (Sacramento US&R Award).) Plaintiffs understand this was an oversight and reserve the right to move for immediate relief if Defendants intended more.

[6] *See, e.g.*, Standard DHS Terms § C.III [Age Discrimination Act of 1975]; *Id*. § C.IV [Americans with Disabilities Act of 1990]; *Id*. § C.VII [Civil Rights Act of 1964]; *Id*. § C.VIII [Civil Rights Act of 1968]; *Id*. § C.XIV [Title IX]; *Id*. § C.XVI [Equal Treatment of Faith-Based Organizations]; *Id*. § C.XXIV [Civil Rights Act of 1964, Title VI]; *Id*. § C.XXXIII [Rehabilitation Act of 1973].

[7] Another term requires recipients to certify that "[t]hey do not, and will not . . . operate any program that benefits illegal immigrants or incentivizes illegal immigration." Standard DHS Terms § C.XVII.2.a.iii. This term was vacated in *Illinois* and is being excluded from Plaintiffs' awards. (*See, e.g.*, SF PSGP Award 1, Article 60.) Accordingly, Plaintiffs do not move for relief on this provision at this time.

interpretations that purport to articulate what antidiscrimination law requires, but in fact assert an ideological agenda to prohibit policies or programs that promote inclusion for people of all races, ethnicities, national origins, sexes, gender identities, and sexual orientations, and also to prohibit any recognition whatsoever of the concept of gender identity. This agenda proceeds under the guise of, but is in fact in contradiction of, federal antidiscrimination law. The result is that, through the Standard DHS Terms, Plaintiffs reasonably fear that they must pledge to recognize the President's incorrect, incoherent, ambiguous, and legally unsupported distortion of federal anti-discrimination laws across all of their operations and risk civil and criminal penalties, or else forgo funding entirely. Collectively, these unprecedented conditions are referred to as the "Discrimination Condition."

*Grants Manual Implementation of the Discrimination Conditions*

In order to implement the Discrimination Condition's restrictions on DEIA, Defendants are also requiring recipients of certain awards to agree to comply with derivative conditions in FEMA's August 2025 Preparedness Grants Manual ("Grants Manual"). RJN, Ex. 3; Louk Decl., Ex. 1 (Notice to Recipients). According to the Grants Manual "[a]ll non-disaster grant program reimbursement requests must be reviewed and approved by FEMA prior to drawdowns." To the extent "funding is provided directly or indirectly to a subrecipient," the reimbursement request must indicate "[w]hether the subrecipient has *any* diversity, equity, and inclusion practices." Grants Manual, § 6.11.3 (emphasis added). Plaintiffs refer to this as the "DEI Disclosure Requirement."

**B.    Executive Order Condition**

The Standard DHS Terms state "[r]ecipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference." Standard DHS Terms § C.XXXI. Plaintiffs refer to this condition as the "EO Condition." Defendants have provided little detail on what "compliance" with the EO Condition would require. On its face, the provision is capable of any number of readings and is extraordinarily broad, especially given that the current Administration has issued over 200 executive orders to date in President Trump's second term alone. Moreover, executive orders do not by their terms apply to federal grant recipients. Despite the EO Condition's breadth and ambiguity, Defendants have adopted the EO Condition as a matter of policy and categorically imposed it on all of Plaintiffs'

grants. (*E.g.*, Louk Decl., Exs. 2-9 (Article 33 ["Presidential Executive Orders"].)

## LEGAL STANDARD

A preliminary injunction is warranted where the moving party establishes (1) it is likely to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Under the Ninth Circuit's "sliding scale approach," a plaintiff may obtain an injunction if it shows "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff," as long as it shows that "the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (cleaned up). All factors strongly favor Plaintiffs.

## ARGUMENT

### I.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims.

#### A.    Plaintiffs Have Standing to Contest the Unlawful DHS Conditions.

Plaintiffs have standing to contest the Unlawful DHS Conditions because Plaintiffs are suffering injuries that are "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). "A loss of funds promised under federal law satisfies Article III's standing requirement." *City & Cnty. of San Francisco v. Trump* ("*San Francisco*"), 897 F.3d 1225, 1235 (9th Cir. 2018) (cleaned up); *Arizona v. Yellen*, 34 F.4th 841, 852 (9th Cir. 2022). "An injunction enjoining Defendants from enforcing the [Unlawful DHS Conditions] would [also] redress Plaintiffs' alleged injury of having to either modify their conduct or risk making a false certification." *San Francisco A.I.D.S. Found. v. Trump*, No. 25-CV-01824-JST, 2025 WL 1621636, at *10 (N.D. Cal. June 9, 2025).

Here, Plaintiffs have been awarded millions in DHS funds, and anticipate receiving millions more in DHS funds via pass-through awards from their states based on long-standing practice, statutory entitlement, or predetermined allocations in notices of funding opportunities. Kim Decl. (SF) ¶¶ 7-16; Bowman Decl. (SF) ¶¶ 6-10; Louk Decl., Exs. 2-9. Because the Standard DHS Terms expressly specify that the Unlawful DHS Conditions will apply to direct recipients and subrecipients of awards, *see, e.g.*, RJN, Ex. 5 (HSGP NOFO) at p. 27-28; RJN, Ex. 6 (EMPG NOFO) at p. 21, there

is a significant, substantial, and imminent risk Plaintiffs will be forced to choose between the unlawful conditions and accepting funding. This imminent loss of funds through infringement of Plaintiffs' rights is traceable to the Unlawful DHS Conditions and redressable by an order restraining their enforcement. Thus, Plaintiffs plainly have standing.

> **B.      The Unlawful DHS Conditions Are Unconstitutional.**

>> **1.      The Unlawful DHS Conditions Violate the Separation of Powers.**

Nothing in the Constitution or congressional authorizations bearing on the DHS programs at issue gives Defendants the power to impose conditions on Plaintiffs' awards remotely approaching those at issue here. The absence of any constitutional or statutory authority to impose conditions on the grants is dispositive and highlights the problems with of the Unlawful DHS Conditions.

"Among Congress's most important authorities is its control of the purse." *Biden v. Nebraska*, 600 U.S. 477, 505 (2023) (citing U. S. Const., art. I, §9, cl. 7). The Constitution "exclusively grants the power of the purse to Congress, not the President." *San Francisco*, 897 F.3d at, 1231. Since Congress exclusively holds the power of the purse—and there is no inherent executive authority to place conditions on the receipt of federal funds—authority must be given to the executive by the legislature to impose conditions on the use funds. *See City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019) (agency grant conditions imposed without statutory authority were "ultra vires"); *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) (recognizing agencies are "charged with administering congressional statutes," which means that "[b]oth their power to act and how they are to act is authoritatively prescribed by Congress").

In establishing the grant programs at issue in this action and appropriating funds, Congress has not authorized Defendants to impose grant conditions even *remotely* similar to the Unlawful DHS Conditions, which effectively prohibit any activity that the Administration would consider to be "DEIA," rewrite anti-discrimination law as it has long been understood, and force compliance with all executive orders. Moreover, the sprawling and hopelessly ambiguous Unlawful DHS Conditions are contrary to longstanding limits on the spending power in our constitutional structure.

**Infrastructure Security Grants:** Defendants administer several programs focused on transportation infrastructure designed to strengthen the nation's critical infrastructure from potential

terrorist attacks, the Port Security Grant Program (PSGP) and Transit Security Grant Program (TSGP). Congress authorized PSGP funds for "port security services and to train public safety personnel[.]" 46 U.S.C. § 70107(a); RJN, Ex. 7 (PSGP NOFO) at p.23. In doing so, Congress identified eligible costs as well as application, reporting, and administrative requirements. 46 U.S.C. § 70107(b), (h), (i). Yet, nowhere did Congress include vague prohibitions on DEIA or require compliance with any and all executive orders.

TSGP authorization stems from 6 U.S.C. § 1135. *See* RJN, Ex. 8 (TSGP NOFO) at p. 17. Congress directed the Secretary to "establish a program for making grants to eligible public transportation agencies for security improvements" and enumerated permissible capital and operating uses. 6 U.S.C. §§ 1135(a)-(b). While the statute states that a grant "shall be subject" to "other terms and conditions as are determined *necessary* by the Secretary," no plausible interpretation of this clause authorizes wide-ranging and ambiguous Unlawful DHS Conditions on policy issues completely unrelated to enumerated transportation security improvements. 6 U.S.C. § 1135(e) (emphasis added).

Indeed, courts must be skeptical of "agencies asserting highly consequential power beyond what Congress could reasonably be understood to have granted." *W. Virginia v. EPA*, 597 U.S. 697, 724 (2022); *see also Martin Luther King, Jr. Cnty. v. Turner*, 785 F.3d 863, 866-67 (W.D. Wash. 2025) ("*King County*") (holding "[s]ubstantive conditions implicating controversial policy matters that are unrelated to the authorizing statute, such as prohibitions on DEI initiatives . . . are simply not 'of the same kind' as conditions that require recipients to monitor and report the progress of their program"). A look at the statutory scheme demonstrates why. The Discrimination Condition's prohibition on DEIA is in tension with Congress's designation of transit security grant funds to support "security response training" for transit employees, specifically including training in procedures to support "individuals with disabilities and the elderly." *See* 6 U.S.C. §§ 1135(b)(1)(L), (c)(5). Thus, no plausible reading of the statute "unambiguously" authorizes FEMA—an agency focused on emergency preparedness[8]—to impose conditions that carry out a contentious political

---

[8] FEMA exists to "reduce the loss of life and property and protect the Nation from all hazards, including natural disasters, acts of terrorism, and other manmade disasters, by leading and supporting

agenda around race, gender, and accessibility unmoored from federal antidiscrimination law. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006); *see also W. Virginia*, 597 U.S. at 721; *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 401 (2024).

**Fire Related Grants:** AFG authorization stems from 15 U.S.C § 2229. *See* RJN, Ex. 9 (AFG NOFO) at p. 6. SAFER is authorized by the same enactment but is codified in 15 U.S.C. § 2229a. *See* RJN, Ex. 10 (SAFER NOFO) at p. 15. Nothing in the statutes that create the AFG and SAFER programs could reasonably be construed to authorize the Unlawful DHS Conditions. With respect to AFG, Congress directed FEMA to "award grants on a competitive basis," and expressly said that AFG grants must be "for the purpose of protecting the health and safety of the public and firefighting personnel . . . against fire, fire-related, and other hazards." 15 U.S.C. § 2229(c)(1). In doing so, Congress identified approximately fourteen purposes that funding "shall" be used for, including funding emergency medical services and acquiring additional firefighting vehicles, equipment, and personal protective equipment. 15 U.S.C. § 2229(c)(3). In connection with SAFER, Congress required FEMA to issue competitive grants "for the purpose of increasing the number of firefighters to help communities meet industry minimum standards and attain 24-hour staffing to provide adequate protection from fire and fire-related hazards, and to fulfill traditional missions of fire departments that antedate the creation of [DHS]." 15 U.S.C. § 2229a(a)(1)(A).

Consistent with longstanding constitutional limits, no terms authorize the Unlawful DHS Conditions. And in fact, in plain contradiction of the President's policy agenda to prohibit considerations relating to equity and access, fire prevention and control requirements authorize FEMA to "educate the public and overcome public indifference as to fire, fire prevention, and individual preparedness," including through "programs to provide specialized information for those groups of individuals who are particularly vulnerable to fire hazards, such as the young and the elderly." 15 U.S.C. § 2205. As to AFG, Congress contemplated that funds could be used to "provide specialized training . . . to recognize individuals who have mental illness and how to properly intervene with

the Nation in a risk-based, comprehensive emergency management system of preparedness, protection, response, recovery, and mitigation." 6 U.S.C. § 313(b)(1).

1    individuals with mental illness." *Id*. § 2229(c)(3)(N). Neither of these Congressional preferences can

2    be reconciled with the Unlawful DHS Conditions restricting inclusion and accessibility. Thus, "[n]ot

3    only has the Administration claimed for itself Congress's exclusive spending power, it has also

4    attempted to coopt Congress's power to legislate." *San Francisco*, 897 F.3d at 1234.

5         **Homeland Security Grants:** Defendants administer numerous grant programs designed to

6    prepare for and prevent terrorist attacks. For example, authorization for the Homeland Security Grant

7    Program (HSGP), which includes the Urban Area Security Initiative (UASI) and State Homeland

8    Security Grant Program (SHSP) amongst other programs, stems from 6 U.S.C. § 603 *et seq*. HSGP

9    NOFO at p. 28. UASI and SHSP program funds are targeted at helping either high risk urban areas or

10   local governments with "preventing, preparing for, protecting against, and responding to acts of

11   terrorism." 6 U.S.C. § 604(a); 6 U.S.C. § 605(a); *see also* 6 U.S.C. § 596b (STC). Consistent with the

12   previous grants identified, nothing in the statutes authorized the Unlawful DHS Conditions.

13        **Other Preparedness & Non-Disaster Grants:** Congress permanently codified EMPG at 6

14   U.S.C. § 762. EMPG NOFO at p. 22. The authorization directs FEMA to make grants "for all

15   hazards." Congress further intended "to provide an orderly and continuing means of assistance . . . to

16   State and local governments in carrying out their responsibilities to alleviate the suffering and

17   damage[.]" 42 U.S.C. § 5121(b). US&R is authorized at 42 U.S.C § 5165f and provides funding under

18   preparedness cooperative agreements for training and exercises, the acquisition and maintenance of

19   equipment, and certain medical monitoring, amongst other things. 42 U.S.C § 5165f(I); RJN, Ex. 11

20   (US&R NOFO) at p. 11. HMGP awards are authorized to "substantially reduce the risk of, or increase

21   resilience to, future damage, hardship, loss, or suffering in any area affected by a major disaster." 42

22   U.S.C. § 5170c(a). Again, these statutes do not authorize the Unlawful DHS Conditions.

23        The foregoing makes plain that Defendants are conditioning Plaintiffs' receipt of appropriated

24   funds on compliance with the President's political agenda, even though Congress has not authorized

25   Defendants to leverage federal funding for that agenda, and even though the President lacks "his own

26   constitutional powers" to add new conditions to federal funds. *San Francisco*, 897 F.3d at 1233-34

27   (cleaned up). Defendants' actions therefore usurp Congress's "power of the purse" and violate bedrock

28   separation of powers principles. *Id*. at 1231. Faced with similar overreach by other executive agencies,

federal courts have not hesitated to enjoin similar grant conditions and overreach after finding that plaintiffs are likely to succeed on the merits of their challenges.[9] The same reasoning applies here.

### 2. The Unlawful DHS Conditions Violate Spending Power Constraints.

Even if Congress authorized the imposition of the Unlawful DHS Conditions, the Conditions are still unlawful because they exceed constitutional limits on the spending power. Under the spending power, grant conditions generally must be (1) set forth unambiguously, (2) before a recipient enters into the grant agreement with the federal government, and (3) must be related to the subject matter of the grant program. *See S. Dakota v. Dole*, 483 U.S. 203, 207 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Defendants' new Unlawful DHS Conditions fail the first and third principles. The conditions are so vague, ambiguous, and open-ended that it is impossible for Plaintiffs to know the full range of activities the federal government might consider prohibited. Indeed, the conditions could not possibly have a nexus to the federal interest in preparing for and mitigating the effects of disaster, because in practice they *undermine* the purpose of the funds Congress appropriated here, which includes an intent to promote public safety and emergency management and preparedness.

### a. The Unlawful DHS Conditions Are Ambiguous.

The Unlawful DHS Conditions fail the first requirement that grant conditions must be clear and unambiguous to pass constitutional muster under the spending power. "[I]f Congress intends to impose

---

[9] *See, e.g.*, *King Cnty.*, 785 F. Supp. 3d at 884-86; *King Cnty. v. Turner*, 2025 WL 2322763, at *11-15 (W.D. Wash. Aug. 12, 2025); *City & Cnty. of San Francisco v. Trump*, 779 F. Supp. 3d 1077 (N.D. Cal. 2025), *opinion clarified*, 782 F. Supp. 3d 830 (N.D. Cal. 2025); *City & County of San Francisco v. Trump*, No. 25-cv-01350-WHO, 2025 WL 1738675, at *1-3 (N.D. Cal. June 23, 2025); *City of Fresno v. Turner*, No. 25-cv-07070-RS, 2025 WL 2721390, at *12 (N.D. Cal. Sept. 23, 2025); *San Francisco A.I.D.S. Found. v. Trump*, No. 25-CV-01824-JST, 2025 WL 1621636, at *27 (N.D. Cal. June 9, 2025); *City & Cnty. of San Francisco v. Sessions*, 372 F. Supp. 3d 928, 941-43- (N.D. Cal. 2019), *vacated on other grounds by City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078 (9th Cir. 2022); *City & Cnty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 944–48 (N.D. Cal. 2018), *vacated on other grounds by City & Cnty. of San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020).

a condition on the grant of federal moneys, it must do so *unambiguously*[.]" *See Pennhurst*, 451 U.S. at 17 (1981) (emphasis added); *Arlington Cent.*, 548 U.S. at 296 (determining the ambiguity of conditions on federal grants requires evaluating "whether [a recipient] . . . would clearly understand . . . the obligations of the [conditions].")). The new conditions imposed on Plaintiffs' grants are anything but clear.

As noted above, Plaintiffs have regularly agreed to comply with federal antidiscrimination laws as a condition of federal funding in the past, but the federal government has now called the meaning of those laws in question by purporting to interpret them far differently than previously understood by Congress, the executive, or the courts—leaving it unclear what is expected under the terms.

Immediately following his inauguration, President Trump began issuing a series of executive orders promoting his political agenda. For example, he issued orders directing all federal agencies to "assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology," "terminate . . . 'equity-related grants'"—without defining "equity-related" or even "equity," and require grant recipients to certify that they do not operate any programs "promoting" DEIA "that violate any applicable Federal anti-discrimination laws" in all grant terms.[10] Going further, President Trump recently ordered that discretionary grant awards must "demonstrably advance the President's policy priorities" "and "shall not be used to fund, promote, encourage, subsidize, or facilitate" "racial preferences or other forms of racial discrimination by the grant recipient," "denial by the grant recipient of the sex binary in humans or the notion that sex is a chosen or mutable characteristic," or other "anti-American values."[11]

---

[10] Executive Order No. 14168, *Defending Women From Gender Ideology Extremism And Restoring Biological Truth To The Federal Government*, 90 Fed. Reg. 8,615 (Jan. 20, 2025); Executive Order No. 14151, *Ending Radical and Wasteful Government DEI Programs and Preferencing*, 90 Fed. Reg. 8,339 (Jan. 20, 2025); Executive Order No. 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, 90 Fed. Reg. 8,633 (Jan. 21, 2025).

[11] Executive Order No. 14332, *Improving Oversight of Federal Grantmaking*, 90 Fed. Reg. 38929 (Aug. 7, 2025).

Doubling down on these executive orders, Attorney General Pam Bondi released a memo titled *Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination* on July 29, 2025. *See* RJN, Ex. 4 ("Discrimination Guidance Memo"). The Discrimination Guidance Memo purports to "clarif[y] the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ('DEI') programs." *Id*. at 1. Among other "clarifications," Attorney General Bondi states that the use of "[f]acially neutral criteria (e.g., 'cultural competence,' 'lived experience,' geographic targeting) that function as proxies for protected characteristics violate federal law if designed or applied with the intention of advantaging or disadvantaging individuals based on protected characteristics." *Id*. at 2. This "clarification," however, is inconsistent with Supreme Court precedent that has "consistently declined to find constitutionally suspect" the adoption of race-neutral criteria—even where the decision-maker was "well aware" the race-neutral criteria "correlated with race." *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 885–86 (4th Cir. 2023) (cleaned up) (citing, inter alia, *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 545 (2015)). Similarly, the Administration's insistence on "the sex binary" and its refusal to recognize the reality of gender identity is out of step with governing law extending critical sex-based protection to trans people. *See, e.g.*, *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 662, 670 (2020) (recognizing "Title VII prohibits all forms of discrimination because of sex, however they may manifest themselves or whatever other labels might attach to them"). Nevertheless, in early September—a few weeks before issuing new grant awards—FEMA sent copies of the Discrimination Guidance Memo to all grant recipients, with the admonition to "review and adhere to the Attorney General's [guidance]." Louk Decl., Ex. 1 (FEMA Notice to Recipients).

Defendants' new misinterpretation of federal law raises serious questions about what meaning and scope Defendants intend the Discrimination Condition to carry. And Plaintiffs reasonably fear significant consequences if they accept the award conditions subject to the Administration's vague and unsupported distortion of federal anti-discrimination laws. The False Claims Act (FCA) imposes liability on "any person" who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Each violation of the FCA is punishable

by mandatory treble damages plus civil penalties. 31 U.S.C. § 3729(a); 28 C.F.R. § 85.5(a). The Discrimination Condition expressly references the FCA and purports to achieve an end run around the federal government's burden to prove that a representation is "material to the Government's payment decisions" before these significant penalties will attach. Standard DHS Terms § C.XVII; *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192, 194 (2016). Moreover, the Department of Justice has formed a nationwide task force to target grantees that sign these certifications, has described potential liability under the FCA as a "weapon" it will deploy, and has "strongly encourag[ed]" private parties to bring civil suits against grant recipients. *See* RJN Ex. 12 (Civil Rights Fraud Initiative Memo), at pp. 1, 2.

The face of the certification requirement further underscores the ambiguity Plaintiffs have been dealt. Plaintiffs must certify that they "do not, and will not during the term of this financial assistance award, operate any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws." Standard DHS Terms § C.XVII.2.a.1. Yet, Defendants now narrowly define "Federal anti-discrimination laws" to seemingly exclude non-citizens by indicating that these laws "protect individual *Americans* from discrimination"—even though civil rights laws facially protect individuals *and* classes of persons from discrimination based on national origin, in addition to protections based on race, sex, religion, and disability. Is the Administration now contending that federal anti-discrimination law only protects Americans and individuals?

Nor do the terms identify the list of activities "that advance or promote DEI, DEIA, or discriminatory equity ideology," or even provide examples. Instead, the Standard DHS Terms vaguely define DEI to mean "diversity, equity, and inclusion" and DEIA to mean "diversity, equity, inclusion, and accessibility." *Id*. § C.XVII.1.a-b. With respect to "discriminatory equity ideology," the Standard DHS Terms incorporate Section 2(b) of Executive Order No. 14190, *Ending Radical Indoctrination in K-12 Schooling*, 90 Fed. Reg. 8,853 (Jan. 29, 2025), which states vaguely that it is "an ideology that treats individuals as members of preferred or disfavored groups, rather than as individuals, and minimizes agency, merit, and capability in favor of immoral generalizations[.]" Similarly, Plaintiffs must certify that they do not and will not "engage in[] a discriminatory prohibited boycott," but DHS has provided no definition or meaning of that prohibition. Standard DHS Terms § C.XVII.2.a.ii.

What's more, the Discrimination Condition also leaves undefined the terms "operate," "program," "advance," "engage," and "promote." Similarly, the DEI Disclosure Requirement has *no* definition for "diversity, equity, and inclusion practice" and does not seem limited to violations of federal anti-discrimination law, leaving Plaintiffs with basis to know what is prohibited. Grants Manual § 6.11.3.

These gaping holes in the terms Defendants construe as being material to their decisions to issue awards are inherently problematic for recipients. "DEI as a concept is broad: one can imagine a wide range of viewpoints on what the values of diversity, equity, and inclusion mean when describing a program or practice[.]" *Nat'l Educ. Ass'n v. United States Dep't of Educ.*, 779 F. Supp. 3d 149, 188 (D.N.H. 2025); *San Francisco Unified Sch. Dist. v. AmeriCorps*, No. 25-CV-02425-EMC, 2025 WL 1713360, at *18 (N.D. Cal. June 18, 2025) ("DEI" and "equity" based restrictions "are rife with vagueness and ambiguity, leaving grantees to speculate what is proscribed and what is permitted"). Despite the layers of ambiguity, the Discrimination Condition does not even identify a single exemplar "program" or other activity "that advance[s] or promote[s] DEI, DEIA," "discriminatory equity ideology," or "discriminatory prohibited boycott" to provide fair notice of what conduct is unlawful. The Discrimination Condition does incorporate an executive order's definition of "discriminatory equity ideology." But that incorporation does nothing to resolve the ambiguity, since that executive order's definition is based on "immoral generalizations" within the executive order that are ambiguous and confer unconstrained enforcement discretion to the agencies. *AmeriCorps*, 2025 WL 1713360, at *18 (finding conditions ambiguous because incorporated provisions of executive orders were "highly ambiguous."). Ultimately, "[b]ecause the terms at issue are so broad and involve inherent value judgments, they leave regulated persons without proper notice of what conduct they must certify they are not engaging in, and they empower the government to enforce the [c]ertification [r]equirement arbitrarily." *Am. Fed'n of Tchrs. v. Dep't of Educ.*, SAG-25-628, 2025 WL 2374697, at *31 (D. Md. Aug. 14, 2025). This ambiguity is irreconcilable with the limits of the spending power.

The EO Condition is equally vague and ambiguous. Recipients cannot possibly ascertain what it means to comply with all executive orders "related to grants" that this Administration has issued *or might issue in the future*. Standard DHS Terms § C.XXXI. Indeed, it is unclear what it even means for an executive order to be "related to grants." The lack of legal foundation for this condition is

exacerbated by the fact that an "an executive order is not 'law,' within the meaning of the Constitution," *California v. EPA*, 72 F.4th 308, 318 (D.C. Cir. 2023), and none of President Trump's executive orders impose direct obligations on Plaintiffs as recipients of federal funds. As another court recently found, these executive order "conditions are impermissibly vague because they incorporate the equally vague language of the EOs themselves and because in some cases they do not specify *which* EOs are 'applicable to grantees' and in all cases they do not explain *how* the EOs are applicable to grantees." *City of Fresno v. Turner*, No. 25-cv-07070-RS, 2025 WL 2469330, at *15-16 (N.D. Cal. Aug. 27, 2025). Underscoring the ambiguous nature of the EO Condition here, the Standard DHS Terms do enumerate *specific* executive orders in other parts that must be complied with, showing that Defendants do know how to provide more detail.[12] *See* Standard DHS Terms § C.XLI.

The EO Condition also is in tension with the spending power's requirement that conditions must be unambiguous *before* a recipient enters into the grant agreement with the federal government. *Pennhurst*, 451 U.S. at 25 (spending power does not include the ability to impose "post acceptance or 'retroactive' conditions"). Defendants' effort to bootstrap all executive orders in as a catch-all, regardless of whether they have been signed in the past, present, or future, does not comport with this limit on the spending power. Rather, the open-ended nature of this condition gives unbridled enforcement discretion to carry out President Trump's political agenda when he wants it and how he wants it regardless of any constitutional limit.

Courts have repeatedly held that ambiguous conditions—including conditions materially similar to the Unlawful DHS Conditions—violate the spending power. *E.g.*, *Americorps*, 2025 WL 1713360, at *18-22; *City of Fresno*, 2025 WL 2469330, at *5; *see also Chicago Women in Trades v. Trump*, No. 25-cv-02005, 2025 WL 933871, at *8 (N.D. Ill. Mar. 27, 2025) (recognizing the meaning of DEI conditions "is left entirely to the imagination"). There is no reason to reach a different result

---

[12] The EO Condition is also problematic in that it is unclear whether it is intended to apply even to executive orders a court has enjoined. *See, e.g.*, *City & Cnty. of San Francisco v. Trump*, 783 F. Supp. 3d 1148, 1203, 1204 (N.D. Cal. May 3, 2025); 782 F.3d 830, 836 (N.D. Cal. May 9, 2025); 2025 WL 2426858, at *2 (N.D. Cal. Aug. 22, 2025).

here and Plaintiffs are likely to succeed on the merits of their claim.

In addition, the Unlawful DHS Conditions violate the spending power's "independent constitutional bar" rule, *Dole*, 483 U.S. at 210, including by requiring Plaintiffs to violate separation of powers principles and the First Amendment rights of contractors and members of the public. *See* Compl. ¶¶ 216-234, 265, 270-71.

**b.    The Unlawful DHS Conditions Are Unrelated to the Purpose of the Grants.**

Defendants' application of the Unlawful DHS Conditions to Plaintiffs' awards also violates the spending power's requirement that conditions imposed on federal grants must be "reasonably related to the purpose of the expenditure." *New York v. U.S.*, 505 U.S. 144, 172 (1992) (citation omitted); *Dole*, 483 U.S. at 207, 209 ("[C]onditions on federal grants" must be "reasonably calculated to address th[e] particular . . . purpose . . . for which the funds are expended."). This requirement is crucial: Without "some relationship" between spending conditions and "the purpose of the federal spending," "the spending power could render academic the Constitution's other grants and limits of federal authority." *New York*, 505 U.S. at 167. Defendants' conditions do precisely that, for there is no such relationship here. Nothing in the statutes authorizing any of Plaintiffs' DHS awards, or in the emergency management purposes for which Congress appropriated the funds, suggests any relationship between (a) the purpose of the federal spending at issue and (b) the Unlawful DHS Conditions' implementation of anything approaching President Trump's political ideology or the full sweep of executive orders has issued or might issue in the future.

If anything, the new conditions Defendants seek to impose on Plaintiffs' awards are antithetical to Congress's express purpose to guarantee public safety, community preparedness, and security of critical infrastructure. There is no question that Plaintiffs' funding requests qualified for funding: Otherwise, FEMA would not have issued awards and in some cases even predetermined targeted allocations for Plaintiffs in the first place. Rather than work in partnership with Plaintiffs to fulfill Congress's express intent to guarantee public safety and security for all community members, Defendants' unprecedented conditioning of funds now forces local governments to choose between resisting arbitrary, unlawful, and ideological mandates, and obtaining funding for the exact safety

measures Congress sought to incentivize in the first place to prevent harm. And as already noted, the conditions repeatedly contravene express requirements Congress imposed as part of its legislative prerogative contemplating consideration of equity and accessibility in carrying out programs. *Supra* I.A.B.1. Because of the unlawful strings attached to the federal funds for Plaintiffs' qualifying projects, Defendants are leaving a patchwork of problems congressional leaders determined *needed* to be addressed. *E.g.*, Callagy Decl. (San Mateo County) ¶ 28; Johnson Decl. (Oakland) ¶ 40; Bowman Decl. (SF) ¶¶ 11-13; Thomas Decl. (SF) ¶¶ 6-9; Kim Decl. (SF) ¶¶ 16-17.) That is precisely why Defendants are not free to impose terms that are not "reasonably related to the purpose of the expenditure." *New York*, 505 U.S. at 172. Plaintiffs are therefore likely to succeed on the merits.

### C. The Unlawful DHS Conditions Violate the APA.

The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary" and "capricious," "not in accordance with law," "contrary to constitutional right," "in excess of statutory jurisdiction," or "without observance of procedure required by law." 5 U.S.C. § 706(2). There are two sets of final agency actions at issue in this Motion: First, Defendants adopted the Unlawful DHS Conditions as a matter of policy, and thus categorically apply them to all grant programs. Second, Defendants attached the Unlawful DHS Conditions to each and every grant agreement through which Plaintiffs would receive federal funding, both directly and indirectly. Plaintiffs are likely to succeed on the merits of their claims that these agency actions violate the APA.

### 1. The Unlawful DHS Conditions Are Final Agency Action.

As a threshold issue, Defendants' policy decision to adopt the Unlawful DHS Conditions and apply them categorically to grant recipients is a "final agency action" subject to review under the APA. The same is true for Defendants' attachment of those conditions to Plaintiffs' awards from DHS. *See* 5 U.S.C. § 704. Ultimately, "finality[] must be interpreted in a pragmatic and flexible manner." *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (cleaned up). Defendants' decisions to categorically apply the Discrimination and EO Conditions in the Standard DHS Terms to *all* awards marks "the 'consummation' of the agency's decision-making process," from which "legal consequences will flow," and is therefore a final agency action reviewable under the APA. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted); *Illinois*, 2025 WL 2716277

at *8 (holding "the decision to attach the conditions can be final even if the final decision to award the funds and issue the NOFOs is still pending"). So too does the decision to apply the Unlawful DHS Conditions to individual grants. As courts have recognized, the decision to impose new conditions on federal grants is a final agency action because it "articulate[s] that certain funds" will "require adherence to the" new conditions and "opens up the [recipient] to potential legal consequences," including withholding of funds if the recipient is unable to accept. *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1031–32 (N.D. Cal. 2018); *see also King Cnty.*, 785 F.3d at 873, n.18; *Rhode Island Coal. Against Domestic Violence v. Bondi*, No. CV 25-279 WES, 2025 WL 2271867, at *1 (D.R.I. Aug. 8, 2025)). Thus, there is no jurisdictional bar to reviewing Plaintiffs' APA claims.[13]

### 2. The Unlawful DHS Conditions Exceed Defendants' Statutory Authority and Are Contrary to the Constitution.

Defendants' adoption, imposition, attachment, and enforcement of the Unlawful DHS Conditions are "not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," and "in excess of statutory . . . authority" within the meaning of the APA for the reasons set forth above. 5 U.S.C. § 706(2)(A)-(C); *supra* Sections I.B.1-2. These conditions must therefore be held unlawful and vacated. *AmeriCorps*, 2025 WL 1713360, at *17 (finding plaintiffs likely to succeed on APA claim where "Congress expressly embedded [DEIA] principles throughout [] enabling statutes"); *City of Fresno*, 2025 WL 2721390, at *10, *12 (finding APA violation where DEI and immigration conditions were not authorized and "in some cases the statutes even contradict the conditions" and where conditions "violate Separation of Powers as in excess of statutory authority").

### 3. The Unlawful DHS Conditions Are Arbitrary and Capricious.

Defendants' adoption, imposition, and enforcement of the Unlawful DHS Conditions are also arbitrary and capricious because the conditions are not the result of "reasoned decisionmaking" and

---

[13] The Tucker Act does not bar the claims since the challenge is to the "agencies' *policies* and *guidance* to condition funding on the Grant Conditions on *statutory*, namely APA, and *constitutional* grounds, and they seek injunctive relief barring Defendants' imposition of the conditions and setting aside related internal agency directives." *City of Fresno*, 2025 WL 2721390, at *6.

are neither "reasonable" nor "reasonably explained." *Michigan v. EPA*, 576 U.S. 743, 750 (2015);

*Ohio v. EPA*, 603 U.S. 279, 292 (2024) (cleaned up). An agency must offer "a satisfactory explanation

for its action" and can neither "rel[y] on factors which Congress has not intended it to consider" nor

simply ignore "an important aspect of the problem[.]" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*

*Farm Mut. Auto. Ins. Co. ("State Farm")*, 463 U.S. 29, 43 (1983). While agencies are free to change

their existing policies, they must "display awareness that" they are doing so, provide "good reasons for

the new policy," and demonstrate that they have taken account of "reliance interests" engendered by

the prior policy. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

      Adoption, imposition, and enforcement of the Unlawful DHS Conditions bear all of the

hallmarks of unreasoned decision-making. Generally, whether the agency "entirely failed to consider

an important aspect of the problem" or "relied on factors which Congress has not intended it to

consider," *State Farm*, 463 U.S. at 43, "turns on what a relevant substantive statute makes important,"

*Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996) (cleaned up). Agency action is thus

arbitrary and capricious when the agency neither "look[s] to" nor "discuss[es]" statutory

"requirements," *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657,

682 (2020), or "relie[s] on factors which Congress has not intended it to consider." *State Farm*, 463

U.S. at 43. Thus, an agency cannot impose grant conditions without ensuring that the relevant statutes

support those conditions. *See New York v. Trump*, 769 F. Supp. 3d 119, 142 (D.R.I. 2025) (failing to

consider whether action "fell within the bounds of their statutory authority" was arbitrary and

capricious), *appeal docketed*, No. 25-1236 (1st Cir. Mar. 10, 2025); *Illinois*, 2025 WL 2716277 at

*11-12 (holding Standard DHS Terms for immigration arbitrary and capricious).

      Here, Defendants have adopted, and now seek to impose, the Unlawful DHS Conditions on

grants without any authorization to do so on a grant-by-grant and statute-by-statute basis. Their

imposition of a systematic prohibition on DEI also underscores that Defendants failed to consider the

many statutory terms that actually *require* DHS to "ensure that the civil rights and civil liberties of

persons are not diminished by efforts, activities, and programs aimed at securing the homeland," 6

U.S.C.§ 111(b)(1)(G), as well as certain statutory terms authorizing actions readily described as "DEI"

or "DEIA." *Supra* Section I.B.1. By instead basing funding decisions on compliance with the

President's political agenda, DHS transparently "relied on factors which Congress has not intended it to consider." *State Farm*, 463 U.S. at 43; *City of Fresno*, 2025 WL 2721390, at *8 (actions furthering presidential directive are not exempt from arbitrary-and-capricious review (collecting cases)).

Furthermore, in seeking to arbitrarily rewrite the law without authority, Defendants have failed to observe procedures required by law. *See* 5 U.S.C. § 706(2)(D). Defendants are obligated to follow the Office of Management and Budget Guidance in Title 2 of the Code of Federal Regulations, Part 200. 2 C.F.R. § 3002.10. As to "[s]pecific conditions," "[f]ederal agencies are responsible for ensuring that specific Federal award conditions . . . are consistent with the program design" and enumerate specific conditions that may be included. 2 C.F.R. § 200.208(a). Regulations also require Defendants to clarify "[t]he reason why the specific condition(s) is being imposed" "[p]rior to imposing specific conditions." 2 C.F.R. § 200.208(d)(2). But as Plaintiffs have shown, no reason has been provided that the conditions comply with congressional programs.

In imposing the Unlawful DHS Conditions, Defendants have also failed to consider multiple longstanding reliance interests. Before Defendants imposed the Unlawful DHS Conditions, "grant recipients were not subject—at least as a matter of agency policy—to conditions prohibiting the promotion of DEI, gender ideology," and executive order compliance. *City of Fresno*, 2025 WL 2721390, at *8. As one district court recognized, "these references to federal law make clear that their interpretation is undergoing significant change. Accordingly, the Grant Conditions reflect changes in agency position which require not only an explanation of reasoning but also consideration of reliance interests among other important factors." *Id*. But nothing in the Standard DHS Terms or Defendants' imposition of the Unlawful DHS Conditions shows any effort to consider reliance interests. "The failure to even consider reasons to not impose the contested conditions highlights the arbitrariness of the process." *Illinois*, 2025 WL 2716277, at *12.

Furthermore, Defendants evidently failed to consider how the conditions jeopardize and threaten local governments' "capacity to protect public safety in the areas where federal and [local] cooperation is most critical." *Illinois*, 2025 WL 2716277, at *12. Rather than work in furtherance of the public's interests, the record shows Defendants sandbagged recipients with new unlawful terms that risk a patchwork of security problems because recipients cannot legally accept them. Given the

apparent lack of reasoned decision making, Plaintiffs are likely to succeed on their claim that

Defendants' imposition of the Unlawful DHS Conditions is arbitrary and capricious.

## II.   Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief.

Based on deadlines imposed by Defendants, some Plaintiffs must decide as early as **October 24** to either accept unlawful conditions or lose federal funding earmarked for vital public safety and security services. This is itself an irreparable harm, as a plaintiff may suffer constitutional injury from being forced into a "Hobson's choice" between accepting unconstitutional conditions and losing out on federal funding Congress appropriated for them to use to protect their communities. *See, e.g.*, *Hecox v. Little*, 104 F.4th 1061, 1088 (9th Cir. 2024); *Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057–59 (9th Cir. 2009). The loss of the funds would also result in immediate, irreparable, and reverberating harms— including by upending budgets, forcing the sacrifice of critical public safety upgrades intended to protect the community and first responders, and risking diminished community trust due to hampered community protection efforts. *E.g.*, Nutt Decl. (Santa Rosa) ¶ 13; McDonough Decl. (Tucson) ¶ 19; Shikada Decl. (Palo Alto) ¶ 15; Johnson Decl. (Oakland) ¶ 42; Bowman Decl. (SF) ¶ 13; Kim Decl. (SF) ¶¶ 16-17; Wu Decl. (SF) ¶¶ 6-11; Rubi Dec. (San Diego City) ¶¶ 13, 17-18.[14]

These real risks to Plaintiffs are not hypothetical problems; they are immediate obstacles exacerbated by the decisions of this Administration. Even a temporary interruption in funding disrupts procurement and management of programs that help prevent the loss of life and property during natural disasters and man-made threats. *E.g.*, Wallis Decl. (Sonoma County) ¶ 22.  Loss of funds

---

[14] *City & Cnty. of San Francisco*, 779 F. Supp. 3d at 1082 (finding "irreparable injury in the form of budgetary uncertainty, deprivation of constitutional rights, and undermining trust between the Cities and Counties and the communities they serve"); *see also Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (acknowledging irreparable harm exists to "enforcement and public safety interests"); *City of Los Angeles v. Sessions*, No. Cv-17-7215-R, 2018 WL 6071072, at *3 (C.D. Cal. Sept. 13, 2018) (finding irreparable harm where city had to either "diminish[] community trust and undermine[] public safety" by implementing objectionable policies or forgoing funding).

would harm programs designed to protect Plaintiffs' residents, including the most vulnerable among them, from worst-case scenarios like terrorist and cyber-attacks, fires, floods, and earthquakes. *E.g.*, Reed Decl. (Santa Clara) ¶¶ 14-15, 29-30; Whitman Decl. (Sonoma SCCDC) ¶ 9; Cochran Decl. (Petaluma) ¶¶ 7-10; Riordan Decl. (San Jose) ¶¶ 9-10; Thomas Decl. (SF) ¶ 8. The uncertainty that Defendants are creating undermines Plaintiffs' ability to do long-term planning: without reliable and stable funding, they cannot responsibly commit to multi-year projects, leaving them ultimately less prepared to address both current and emerging threats. *E.g.*, Jeakle Decl. (San Diego County) ¶ 38. The threats to public safety and emergency management are particularly significant since Plaintiffs' diverse, urban, and metropolitan areas include streets, railways, advanced telecommunications and power systems, and other critical infrastructure that will support large scale events vulnerable to public safety threats, including but not limited to the 2026 FIFA World Cup and 2026 Super Bowl LX, in addition to the hundreds of events that already occur annually. *E.g.*, Chavez Decl. (LA City) ¶¶ 3, 28; Riordan Decl. (San Jose) ¶ 9; Burrus Decl. (SF) ¶¶ 12-13; Reed Decl. (Santa Clara) ¶ 29.

Ultimately, these extensive harms not only "impact [Plaintiffs'] ability to carry on day-to-day operations and fulfill [their] legal obligations," they could be permanent if Defendants "transfer, re-allocat[e], or re-obligat[e]" grants to other recipients. *Climate United Fund v. Citibank, N.A.*, 775 F. Supp. 3d 335, 349 (D.D.C. 2025); *see also Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 767 F. Supp. 3d 243, 288 (D. Md. 2025) (loss of federal grants was irreparable harm where "monetary recovery" was "likely to be precluded" in "light of Defendants' sovereign immunity"). An injunction must issue to safeguard Plaintiffs from irreparable harm.

### III. The Balance of Hardships and Public Interest Strongly Favor Preliminary Relief.

The balance of the equities and the public interest favor an injunction. In a case against the federal government, these factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). And in a case involving an alleged constitutional violation, the two factors are satisfied by likely success on the merits of the underlying claim. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014); *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (finding that "it is always in the public interest to prevent the violation of a party's constitutional rights") (cleaned up). This approach is sensible, because there can be no harm to the Defendants from an injunction

prohibiting them from enforcing grant requirements that offend established constitutional principles. *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (defendants "cannot suffer harm from an injunction that merely ends an unlawful practice").

The factual record also underscores the point. Whatever interest Defendants may have in imposing the grant conditions and enforcing them during the course of this litigation pales in comparison to Plaintiffs' irreparable harm from the conditions. If Plaintiffs are forced to decline funds due to unlawful conditions, public safety initiatives will be hamstrung and essential services and employees may be cut. *E.g.*, Schmit Decl. (Snohomish County) ¶¶ 14-15; Buddenhagen Decl. (Berkeley) ¶¶ 17-18; Nachbar Decl. (Culver City) ¶ 7; Hawkesworth Decl. (Pasadena) ¶ 16; Hewett Decl. (Bellingham) ¶ 13; Bowman Decl. (SF) ¶¶ 11-13; Kim (SF) ¶ 17; Thomas Decl. (SF) ¶¶ 8-9; Heiser Decl. (San Diego City) ¶¶ 25-26; Reed Decl. (Santa Clara) ¶ 27. Plaintiffs may also never be able to recoup funds to which they were otherwise entitled. If Plaintiffs accept the terms, Defendants make no assurances that they will not weaponize FCA liability to carry out President Trump's agenda, which continues to be reaffirmed in executive action. Recent court orders granting similar preliminary relief undercut any hardship argument that Defendants could proffer; if myriad executive agencies can comply with a preliminary injunction against the enforcement of unlawful conditions and related executive orders, then Defendants have no serious argument that they cannot comply with an injunction in this case. Issuing the funding Plaintiffs seek to protect in this case actually benefits Defendants by carrying out federal goals and interests relating to preparedness measures and the prevention of and response to crime and terrorism. *E.g.*, Chavez Decl. (LA City) ¶¶ 23, 26, 28; Bowman Decl. (SF) ¶ 13; Kim Decl. (SF) ¶¶ 8, 16-17; Thomas Decl. (SF) ¶ 8; Reed Decl. (Santa Clara) ¶ 21. Accordingly, the public interest and balance of equities unequivocally tilt in favor of providing Plaintiffs interim relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court issue a preliminary injunction prohibiting Defendants from imposing or enforcing the Unlawful DHS Conditions on Plaintiffs, withholding funding on the basis of those unlawful conditions, or imposing any materially similar conditions on Plaintiffs.

Dated:  October 1, 2025

TONY LOPRESTI
County Counsel
KAVITA NARAYAN
Chief Assistant County Counsel
MEREDITH A. JOHNSON
Lead Deputy County Counsel
RAPHAEL N. RAJENDRA
HANNAH M. GODBEY
Deputy County Counsels

By:  /s/Tony LoPresti
TONY LOPRESTI
County Counsel

Attorneys for Plaintiff
COUNTY OF SANTA CLARA


DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
MOLLIE M. LEE
Chief of Strategic Advocacy
SARA J. EISENBERG
Chief of Complex and Affirmative Litigation
DAVID S. LOUK
STEVEN A. MILLS
Deputy City Attorneys

By:  /s/Steven A. Mills

Steven A. Mills
Deputy City Attorney

Attorneys For Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

By: /s/Sharanya Mohan
SHARANYA (SAI) MOHAN (SBN 350675)
ERIN MONJU*
NAOMI TSU*
TOBY MERRILL*
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org
erin@publicrightsproject.org
naomi@publicrightsproject.org
toby@publicrightsproject.org

Attorneys for Plaintiffs CITY OF ALAMEDA, CITY OF
BELLINGHAM, CITY OF BERKELEY, CITY OF
CULVER, KING COUNTY, COUNTY OF LOS
ANGELES, COUNTY OF MARIN, CITY OF
OAKLAND, CITY OF PALO ALTO, CITY OF
PASADENA, CITY OF PETALUMA, PIERCE
COUNTY, CITY OF SACRAMENTO, CITY OF SAN
DIEGO, SAN DIEGO COUNTY, CITY OF SAN JOSE,
COUNTY OF SAN MATEO, CITY OF SANTA
MONICA, CITY OF SANTA ROSA, COUNTY OF
SONOMA, SONOMA COUNTY WATER AGENCY,
SONOMA VALLEY COUNTY SANITATION
DISTRICT, SONOMA COUNTY COMMUNITY
DEVELOPMENT COMMISSION, SNOHOMISH
COUNTY, CITY OF TUCSON


YIBIN SHEN
Alameda City Attorney

By: /s/Yibin Shen
YIBIN SHEN (SBN 233545)
CARA SILVER (SBN 136992)
Special Counsel
DANIEL J. TURNER (SBN 336499)
Deputy City Attorney
2263 Santa Clara Avenue, Rm 280
Alameda, CA 94501
Tel: (510) 747-4750
yshen@alamedaca.gov
csilver@alamedaca.gov
dturner@alamedaca.gov

Attorneys for Plaintiff
CITY OF ALAMEDA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FARIMAH F. BROWN
Berkeley City Attorney

By: /s/Farimah F. Brown
    FARIMAH F. BROWN (SBN 201227)
    City Attorney
    KATRINA L. EILAND (SBN 275701)
    Deputy City Attorney
    STEPHEN A. HYLAS (SBN 319833)
    Deputy City Attorney
    2180 Milvia Street, Fourth Floor
    Berkeley, CA 94704
    Tel: (510) 981-6998
    Fax: (510) 981-6960
    fbrown@berkeleyca.gov
    keiland@berkeleyca.gov
    shylas@berkeleyca.gov

    Attorneys for Plaintiff
    CITY OF BERKELEY


LEESA MANION
King County Prosecuting Attorney

By: /s/David J. Hackett
    DAVID J. HACKETT*
    Executive General Counsel
    ALISON HOLCOMB*
    Deputy Executive General Counsel
    Special Deputy Prosecuting Attorneys
    Chinook Building
    401 5th Avenue, Suite 800
    Seattle, WA 98104
    Tel: (206) 477-2720
    David.Hackett@kingcounty.gov
    aholcomb@kingcounty.gov

    Attorneys For Plaintiff
    MARTIN LUTHER KING, JR. COUNTY

1
HYDEE FELDSTEIN SOTO
Los Angeles City Attorney

2
By: /s/Michael J. Dundas

3
MICHAEL J. DUNDAS (SBN 226930)
Chief Assistant City Attorney

4
JOSHUA M. TEMPLET (SBN 267098)
Deputy City Attorney

5
Office of the Los Angeles City Attorney
200 North Main Street, Room 800

6
Los Angeles, CA 90012
Tel: (213) 978-8100

7
mike.dundas@lacity.org
joshua.templet@lacity.org

8

9
Attorneys For Plaintiff
CITY OF LOS ANGELES

10

11
By: /s/Thomas J. Faughnan

12
THOMAS J. FAUGHNAN (SBN 155238)
Senior Assistant County Counsel
BRIGIT GREESON ALVAREZ (SBN 237301) Deputy

13
County Counsel
Office of the County Counsel

14
648 Kenneth Hahn Hall of Administration
500 West Temple Street

15
Los Angeles, CA 90012-2713
Tel: (213) 681-0408

16
Tfaughnan@counsel.lacounty.gov
Bgreesonalvarez@counsel.lacounty.gov

17

18
Counsel for Plaintiffs
COUNTY OF LOS ANGELES and

19
LOS ANGELES COUNTY CONSOLIDATED FIRE
PROTECTION DISTRICT

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRIAN E. WASHINGTON
Marin County Counsel

By: /s/Kate K. Stanford
KATE K. STANFORD (SBN 302825)
Deputy County Counsel
EDWARD F. SEARS (SBN 297775)
Deputy County Counsel
3501 Civic Center Drive, Suite 275
San Rafael, CA 94903
Tel: (415) 473-6117
kate.stanford@marincounty.gov

Attorneys for Plaintiff
COUNTY OF MARIN


RYAN RICHARDSON
Oakland City Attorney

By: /s/Ryan Richardson
RYAN RICHARDSON (SBN 223548)
City Attorney
MARIA BEE (SBN 167716)
Chief Assistant City Attorney
JAIME HULING DELAYE (SBN 270784) Supervising
City Attorney
H. LUKE EDWARDS (SBN 313756)
Deputy City Attorney
DIVYA MUSINIPALLY (SBN 316114)
Deputy City Attorney
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Tel: (510) 238-3836
Fax: (510) 238-6500
ledwards@oaklandcityattorney.org

Attorneys for Plaintiff
CITY OF OAKLAND

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOLLY S. STUMP
City Attorney

By: /s/Mark Vanni
MOLLY S. STUMP (SBN 177165)
City Attorney
CAIO A. ARELLANO (SBN 262168)
Chief Assistant City Attorney
MARK J. VANNI (SBN 267892)
Assistant City Attorney
CITY OF PALO ALTO
250 Hamilton Ave., 8th Floor
Palo Alto, CA 94301
Tel: (650) 329-2171
Fax: (650) 320-2646
Molly.Stump@PaloAlto.gov
Caio.Arellano@PaloAlto.gov
Mark.Vanni@PaloAlto.gov

Attorneys for Plaintiff
CITY OF PALO ALTO


ERIC DANLY
City Attorney

By: /s/Eric Danly
ERIC DANLY (SBN 201621)
City Attorney
11 English Street
Petaluma, CA 94952
Tel: (707) 778-4362
EDanly@cityofpetaluma.org

Attorney for Plaintiff
CITY OF PETALUMA


MARY E. ROBNETT
Pierce County Prosecuting Attorney

By: /s/Jonathan R. Salamas
JONATHAN R. SALAMAS (WSBA # 39781)
Deputy Prosecuting Attorney / Civil*
930 Tacoma Avenue South, Suite 946
Tacoma, WA 98402-2102
Tel: 253-798-4862
Fax: 253-798-6713
jonathan.salamas@piercecountywa.gov

Attorney for Plaintiff
PIERCE COUNTY

SUSANA ALCALA WOOD
Sacramento City Attorney

By: /s/Andrea Velasquez
    ANDREA VELASQUEZ (SBN 249210)
    Supervising Deputy City Attorney
    KATHERINE UNDERWOOD (SBN 249308)
    Senior Deputy City Attorney
    915 I St Fl 4, Sacramento, CA 95814-2621
    Tel: 916-808-5346
    Fax: 916-808-7455
    AVelasquez@cityofsacramento.org
    KUnderwood@cityofsacramento.org

    Attorneys for Plaintiff
    CITY OF SACRAMENTO


HEATHER FERBERT
San Diego City Attorney

By: /s/Mark Ankcorn
    MARK ANKCORN (SBN 166871)
    Senior Chief Deputy City Attorney
    JULIE RAU (SBN 317658)
    Deputy City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Tel: (619) 533-5800

    Attorneys for Plaintiff
    CITY OF SAN DIEGO


NORA FRIMANN
San José City Attorney

By: /s/Nora Frimann
    NORA FRIMANN (SBN 93249)
    City Attorney
    ELISA TOLENTINO (SBN 245962)
    Chief Deputy City Attorney
    200 E Santa Clara St., 16th Floor
    San José, CA 95113-1905
    Tel: 408-535-1900
    Fax: 408-998-3131
    cao.main@sanjoseca.gov

    Attorneys for Plaintiff
    CITY OF SAN JOSÉ

1

JOHN D. NIBBELIN
San Mateo County Counsel

2

By: /s/John D. Nibbelin

3

John D. Nibbelin (SBN 184603), County Counsel
Rebecca M. Archer (SBN 202743), Chief Deputy

4

Lauren F. Carroll (SBN 333446), Deputy
Savannah Eldridge (SBN 357723), Deputy

5

500 County Center, 4th Floor
Redwood City, CA 94063

6

Tel: (650) 363-4250
jnibbelin@smcgov.org

7

rmarcher@smcgov.org
lcarroll@smcgov.org

8

seldridge@smcgov.org

9

Attorneys for Plaintiff

10

COUNTY OF SAN MATEO

11

TERESA L. STRICKER

12

Santa Rosa City Attorney

13

By: /s/Teresa L. Stricker

14

TERESA L. STRICKER (SBN 160601)
City Attorney

15

AUTUMN LUNA (SBN 288506)
Chief Assistant City Attorney HANNAH E. FORD-

16

STILLE (SBN 335113)
Deputy City Attorney

17

100 Santa Rosa Ave, Room 8
Santa Rosa, CA 95404

18

Tel: (707) 543-3040
tstricker@srcity.org

19

aluna@srcity.org
hfordstille@srcity.org

20

Attorneys for Plaintiff

21

CITY OF SANTA ROSA

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JASON J. CUMMINGS
Snohomish County Prosecuting Attorney

By: /s/Bridget E. Casey
     BRIDGET E. CASEY*
     REBECCA J. GUADAMUD*
     REBECCA E. WENDLING*
     Snohomish County Prosecuting Attorney's Office
     3000 Rockefeller Avenue, M/S 504
     Everett, WA 98201-4046
     Tel: (425) 388-6392
     bcasey@snoco.org
     rebecca.guadamud@co.snohomish.wa.us
     rwendling@snoco.org

     Attorneys for Plaintiff
     SNOHOMISH COUNTY


ROBERT H. PITTMAN
Sonoma County Counsel

By: /s/Joshua A. Myers
     JOSHUA A. MYERS (SBN 250988)
     Chief Deputy County Counsel
     County of Sonoma
     575 Administration Drive, Room 105A
     Santa Rosa, California 95403
     Tel: (707) 565-2421
     Fax: (707) 565-2624
     joshua.myers@sonomacounty.gov

     Attorney for Plaintiff
     COUNTY OF SONOMA, SONOMA COUNTY
     WATER AGENCY, SONOMA VALLEY COUNTY
     SANITATION DISTRICT, SONOMA COUNTY
     COMMUNITY DEVELOPMENT COMMISSION

*Application forthcoming for admission *pro hac vice*

1

**FILER'S ATTESTATION**

2          I, David S. Louk, am the ECF user whose identification and password are being used to file

3   this Complaint for Declaratory and Injunctive Relief.  Pursuant to Civil Local Rule 5-1(i)(3), I hereby

4   attest that the other above-named signatories concur in this filing.

5

6   Dated:  October 1, 2025

7                                         DAVID CHIU
                                          City Attorney
8                                         YVONNE R. MERÉ
                                          Chief Deputy City Attorney
9                                         MOLLIE M. LEE
                                          Chief of Strategic Advocacy
10                                        SARA J. EISENBERG
                                          Chief of Complex and Affirmative Litigation
11                                        DAVID S. LOUK
                                          STEVEN A. MILLS
12                                        Deputy City Attorneys

13

14                                    By:  */s/ David S. Louk*

15                                        DAVID S. LOUK
                                          Deputy City Attorney
16
                                          Attorneys For Plaintiff
17                                        CITY AND COUNTY OF SAN FRANCISCO

18

19

20

21

22

23

24

25

26

27

28