# EXHIBIT 2

# TO

# REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ILLINOIS, *et al.*,

    Plaintiffs,

v.

FEDERAL EMERGENCY
MANAGEMENT AGENCY, *et al.*,

    Defendants.

Civil Action No.
25-cv-206-WES-PAS

## DECLARATION OF DAVID RICHARDSON

I, David Richardson, declare as follows:

1.     I am the Senior Official Performing the Duties of the Administrator at the Federal Emergency Management Agency ("FEMA" or "agency"). FEMA is a component within the U.S. Department for Homeland Security ("DHS"). As the Senior Official Performing the Duties of the FEMA Administrator, I am the DHS official responsible for being the principal advisor to the President and Secretary of Homeland Security ("Secretary") for all matters related to emergency management in the United States. I am also vested with the authority to manage and administer the various grant programs assigned to FEMA directly by statute or through delegation from the Secretary. In these capacities, I am familiar with the grant programs administered by FEMA and the policies and procedures governing these programs.

2.     My statements in this Declaration are based on my personal knowledge, on information provided to me in my official capacity; on reasonable inquiry; information obtained from various records, systems, databases, DHS, or FEMA employees and information portals maintained and relied upon by the DHS in the regular course of business; and on my evaluation of that information.

3.     FEMA administers grants that fall under three general categories: Preparedness, Mitigation, and Disaster. Preparedness grants support activities that improve

1

the readiness of communities to respond to emergencies and disasters. Preparedness grants fund training, exercises, and planning initiatives that enhance the capabilities of local, state, and tribal governments. Mitigation grants focus on reducing the long-term risk of disaster damage. Mitigation grants fund projects that strengthen infrastructure, implement hazard-resistant building codes, and promote community resilience through various initiatives aimed at minimizing future disaster impacts. Disaster grants provide financial assistance to individuals, communities, and some private nonprofit organizations directly affected by disasters. Disaster grants help cover costs related to recovery efforts, including housing assistance, public infrastructure repair, and other essential services needed to restore communities after a disaster.

4. I have reviewed agency records concerning each DHS grant program that FEMA administers and that Plaintiffs' Complaint addresses. I also have reviewed those same records concerning each version of the DHS Standard Terms & Conditions ("Terms") that Plaintiffs have identified in the preliminary-injunction motion filings. ECF 20-4, -5, -6 (respectively dated Mar. 27, 2025; Apr. 18, 2025; and May 17, 2025).

5. The federal government's fiscal year ("FY") runs from October 1 through September 30. DHS grants that have been issued or will issue during FY 2025, and therefore, correspond to periods of performance that start at some point between October 1, 2024, and September 30, 2025, and will have different end dates depending on the specific grant program and the project- specific costs they support. The periods of performance for grants awarded before FY 2025 may also extend into FY 2025 (*e.g.*, a Homeland Security Grant Program grant awarded in FY 2022 has a period of performance that begins on September 1, 2022, and ends on August 31, 2025). The Terms will not apply to those grants.

6. On March 25, 2025, the Secretary signed a memorandum ("March 25 Memo") outlining which grant programs might apply immigration enforcement-related conditions. The March 25 Memo notes that DHS/FEMA's application of any conditions or restrictions on grant program applications or funding would vary based on the structure,

purpose, and statutory authority of each respective program. After reviewing each of FEMA's grant programs and authorizing statutes, the March 25 Memo determined which grant programs could be *exempt* from immigration enforcement conditions, and which grant programs required further review. The March 25 Memo establishes two things: (1) that the Department will not apply immigration enforcement provisions across the board to all its programs, identifying several programs where such conditions will not apply; and (2) that further consideration and analysis is needed for 12 identified programs before making a decision on whether to apply conditions to those programs. While the March 25 Memo makes final determinations regarding programs where immigration enforcement provisions will not apply, it remains predecisional concerning whether and how FEMA might apply the immigration enforcement conditions to the remaining programs. The copy of the March 25 Memo attached to Plaintiffs' Complaint as Ex. B (ECF 12) is accurate.

7. Since the issuance of the March 25 Memo, DHS has been completing the additional analysis for the identified grant programs to determine whether it should apply restrictions related to federal immigration enforcement to each program and, if so, the scope of those restrictions. DHS has not yet made any final decision regarding the application of the immigration enforcement provisions to the programs identified in the Memo for further consideration.

8. The Terms cover a broad range of conditions that could potentially apply to awards under the numerous grant programs administered by DHS components. A particular condition in the Terms, however, may not apply to a particular recipient and/or a particular grant award, such as where the statute that a condition is implementing only applies to certain recipient types, the particular grant program does not implicate the condition, or the award agreement for a specific program expressly excludes or revises a condition.

9. The April Terms include specific conditions requiring compliance with federal civil immigration law, cooperation with federal civil immigration enforcement, and certifying that the grant applicant does and will not operate programs that benefits illegal

3

immigrants or incentivize illegal immigration (Sections C.IX and C.XVII(2)(a)(iii), the "Immigration Conditions").

10. The Immigration Conditions were not included in any grant awards that had already been made before March 27, 2025.

11. DHS/FEMA have not terminated or taken any action on any of its grant programs due to the Immigration Conditions.

12. In keeping with the March 25 Memo, DHS is analyzing whether the Immigration Conditions can be applied to the following grant programs in a way that is consistent with the specific statutes that apply to each grant program because the purpose of each grant program has a nexus to immigration activities, law enforcement, or national security, and DHS may tailor the Immigration Conditions to a specific grant program:

- Emergency Management Performance Grant (EMPG)
- Homeland Security Grant Program – State Homeland Security Program (SHSP)
- Homeland Security Grant Program – Urban Area Security Initiative (UASI)
- Port Security Grant Program (PSGP)
- Presidential Residence Protection Assistance (PRPA)

13. In keeping with the March 25, Memo, DHS has made a final determination that that the Disaster relief grant programs, the Mitigation grant programs, and certain Preparedness grant programs identified in the Plaintiffs' Complaint will ***not*** be subject to the Immigration Conditions.

14. Specifically, the agency has made a final determination that Immigration Conditions do ***not*** apply to the following grant programs and applicants for funding under the following programs are not required to comply with Immigration Conditions in order to receive funding:

- **Disaster Relief**:
  - Public Assistance Programs

4

- Disaster Case Management (DCM)
- Hazard Mitigation Grant Program (HMGP)
- Fire Management Assistance Grant (FMAG)
- **Mitigation:**
  - National Earthquake Hazards Reduction Program – Individual State Earthquake Assistance (NEHRP-ISEA)
  - Flood Mitigation Assistance (FMA)
  - National Dam Safety Program (NDSP)
  - Community Assistance Program – State Support Services Element (CAP-SSSE)
  - National Urban Search & Rescue Response System (US&R)
  - Cooperating Technical Partners Program (CTP)
- **Preparedness:**
  - State and Local Cybersecurity Grant Program (SLCGP)
  - Nonprofit Security Grant Program (NSGP)

15. The above determination by DHS supersedes any language in the April Terms suggesting that the Immigration Conditions apply to these grant programs.

16. Specifically with respect to the FMAG program identified by Plaintiffs, the Immigration Conditions do not apply to the FEMA-State Agreements required for FMAG funding.

17. A Notice of Funding Opportunity ("NOFO") establishes DHS's guidance concerning various aspects of a particular Preparedness or Mitigation grant program for a specific fiscal year. Those aspects include the program's objectives, the amount of money appropriated by Congress for the program, how states can demonstrate their eligibility for funding and how they must apply for it, and the terms and conditions that apply to those programs. DHS/FEMA cannot award a Fiscal Year ("FY") 2025 Preparedness or Mitigation grant until after DHS/FEMA issues a NOFO for the program.

18. For Preparedness and Mitigation grants, states are not required to acknowledge DHS's Terms until they apply for a NOFO. The Terms that are in effect at the time the grant is awarded apply to the grant, not the Terms in effect at the time of the NOFO.

19. DHS/FEMA has not issued any NOFOs for any of the Preparedness or Mitigation programs identified in the Plaintiffs' complaint for FY 2025.

I, David Richardson, declare under penalty of perjury that the foregoing is true and correct.

Executed on June 6, 2025

David Richardson
Senior Official Performing the Duties of the Administrator
Federal Emergency Management Agency

6