1

2

3

4

5

6

7

8

BRETT A. SHUMATE
Assistant Attorney General
ANDREW WARDEN
Assistant Branch Director
CRAIG H. MISSAKIAN
United States Attorney
J. STEPHEN TAGERT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 353-8486
stephen.tagert@usdoj.gov
*Attorneys for Defendants*

9

10

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

11

12

13

14

15

16

17

18

19

COUNTY OF SANTA CLARA; CITY AND
COUNTY OF SAN FRANCISCO, *et al*.,

　　　　　　　　　　　*Plaintiffs*,

　　　　　v.

KRISTI NOEM, in her official capacity as
Secretary of the Department of Homeland
Security, *et al*.,

　　　　　　　　　　*Defendants*.

Case No. 3:25-cv-08330-WHO

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION**

Hearing Date: Nov. 19, 2025
Time: 10:00 a.m.
Before: Hon. William H. Orrick
Via Videoconference

20

21

22

23

24

*County of Santa Clara, et al. v. Donald J. Trump, et al.*, 5:25-cv-08330-WHO – Opposition to Preliminary
Injunction Motion

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

I.    Legal Background ...................................................................................................... 2

II.   This Litigation ........................................................................................................... 4

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ....................................................................................................................... 5

I.    Plaintiffs Have Failed to Establish This Court's Jurisdiction .................................. 5

    A.    This Court Lacks the Power to Order Direct Monetary Payments ........................ 5

    B.    Plaintiffs Do Not Have Standing to Challenge Five Named Programs ................. 8

II.   Plaintiffs Are Unlikely to Succeed on the Merits .................................................. 10

    A.    All Challenged DHS Conditions Are Lawful and Constitutional ........................ 10

        1.    The Anti-Discrimination Condition Is Constitutional ............................. 10

            a.    The Anti-Discrimination Condition Does Not Violate the "Separation of Powers." ..................................................... 12

            b.    The Anti-Discrimination Condition Does Not Violate the Spending Clause ...................................................................... 14

        2.    The EO Condition Is Constitutional ........................................................ 17

            a.    The EO Condition Does Not Violate the "Separation of Powers." ............................................................................... 17

            b.    The EO Condition Does Not Violate the Spending Clause ......... 18

    B.    All Challenged DHS Conditions Do Not Violate the APA ................................. 19

        1.    Awards for Seven Grants Are Not Reviewable Because They Are Discretionary Grants Committed to Agency Discretion .......................... 19

        2.    Plaintiffs' APA Claim Also Fails on the Merits ..................................... 21

III.  Plaintiffs Have Failed to Demonstrate Irreparable Harm ..................................... 23

IV.   The Balance of the Equities Favors Denying the Motion ...................................... 24

*County of Santa Clara, et al. v. Donald J. Trump, et al.*, 5:25-cv-08330-WHO – Opposition to Preliminary Injunction Motion

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

V.      Any Injunctive Relief Should Be Narrowly Tailored .......................................................... 25

VI.     Any Injunctive Relief Should Be Accompanied By A Bond. ............................................ 25

CONCLUSION ......................................................................................................................... 25

*County of Santa Clara, et al. v. Donald J. Trump, et al.*, 5:25-cv-08330-WHO – Opposition to Preliminary Injunction Motion

ii

# TABLE OF AUTHORITIES

**Cases**

*Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*,
570 U.S. 205 (2013).................................................................................... 24

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
357 F.3d 62 (D.C. Cir. 2004)........................................................................ 6

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ...................................................................... 5

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
750 F.2d 1470 (9th Cir. 1985) .................................................................... 24

*Bd. of Educ. for the Silver Consol. Schs. v. McMahon*,
2025 WL 2017177 (D.N.M. July 18, 2025).............................................. 14

*Boaz Hous. Auth. v. United States*,
994 F.3d 1359 (Fed. Cir. 2021)................................................................... 6

*Bostock v. Clayton Cnty., Georgia*,
590 U.S. 644 (2020).................................................................................... 16

*Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668 (9th Cir 1988) ...................................................................... 23

*City of Arlington v. FCC*,
569 U.S. 290 (2013).................................................................................... 13

*City of Los Angeles v. Barr*,
929 F.3d 1163 (9th Cir. 2019) .................................................................... 17

*City of Los Angeles v. Barr*,
941 F.3d 931 (9th Cir. 2019) ...................................................................... 13

*Climate United Fund v. Citibank, N.A.*,
--- F.4th ----, 2025 WL 2502881 (D.C. Cir. Sept. 2, 2025) ................. 6, 13

*Dalton v. Specter*,
511 U.S. 462 (1994).................................................................................... 13

*Dep't of Educ. v. California*,
604 U.S. 650 (2025).............................................................................. 5, 6, 7

*Diamond Alternative Energy, LLC v. Env't Prot. Agency*,
145 S. Ct. 2121 (2025)................................................................................. 8

*County of Santa Clara, et al. v. Donald J. Trump, et al.*, 5:25-cv-08330-WHO – Opposition to Preliminary
Injunction Motion

iii

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) .................................................................................................... 22

*FCC v. Prometheus Radio Project*,
  592 U.S. 414 (2021) .................................................................................................... 22

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ........................................................................................ 5

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ...................................................................................................... 6

*Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*,
  463 U.S. 582 (1983) .................................................................................................... 11

*Heckler v. Chaney*,
  470 U.S. 821 (1985) .................................................................................................... 20

*Holley v. United States*,
  124 F.3d 1462 (Fed. Cir. 1997) .................................................................................... 8

*Ingersoll-Rand Co. v. United States*,
  780 F.2d 74 (D.C. Cir. 1985) ........................................................................................ 6

*Lamie v. U.S. Tr.*,
  540 U.S. 526 (2004) .................................................................................................... 16

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) .............................................................................................. 20, 21

*Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*,
  729 F.3d 1025 (9th Cir. 2013) .................................................................................... 20

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................................... 9

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009) ........................................................................................ 5

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
  567 U.S. 209 (2012) ...................................................................................................... 6

*Mayweathers v. Newland*,
  314 F.3d 1062 (9th Cir. 2002) ...................................................................... 14, 15, 18

*Medina v. Planned Parenthood S. Atl.*,
  145 S. Ct. 2219 (2025) .................................................................................................. 6

*Milk Train, Inc. v. Veneman,*
    310 F.3d 747 (D.C. Cir. 2002) ......................................................................... 20, 21

*Miller v. Gammie,*
    335 F.3d 889 (9th Cir. 2003) ................................................................................. 7

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024) ............................................................................................. 19

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ............................................................................................... 22

*Murthy v. Missouri,*
    603 U.S. 43 (2024) ................................................................................................. 8

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n,*
    145 S. Ct. 2658 (2025) ..................................................................................... 7, 24

*Nat'l Treasury Emps. Union v. Trump,*
    No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) ................................ 25

*New York v. NSF,*
    No. 25-cv-4452, 2025 LEXIS 148779 (S.D.N.Y. Aug. 1, 2025) .......................... 13

*Nken v. Holder,*
    556 U.S. 418 (2009) .......................................................................................... 5, 24

*Pennhurst State Sch. & Hosp. v. Halderman,*
    451 U.S. 1 (1981) ................................................................................................. 15

*Perry Cap. LLC v. Mnuchin,*
    864 F.3d 591 (D.C. Cir. 2017) ............................................................................... 8

*Pol'y & Rsch., LLC v. HHS,*
    313 F. Supp. 3d 62 (D.D.C. 2018) ....................................................................... 21

*Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.,*
    944 F.2d 597 (9th Cir. 1991) .......................................................................... 23-24

*San Francisco A.I.D.S. Found. v. Trump,*
    786 F. Supp. 3d 1184 (N.D. Cal. 2025), *appeal filed* No. 25-4988 (9th Cir. 2025) ........... 11, 12

*Serrato v. Clark,*
    486 F.3d 560 (9th Cir. 2007) ............................................................................... 20

*Sharp v. Weinberger,*
    798 F.2d 1521 (D.C. Cir. 1986) ............................................................................. 8

*County of Santa Clara, et al. v. Donald J. Trump, et al.,* 5:25-cv-08330-WHO – Opposition to Preliminary
Injunction Motion

v

*Sierra On- Line, Inc. v. Phoenix Software, Inc.*,
    739 F.2d 1415 (9th Cir. 1984) ........................................................................................ 5

*South Dakota v. Dole*,
    483 U.S. 203 (1987) ...................................................................................................... 15

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ........................................................................................................ 8

*Stanley v. Univ. of S. Cal.*,
    13 F.3d 1313 (9th Cir. 1994) ....................................................................................... 23

*Starbucks Corp. v. McKinney*,
    602 U.S. 339 (2024) ........................................................................................................ 5

*State ex rel. Becerra v. Sessions*,
    284 F. Supp. 3d 1015 (N.D. Cal. 2018) ......................................................... 14, 17, 19

*State v. Dep't of Just.*,
    951 F.3d 84 (2d Cir. 2020) .......................................................................................... 17

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023) ......................................................................................... 11, 16, 23

*Thakur v. Trump*,
    148 F.4th 1096 (9th Cir. 2025) ...................................................................................... 7

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................................................ 8

*Trump v. Boyle*,
    145 S. Ct. 2653 (2025) ................................................................................................. 24

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025) ...................................................................................................... 25

*Trump v. Wilcox*,
    145 S. Ct. 1415 (2025) ................................................................................................. 24

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*,
    770 F. Supp. 3d 155 (D.D.C. 2025), *dismissed sub nom. United States Conf. of Cath.
    Bishops v. U.S. Dep't of State*, No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025)....... 8

*United States v. Virginia*,
    518 U.S. 515 (1996)...................................................................................................... 23

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
    579 U.S. 176 (2016) ...................................................................................................... 11

*County of Santa Clara, et al. v. Donald J. Trump, et al.*, 5:25-cv-08330-WHO – Opposition to Preliminary Injunction Motion

vi

*West Virginia v. EPA*,
    597 U.S. 697 (2022) ................................................................................................ 13

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .......................................................................................... 5, 23, 24

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) ................................................................................................ 13

**U.S. Constitution**

U.S. Const. art. I, § 8, cl. 1 .......................................................................................... 14

**Statutes**

5 U.S.C. § 701 ............................................................................................................ 20

5 U.S.C. § 702 .............................................................................................................. 6

6 U.S.C. § 596 ............................................................................................................ 20

6 U.S.C. § 596b .......................................................................................................... 20

6 U.S.C. § 604 .............................................................................................................. 9

6 U.S.C. § 605 .............................................................................................................. 9

6 U.S.C. § 762 .............................................................................................................. 9

6 U.S.C. § 1135 .......................................................................................................... 20

15 U.S.C. § 2229 ............................................................................................ 9, 19, 20, 21

15 U.S.C. § 2229a ...................................................................................................... 19

28 U.S.C. § 1491 .......................................................................................................... 6

31 U.S.C. § 372 .......................................................................................................... 10

42 U.S.C. § 2000d .......................................................................................... 10, 14, 16

42 U.S.C. § 2000d-1 ........................................................................................... 10, 16

42 U.S.C. § 5170c ...................................................................................................... 21

46 U.S.C. § 70107 ...................................................................................................... 20

*County of Santa Clara, et al. v. Donald J. Trump, et al.*, 5:25-cv-08330-WHO – Opposition to Preliminary Injunction Motion

vii

**Rules**

Fed. R. Civ. P. 65 ................................................................................................ 25

**Regulations**

2 C.F.R. § 170.315 .............................................................................................. 18

2 C.F.R. Part 200 ................................................................................................. 18

2 C.F.R. § 200.211 .............................................................................................. 18

2 C.F.R. § 200.300 ..................................................................... 10, 14, 16, 18

2 C.F.R. § 200.303 .............................................................................................. 17

44 C.F.R. § 206.436 ............................................................................................ 19

*Ending Illegal Discrimination and Restoring Merit-Based Opportunity,*
    Executive Order 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025) .......................... 2

*Ending Radical and Wasteful Government DEI Programs and Preferencing,*
    Executive Order 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025) .......................... 2

*Ending Radical Indoctrination in K-12 Schooling,*
    Executive Order 14,190, 90 Fed. Reg. 8853 (Jan. 29, 2025) ................... 3, 11

**Other Authorities**

FEMA, Notice of Funding Opportunity (NOFO): FY 24 Staffing for Adequate Fire and
    Emergency Response (SAFER) Grant Program,
    https://www.fema.gov/sites/default/files/documents/fema_gpd_safer-nofo_fy24.pdf ............... 4

Grants Manual,
    https://www.fema.gov/sites/default/files/documents/fema_gpd_fy2025-preparedness-
    grants-manual_082025.pdf ........................................................................ 4, 16

U.S. Dep't of Homeland Sec, FY 2016 DHS General Terms and Conditions (Jan. 29, 2016),
    https://www.dhs.gov/sites/default/files/publications/Fiscal%20Year%202016%20DHS%20
    Standard%20Terms%20and%20Conditions%20Version%206-0%20Dated%2001-29-
    2016_0.pdf ............................................................................................. 22

U.S. Dep't of Homeland Sec, FY 2021 DHS Standard Terms and Conditions (Feb. 17, 2021),
    https://www.dhs.gov/sites/default/files/publications/fy_2021_dhs_standard_terms_and_
    conditions_version.pdf ............................................................................ 18

U.S. Dep't of Homeland Sec, FY 2022 DHS Standard Terms and Conditions (Jan. 24, 2022),
    https://www.dhs.gov/sites/default/files/2022-
    01/fy_2022_dhs_terms_and_conditions_version_2_dated_jan_24_2022_508.pdf ................. 18

*County of Santa Clara, et al. v. Donald J. Trump, et al.*, 5:25-cv-08330-WHO – Opposition to Preliminary
Injunction Motion

viii

U.S. Dep't of Homeland Sec, FY 2023 DHS Standard Terms and Conditions (Nov. 29, 2022),
    https://www.dhs.gov/sites/default/files/2023-
    01/FY%202023%20DHS%20Terms%20and%20Conditions%20Version%202%20Dated
    %20November%2029%202022.pdf ........................................................................................ 18

U.S. Dep't of Homeland Sec, FY 2025 DHS Standard Terms and Conditions *Version 3*
    (Apr. 18, 2025),
    https://www.dhs.gov/sites/default/files/2025-
    08/2025_0418_fy2025_dhs_terms_and_conditions_version_3.pdf ................................ *passim*

*County of Santa Clara, et al. v. Donald J. Trump, et al.*, 5:25-cv-08330-WHO – Opposition to Preliminary
Injunction Motion

ix

**INTRODUCTION**

Plaintiffs are a group of municipalities and municipal agencies from throughout the country seeking to dictate the terms for how the Federal Emergency Management Agency ("FEMA")—a component of the Department of Homeland Security ("DHS")—administers its grant awards and move this Court to implement emergency relief to allow them to continue accepting government funding without complying with the necessary terms and conditions. Specifically, Plaintiffs moved for a preliminary injunction that would upset the status quo during the pendency of the litigation by requiring FEMA to issue and accept federal grant awards, and disburse potentially unrecoverable federal funds to recipients, without terms that it has determined properly implement and effectuate the grant programs. Such sweeping relief is inappropriate.

To begin, the Court lacks jurisdiction over many aspects of this dispute. To the extent that Plaintiffs seek to require the United States to pay money pursuant to federal grants, the Tucker Act places those claims within the exclusive jurisdiction of the Court of Federal Claims, and Plaintiffs lack standing to challenge the implementation of the conditions at issue for several discretionary grant programs because no Plaintiff is alleged to have been awarded those grants.

Even if the Court had jurisdiction, Plaintiffs' substantive arguments are unlikely to succeed on the merits. Plaintiffs argue that FEMA cannot enforce two conditions that implement federal anti-discrimination law and all executive orders related to grants for several reasons, claiming that the conditions both violate the Constitution and the Administrative Procedure Act ("APA"). But FEMA has the statutory authority to implement these conditions and has done so in the past. There is nothing unlawful about ensuring that recipients of federal funds comply with federal law, so Plaintiffs' arguments fail.

Plaintiffs also fail to satisfy the other factors for the extraordinary remedy of a preliminary injunction. There is no irreparable injury because all their damages are economic and are thus reparable, and the balance of equities favor the United States. The Court should thus deny Plaintiffs' motion for a preliminary injunction.

**BACKGROUND**

## I.    Legal Background

Since taking office on January 20, 2025, the President has issued several executive orders consistent with federal law, setting the policy priorities for his administration intended to eliminate all types of discrimination. Many focus on the expenditure of federal funds, instructing federal agencies to terminate, review, or revise federal grants. One of those orders is Executive Order 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025), entitled *Ending Radical and Wasteful Government DEI Programs and Preferencin*g ("EO 14,151"). The President issued EO 14,151 to eliminate "illegal and immoral discrimination programs, going by the name 'diversity, equity, and inclusion' (DEI)," in the government, *id.* § 1, and in it, the President instructed "[e]ach agency, department, or commission head" to "terminate, *to the maximum extent allowed by law,* . . . 'equity-related' grants or contracts." *Id.* § 2(b) (emphasis added).

Similarly, on January 21, 2025, the President issued Executive Order 14,173, 90 Fed. Reg. 8633, entitled *Ending Illegal Discrimination and Restoring Merit-Based Opportunity* ("EO 14,173"), to "enforc[e] our civil-rights laws" by "ending illegal preferences and discrimination." EO 14,173 § 1. EO 14,173 contains a certification provision instructing all agency heads to "include in every contract or grant award" a requirement that the recipient "certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws" because that certification is material to the government's payment decisions. *Id.* § 3(b)(iv)(A)-(B). EO 14,173 also directs the Attorney General, in consultation with federal agencies, to write a report identifying "[t]he most egregious and discriminatory DEI practitioners" and outlining a plan of action to "deter DEI programs or principles . . . that constitute illegal discrimination or preferences," including through "[l]itigation," "[p]otential regulatory action and sub-regulatory guidance," and "[o]ther strategies." *Id.* § 4(b). EO 14,173 made clear, however, that it did not restrict recipients "from engaging in First Amendment-protected speech." *Id.* § 7(b).

Consistent with those executive orders, DHS revised its standard terms and conditions for all new federal awards of financial assistance for which the federal award date occurs in FY 2025

and flows down to subrecipients. *See* U.S. Dep't of Homeland Sec, FY 2025 DHS Standard Terms and Conditions *Version 3* (Apr. 18, 2025), ECF No. 1-1, ("Standard Conditions").[1] Relevant here, those terms and conditions require recipients to agree that they will comply with two requirements.

*First*, the Standard Conditions say, "Recipients must comply with all applicable Federal anti-discrimination laws," including by not "operat[ing] any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination law" or "engag[ing] in . . . a discriminatory prohibited boycott." *Id.* § C.XVII(2)(a)(i)-(ii). DEI is defined as "diversity, equity, and inclusions"; DEIA is defined as "diversity, equity, inclusion, and accessibility"; and discriminatory equity ideology is defined by reference to Executive Order 14, 190, 90 Fed. Reg. 8853 (Jan. 29, 2025), entitled *Ending Radical Indoctrination in K-12 Schooling* ("EO 14,190"). Standard Conditions § C.XVII(1)(a)-(c). EO 14,190, in turn, defines that term as "an ideology that treats individuals as members of preferred or disfavored groups, rather than as individuals, and minimizes agency, merit, and capability in favor of immoral generalizations," and it provides examples of discriminatory treatments, such as (1) saying members of one race, color, sex, or national origin are "inherently superior" to members of another; (2) ascribing moral character or status based on race, color, sex, or national origin; (3) saying members of a certain race, color, sex, or national origin should feel guilty or receive adverse treatment based on actions committed by other members of the same race, color, sex, or national origin; and (4) discriminating against or receiving adverse treatment to achieve diversity, equity, and inclusion. EO 14,190 § 2(b). Plaintiffs refer to this provision as the "Discrimination Condition," Compl. (ECF No. 1) ¶ 7; Pls.' Mem. in Supp. of Mot. for a Prelim. Inj. (ECF No. 19) ("Mem.") at 5, even though a more apt name is the "Anti-Discrimination Condition" since its express purpose is to end any types of discrimination to the maximum extent allowed by law.

Relatedly, Plaintiffs argue that "recipients of certain awards [must] agree to comply with

---

[1] https://www.dhs.gov/sites/default/files/2025-08/2025_0418_fy2025_dhs_terms_and_conditions_version_3.pdf (last visited Oct. 22, 2025).

derivative conditions in FEMA's August 2025 Preparedness Grants Manual" (the "Grants Manual"), including requiring "[a]ll non-disaster grant program reimbursement requests must be reviewed and approved by FEMA prior to drawdowns" and that those requests must indicate whether subrecipients have "any diversity, equity, [or] inclusion practices" if funding is provided. Mem. at 6 (quoting Grants Manual § 6.11.3, https://www.fema.gov/sites/default/files/documents/fema_gpd_fy2025-preparedness-grants-manual_082025.pdf (last visited Oct. 22, 2025)).

*Second*, the Standard Conditions say, "Recipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference." Standard Conditions § C.XXXI. Plaintiffs describe this as the "EO Condition." Compl. ¶ 7; Mem. at 6.

## II.    This Litigation

Plaintiffs are public municipalities and municipal agencies that allegedly "have received or been awarded, or anticipate receiving or being awarded, grants or subgrants under one or more" of ten grant programs administered by FEMA involving federal funds. *See* Compl. ¶¶ 65-66.[2] No Plaintiff is alleged to have been awarded funds under the current Standard Conditions for three of those grant programs: (1) the Hazard Mitigation Grant Program ("HMGP"), *see* Compl. ¶ 124; (2) the Staffing for Adequate Fire and Emergency Response ("SAFER") Program, *see* Compl. ¶ 136[3]; and (2) the Fire Prevention and Safety grant program ("FP&S"), *see* Compl. ¶ 148.

Plaintiffs brought this action arguing that the grant terms are unlawful because they violate

---

[2] One program—the Securing the Cities Grant Program ("STC")—is challenged only by Plaintiff City of Los Angeles as Plaintiff City of San Francisco specifically said it is not challenging any conditions related to that program. *See* Compl. ¶¶ 65-66, 155 n.18.

[3] Plaintiff City of Los Angeles was awarded SAFER grant funding in a prior year and will receive funding in fiscal year 2025, *see* Compl. ¶ 137, but according to the Complaint, Los Angeles will not need to comply with the 2025 Standard Conditions because "recipients of SAFER funds must 'comply with DHS Standard Terms and Conditions in effect at the time the award is issued." *Id.* ¶ 134 (quoting FEMA, Notice of Funding Opportunity (NOFO): FY 24 Staffing for Adequate Fire and Emergency Response (SAFER) Grant Program, https://www.fema.gov/sites/default/files/documents/fema_gpd_safer-nofo_fy24.pdf (last visited Oct. 22, 2025)).

the Separation of Powers, the Spending Cause, and the APA. *See* Comp. ¶¶ 243-87. Plaintiffs then moved for a preliminary injunction to enjoin these two conditions but did not move on any condition related to immigration enforcement. *See* Mem. at 4-7 & n.5.

## LEGAL STANDARD

Emergency injunctive relief, such as a preliminary injunction, is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs must make a clear showing that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20). The final two factors merge when the government is a party, *Nken v. Holder*, 556 U.S. 418, 435 (2009), and the "sliding scale" approach invoked by Plaintiffs applies only when the moving party has established that irreparable harm is "likely" absent an injunction, *Winter*, 555 U.S at 22, and the "hardship balance [] tips sharply toward the plaintiff[s]." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

Preliminary relief is meant to preserve the status quo pending final judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). When preliminary relief changes the status quo and "orders a responsible party to take action," it is "particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citations omitted). In such cases, the moving party "must establish that the law and facts *clearly favor* [its] position, not simply that [it] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

## ARGUMENT

## I.    Plaintiffs Have Failed to Establish This Court's Jurisdiction

### A.    This Court Lacks the Power to Order Direct Monetary Payments

Generally, federal district courts lack jurisdiction to "order the payment of money under" the APA because the federal government's sovereign immunity for claims seeking non-monetary relief "does not extend to orders 'to enforce a contractual obligation to pay money.'" *Dep't of*

*Educ. v. California*, 604 U.S. 650, 651 (2025) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). The APA's limited waiver also does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). The Tucker Act (28 U.S.C. § 1491(a)(1)) is one such statute that "grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *California*, 604 U.S. at 651 (quoting 28 U.S.C. § 1491(a)(1)). Specifically, the Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1), and it "impliedly forbids" bringing "contract actions" against "the government in a federal district court." *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) (citation omitted). This prohibition extends to claims founded on grants, like those at issue here, that are implemented through "contracts to set the terms of and receive commitments from recipients." *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021); *see also Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2231 (2025) (explaining that courts have historically described federal grants as contracts); *Climate United Fund v. Citibank, N.A.*, --- F.4th ----, 2025 WL 2502881, at *9 (D.C. Cir. Sept. 2, 2025) (same). This jurisdictional barrier ensures that contract claims against the United States are channeled into a court that has "unique expertise." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

The Supreme Court has recently reiterated the preclusive scope of the Tucker Act. In April, the Supreme Court stayed a district court order to make payments based on grants because the federal government was "likely to succeed in showing the District Court lacked jurisdiction" to bar termination of various education-related grants because the injunction was effectively an order "to enforce a contractual obligation to pay money." *California*, 604 U.S. at 651 (citation omitted). In August, the Supreme Court stayed a judgment vacating the federal government's termination of grants because the APA's limited waiver does not provide district courts with jurisdiction "to order

relief designed to enforce any 'obligation to pay money' pursuant to those grants." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (Mem.) (2025) ("*NIH*") (citation omitted).

This Court should follow the Supreme Court's stay rulings[4] to the extent that Plaintiffs are seeking to enforce an obligation to pay money pursuant to the grants they currently hold or that form the basis for their asserted injuries in this case. *See* Compl. ¶ 52 ("Plaintiffs variously receive this grant funding directly, by executing grant agreements with FEMA or other components of DHS, and indirectly, as subgrantees of funding from the States."). Although they purport to seek an injunction against grant conditions, the relief Plaintiffs request—uninterrupted grant funding pursuant to their federal grant agreements—is fundamentally contractual. Plaintiffs' basis for irreparable harm is they will "lose federal funding earmarked for vital public safety and security services," Mem. at 23, based on a dispute with the government about their grant terms, while explicitly requesting the Court to prevent Defendants from "retaliating" by "reducing the amount of a grant award to that Plaintiff or to any state agency through which Plaintiff may receive grant funding; refusing to issue, process, sign, or approve grant applications, grant agreements, or subgrant agreements; and refusing to issue, process, sign, or approve any invoice or request for payment, or reducing the amount of such approval or payment." Compl. at 76.

As in *California* and *NIH*, any entitlement that Plaintiffs may have to the funding they seek to preserve arises solely on the basis of their federal grant awards; they have no statutory or constitutional right to such funding. Because their theories of standing, relief, and irreparable harm hinge on contractual routing of funding to them as provided for in their grant agreements, cloaking

---

[4] Although the Ninth Circuit recently issued a decision denying the federal government's application for a stay in *Thakur v. Trump*, 148 F.4th 1096 (9th Cir. 2025), the Supreme Court's *NIH* decision—issued hours after *Thakur*—overrules *Thakur*'s reasoning. *See, e.g.*, *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc) (stating that district courts must apply Supreme Court authority over Ninth Circuit authority). As Justice Gorsuch explained in a separate opinion, the reasoning from *California*—that "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on any express or implied contract with the United States"—"binds lower courts as a matter of vertical *stare decisis*." *NIH*, 145 S. Ct. at 2664 (Gorsuch, J., concurring in part and dissenting in part) (quoting *California*, 604 U.S. at 651). The government has moved for panel reconsideration or reconsideration en banc in *Thakur* based on the decision in *NIH*.

their claims as seeking equitable relief under the Constitution and the APA is irrelevant. *See, e.g.*, *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (district court lacks jurisdiction over any case that "is in 'its essence contractual'"); *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act . . . .").

In short, Plaintiffs "want[] the Government to keep paying up" to maintain funding pursuant to contracts with the United States. *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025), *dismissed sub nom. United States Conf. of Cath. Bishops v. U.S. Dep't of State*, No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025). To the extent they seek to enforce such contract obligations, their claims are "founded upon a contract" and "must be heard in Claims Court." *Id.* at 165 (quoting *Sharp v. Weinberger*, 798 F.2d 1521, 1524 (D.C. Cir. 1986) (Scalia, J.) ("We know of no case in which a court has asserted jurisdiction . . . to issue an injunction compelling the United States to fulfill its contractual obligations.")).

**B.    Plaintiffs Do Not Have Standing to Challenge Five Named Programs**

Plaintiffs invoking the Court's jurisdiction must have Article III standing for "each claim that they press against each defendant," *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted), and "for each form of relief that they seek," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). And to show standing, a plaintiff must demonstrate, among other things, that it has suffered an injury in fact—that is, it has suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted); *see also Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 2121, 2133 (2025) (plaintiffs must have "a personal stake in [a] dispute" and not be a "mere bystander[]" (citation omitted)). For a plaintiff to have standing to pursue "forward-looking" relief such as an injunction, a party must show that the plaintiff "establish a substantial risk of future injury," not a "speculative" one. *Murthy*, 603 U.S. at 69.

Here, Plaintiffs fail to demonstrate that they have suffered an injury or will suffer one as to several programs listed in their Complaint because none of them has actually received a grant for

those programs or presented any facts demonstrating that they will receive those grants. *First*, no Plaintiff is alleged to currently receive or have yet been offered HMGP funds. In the Complaint, Plaintiffs state only that some "have applied for, and anticipate receiving or being awarded, HMGP pass-through funding for FY2025 or later" and that "[n]umerous Plaintiffs anticipate applying for HMGP pass-through funding in the coming year." Compl. ¶ 124. *Second*, there are no allegations that any Plaintiff has received or been offered SAFER grant funding while having to comply with the Standard Conditions. Compl. ¶ 136. Instead, only one Plaintiff was awarded SAFER grant funding in 2024, and it must comply with the 2024 Standard Conditions. Compl. ¶¶ 134, 137. *Third*, no Plaintiff currently receives or has been offered any FP&S funds. Instead, only one Plaintiff—the City of San Francisco—has applied for funding. Compl. ¶ 148. FP&S is a discretionary program awarded "on a competitive basis," 15 U.S.C. § 2229(d)(1), thus it is entirely speculative that San Francisco would receive an award even with a pending application.

And for two other programs—the Emergency Management Performance Grant Program ("EMPG") and the Homeland Security Grant Program ("HSGP")—Plaintiffs are subrecipients of the funds only and have no control over whether the funds are accepted. Each grant is provided directly to States, not municipalities. *See* 6 U.S.C. § 762(b) (EMPG grants are made "to States"); 6 U.S.C. §§ 604 (d)(1), 605(b)(1) (HSGP funds are distributed to States). The Complaint readily this fact. *See* Compl. ¶ 69 ("EMPG funds have been made available to States"); *id.* ¶ 86 ("FEMA had issued grant awards for HSGP funding" to several states). Thus, Plaintiffs have no power to make any decision regarding whether to accept those funds and any decisions about whether those funds are ultimately passed down to Plaintiffs are made non-parties not before the Court.

Those allegations do not establish that any Plaintiff is suffering, or is likely to suffer, any actual, imminent injury related to those programs. Instead, any alleged injury is speculative because Plaintiffs do not allege that they have a "specific connection" to the HMGP pass-through funding or EMPG funding. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 567 (1992). As of now, there is no risk—much less a "substantial" one—that any Plaintiff will have to accept the Standard

9

Conditions for these programs because none has been awarded any funds related to them. Therefore, Plaintiffs lack standing to challenge the Standard Conditions for either of those funds.

## II.    Plaintiffs Are Unlikely to Succeed on the Merits

Even if the Court proceeds to the merits, Plaintiffs have not demonstrated that they are likely to succeed. In fact, the opposite is true: both the Anti-Discrimination Condition and the EO Condition were implemented within FEMA's statutory authority in a manner consistent with past iterations of the Standard Conditions implementing federal law for all recipients of federal funds.

### A.    All Challenged DHS Conditions Are Lawful and Constitutional

#### 1.    The Anti-Discrimination Condition Is Constitutional

Under Title VI of the Civil Rights Act of 1964, recipients of federal assistance must comply with federal anti-discrimination law. *See* 42 U.S.C. § 2000d. Title VI further "authorize[s] and direct[s]" federal agencies that award federal funds to effectuate section 2000d by issuing rules and regulations. *Id.* § 2000d-1. Pursuant to this authority, DHS, as a federal agency, and FEMA, as a component of DHS, is required to ensure that all grant awards comply with federal law. Specifically, DHS must administer federal awards in a manner that ensures "that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. § 200.300(a). All relevant requirements must then be communicated to recipients and subrecipients and incorporated into the awards directly or by reference in the terms and conditions of the federal award. *Id.*

That is exactly what DHS did. It provided the terms and conditions required for any award and specifically told recipients of federal funds that they "must comply with all applicable Federal anti-discrimination laws material to the government's payment decisions for purposes of 31 U.S.C. § 372(b)(4)," including by not "operat[ing] any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws" or "engag[ing] in . . . a discriminatory prohibited boycott." Standard Conditions § C.XVII. It then incorporated EO 14,190 by reference, which provides specific examples of illegal discriminatory conduct, including programs that stereotype or demean persons solely because of their race, color, sex, or national

origin. *See* EO 14,190 § 2(b). Those provisions make plain that recipients cannot violate federal anti-discrimination law, including by using protected characteristics "as a stereotype or negative." *Cf. Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 213 (2023) (noting race can "never" be used as "a stereotype or negative"). And false certifications of compliance with civil rights laws are false statements that put recipients on notice that their compliance is material, *i.e.*, that it is "capable of influencing" the government's payment decision. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193 (2016).

This provision is not novel. It has been true for decades that "[e]very application for Federal financial assistance must, 'as a *condition* to its approval and the extension of any Federal financial assistance,' contain assurances that the program will comply with Title VI *and* with all requirements imposed pursuant to the executive regulations issued under Title VI." *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 629-30 (1983) (Marshall, J., dissenting) (citing regulations from more than federal ten agencies). These "assurances" of compliance are "given in consideration of" federal aid, "and the federal government extends assistance in reliance on the assurance of compliance"—but the obligations of Title VI apply regardless of any certification. *Id.* at 630 (citation omitted). The requirement here is no different: Although recipients must certify specifically that any DEI programs they run comply with federal antidiscrimination law, this certification "does not place upon a recipient any unanticipated burdens because any recipient must anticipate having to comply with the law." *Id.*

Accordingly, another Judge of this Court denied a similar challenge to a DEI certification provision, finding that the plaintiffs "have not demonstrated that they [are] likely to succeed in their challenge to the Certification Provision because they have not shown at this juncture that the provision goes beyond targeting DEI programs that violate federal antidiscrimination law." *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1200, 1221-22 (N.D. Cal. 2025), *appeal filed* No. 25-4988 (9th Cir. 2025). Further, the Fourth Circuit unanimously granted the government's motion for a stay in a case challenging Executive Order 14,173, which directs federal agencies to require grant recipients to certify that they do not operate unlawful DEI programs. *See*

Order, *National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025); *see id.* at 7 (Harris, J. concurring) (explaining that the challenged provision "appl[ies] only to conduct that violates existing federal anti-discrimination law").

Further, the Anti-Discrimination Condition at issue here, implemented by FEMA, simply requires recipients to certify their compliance with existing law. An incorrect premise in Plaintiffs' arguments against the Anti-Discrimination provision is that they are required to violate anti-discrimination laws by complying with the Standard Conditions. *See, e.g.*, Mem. at 6 (arguing Plaintiffs must "pledge to recognize the President's incorrect, incoherent, ambiguous, and legally unsupported distortion of federal anti-discrimination laws across all of their operations and risk civil and criminal penalties, or else forgo funding entirely"); *id.* at 8 (asserting that the conditions "rewrite anti-discrimination law as it has long been understood"). But Plaintiffs are not being asked to sign on to the Administration's policy preferences, or even the Administration's views about the proper interpretation of federal anti-discrimination laws. Plaintiffs are simply agreeing not to violate the laws currently in place. They may disagree with the government's legal interpretations, and policy preferences in this area, but that has little to do with the condition, which simply asks funding recipients to certify that they are complying with anti-discrimination laws. Moreover, Plaintiffs have not demonstrated that they actually disagree with DHS as to how those laws apply to a particular set of facts, instead relying on vague assertions that the challenged provision raises "serious questions" about how it would apply in practice. Mem. at 14; *see San Francisco A.I.D.S. Found.*, 786 F. Supp. 3d at 1221 ("Plaintiffs have not provided sufficient evidence that the government has enforced or plans to enforce the *Certification Provision* in a way that implicates DEI programs beyond those that 'violate any applicable Federal anti-discrimination law.'").

### a.    The Anti-Discrimination Condition Does Not Violate the "Separation of Powers."

Plaintiffs argue that the Anti-Discrimination Condition is "unconstitutional" because it "[v]iolate[s] the Separation of Powers." Mem. at 8. But Plaintiffs invoke several *statutory*

doctrines for this proposition, all without elaborating which one applies. *First*, Plaintiffs invoke non-constitutional cases relating to whether agencies had statutory—not constitutional—authority to perform certain actions. *See* Mem. at 8 (citing *City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019); *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013)). *Second*, Plaintiffs invoke the "major questions doctrine," *id.* at 9 (citing *West Virginia v. EPA*, 597 U.S. 697, 724 (2022)) which is "a fundamental canon of statutory construction" and addresses the "particular and recurring problem" of "agencies asserting highly consequential power beyond what Congress could reasonably be understood to have granted." *West Virginia*, 597 U.S. at 721, 724 (citation omitted). And several parts of Plaintiffs' motion confirm that their argument is a statutory one rather than a constitutional one, as they invoke a "statutory scheme," Mem. at 9; argue that "no terms [of a governing statute] authorize the Unlawful DHS Conditions," *id.* at 10; and say that "nothing in the [HSGP] statutes authorized the Unlawful DHS Conditions," *id.* at 11; *see also id.* ("Again, these statutes do not authorize the Unlawful DHS Conditions.").

Even under this scattershot approach, Plaintiffs' argument fails. To start, *Dalton v. Specter*, 511 U.S. 462 (1994), forecloses their ability to raise statutory arguments with constitutional dressing. There, the Supreme Court reversed a federal circuit court that had "reasoned, relying primarily on *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), that whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id.* at 471. The Court stated this reasoning was incorrect because the Supreme Court's "cases do not support the proposition that every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. Instead, the Court "often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* Therefore, "claims simply alleging that the President [or an executive officer] has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review." *Id.* at 473. The Court should thus ignore Plaintiffs' attempt to constitutionalize their statutory claim. *See Climate*, 2025 WL 2502881, at *10 (citing cases); *New York v. NSF*, No. 25-cv-4452, 2025 LEXIS 148779 (S.D.N.Y. Aug. 1,

2025) (challenge to directives and grants was statutory, not constitutional, under *Dalton*). And, as discussed *supra*, FEMA fully complied with the relevant governing statutes. Indeed, FEMA is *required* to include conditions to ensure that recipients comply with anti-discrimination law. *See* 2 C.F.R. § 200.300(a). The Anti-Discrimination Condition sensibly implements 42 U.S.C. § 2000d. That Congress did not specifically spell out that FEMA must enforce anti-discrimination laws in each statute governing a grant program does not remove FEMA's authority to ensure that recipients follow those laws. There is thus no basis for a "Separation of Powers" violation.

### b.    The Anti-Discrimination Condition Does Not Violate the Spending Clause.

In the alternative, Plaintiffs argue that the Anti-Discrimination Condition is unlawful, even if Congress authorized those conditions, under the U.S. Constitution's Spending Clause. U.S. Const. art. I, § 8, cl. 1. As an initial matter, the Spending Clause does not apply here because it limits Congress' power to legislate only and has no application to Executive Branch decisions about how to expend appropriated funds Congress. *See Bd. of Educ. for the Silver Consol. Schs. v. McMahon*, 2025 WL 2017177, at *10 (D.N.M. July 18, 2025) ("[T]he Spending Clause is only implicated 'when Congress imposes a spending or funding condition.' And without alleging congressional action, Plaintiff 'cannot state a claim under the Spending Clause.'" (citation omitted)). Even if the Spending Clause applied, the challenge would still fail because the condition is unambiguous and relates to the general purpose of enforcing anti-discrimination law.

Under the Spending Clause, statutes passed by Congress must meet certain criteria. Absent a violation of another constitutional provision, all that is required is that they must be "in pursuit of the general welfare" and "unambiguous, clearly communicating . . . the consequences of [] participation in the federally funded scheme." *Mayweathers v. Newland*, 314 F.3d 1062, 1066 (9th Cir. 2002) (citation omitted). The funding must "bear *some relationship* to the purpose of the federal spending," but that is a "low-threshold." *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1034 (N.D. Cal. 2018). In any event, "Congress may . . . 'further broad policy objectives by

conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (citation omitted).

Plaintiffs' first argument on this front is that the Anti-Discrimination provision is ambiguous. *See* Mem. at 13. It's not. The provision specifically requires "compl[iance] with all applicable Federal anti-discrimination laws," including by "operat[ing] any programs that advance or promote DEI, DEIA, or discriminatory equity ideology in violation of Federal anti-discrimination laws" or "engag[ing] in . . . a discriminatory prohibited boycott." Standard Conditions § C.XVII(2)(a)(i)-(ii). To comply with the clear notice requirement of Spending Clause jurisprudence, Congress must only make clear that acceptance of federal funds obligates States to comply with a condition. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981). *Pennhurst* explicitly recognized that a State's obligations under a Spending Clause program may be "largely indeterminate," so long as Congress gives "clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with" the condition. *Id.* at 24–25. States make an "informed choice" when the Federal Government simply makes clear that acceptance of federal money obligates the States to comply with a condition. *Id.* at 25. Indeed, the Ninth Circuit has recognized that the Spending Clause is satisfied where a "statute's *intention to impose a condition* is expressed clearly," even though the operation of a funding condition "is perhaps unpredictable." *Mayweathers*, 314 F.3d at 1067. There is no requirement to "list every factual instance in which a [funding recipient] will fail to comply with a condition" because requiring "[s]uch specificity would prove too onerous, and perhaps, impossible." *Id.*

Here, there is no doubt that grantees must comply with the Anti-Discrimination provision. Plaintiffs have identified no ambiguity about whether they are subject to the conditions; that is why they filed this lawsuit. While FEMA requires recipients to certify that any DEI programs they operate comply with anti-discrimination law, Plaintiffs cannot plausibly argue that the more specific certification is impermissible given that it is subsumed within the broader certification prohibiting funding recipients from operating *any* programs that violate federal anti-discrimination law. Indeed, it is unclear why Plaintiffs believe this provision is ambiguous—they claim that "the

federal government has now called the meaning of those laws in question by purporting to interpret them far differently than previously understood by Congress, the executive, or the courts." Mem. at 13. But that argument ignores both the Supreme Court —which recently reinforced longstanding precedent that stereotyping and discrimination against other races for the benefit of certain races are illegal, *Students for Fair Admissions*, 600 U.S. at 211-12—and Congress's express requirements for recipients to comply with federal anti-discrimination law and for agencies to effectuate that law when awarding federal funding. 42 U.S.C. §§ 2000d, 2000d-1.[5] The consequences of failing to follow anti-discrimination laws, such as an investigation into False Claims Act liability, *see* Mem. at 14-15, does not make the requirement to comply ambiguous. *Cf. Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (courts apply "plain, nonabsurd meaning" of a statute "even if . . . the words lead to a harsh outcome"). Nor does Plaintiffs' manufactured ambiguity that the government seeks to exclude non-citizens from civil rights enforcement, *see* Mem. at 15 ("Is the Administration now contending that federal anti-discrimination law only protects Americans and individuals?"), which is irrelevant to whether Plaintiffs can follow the law.

For these same reasons, there is no merit to Plaintiffs' argument about the alleged ambiguity in a provision in FEMA's Grant Manual that requires grantees to provide information about whether any subrecipients of federal funds have diversity, equity, and inclusion practices. *See id.* at 16. That provision is clear that recipients of federal funding must pass along "[w]hether the subrecipient has any diversity, equity, and inclusion practices." Grants Manual § 6.11.3. Such information gathering is appropriate for FEMA to ask and can be used to determine whether any of the subrecipients' practices violate federal anti-discrimination law.

Next, Plaintiffs argue that the Anti-Discrimination Condition is not "reasonably related" to

---

[5] Plaintiffs also insinuate that following the Standard Conditions may cause them to ignore the Supreme Court's decision in *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020), *see* Mem. at 14, but the relevant regulations make clear that agencies must ensure that recipients do not discriminate "based on sexual orientation and gender identity consistent with the Supreme Court's reasoning in *Bostock*." 2 C.F.R. § 200.300(b). Plaintiffs have not demonstrated that they would be forced to ignore *Bostock* if they choose to accept federal funds.

the expenditure's purpose." Mem. at 18 (citation omitted). But the reasonable relation requirement is a "low-threshold," *Becerra*, 284 F. Supp. 3d at 1034, and "not demanding." *City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 (9th Cir. 2019). The Supreme "Court has never struck down a condition on federal grants based on th[e] relatedness prong." *Id.*

There is no need for this Court to break new ground, as agencies have long applied grant conditions like the Anti-Discrimination Condition to further all manner of purposes and objectives. *See, e.g.*, 2 C.F.R. § 200.303(b) (requiring all recipients of federal grants to "[c]omply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award"). Plaintiffs cite no case where similar conditions enforcing federal anti-discrimination law have been held to be unrelated to the grantee's receipt and expenditure of federal funds. That's because these conditions prevent the expenditure of federal funds on activities that violate the law. *Cf. State v. Dep't of Just.*, 951 F.3d 84, 107 (2d Cir. 2020) ("[T]here is something disquieting in the idea of States and localities seeking federal funds to enforce their own laws while themselves hampering the enforcement of federal laws, or worse, violating those laws.").

### 2.    The EO Condition Is Constitutional

Plaintiffs' challenge to the EO Condition is similarly misguided. FEMA included within its Standard Conditions a requirement that all recipients comply with all executive orders by the President related to grants and grants only. *See* Standard Conditions § C.XXXI ("Recipients must comply with the requirements of Presidential Executive Orders related to grants (also known as federal assistance and financial assistance), the full text of which are incorporated by reference."). That condition is imminently reasonable, as it requires recipients to confirm compliance with executive orders that relate to grants that recipients agreed to take on.

Like with the Anti-Discrimination Condition, Plaintiffs argue that the EO Condition violates the "Separation of Powers" and the Spending Clause. Both arguments lack merit.

### a.    The EO Condition Does Not Violate the "Separation of Powers."

Like the Anti-Discrimination Condition, Plaintiffs' challenge to DHS's ability to impose the EO Condition is a statutory claim disguised as a constitutional one precluded by the Supreme

Court's decision in *Dalton*, so the claim fails on that basis alone. *See supra* 13-14.

But, in any event, DHS is required to incorporate into the terms of its grants "national policy requirements," including those flowing from "executive order[s]." 2 C.F.R. § 200.211(c)(1)(ii); *see* 2 C.F.R. § 200.300. DHS has also applied similar conditions for several years. The EO Condition, while worded slightly different, is also not new. In 2021, 2022, and 2023, DHS's Standard Terms and Conditions contained a provision that required recipients to follow "relevant Executive guidance." Specifically, those Standard Conditions said, "By accepting this agreement, recipients, and their executives, as defined in 2 C.F.R. § 170.315, certify that their . . . policies are in accordance with OMB's guidance located at 2 C.F.R. Part 200, all applicable federal laws, and relevant Executive guidance."[6] Like those prior Standard Conditions, the EO Condition here is lawful and within DHS's authority.

### b.    The EO Condition Does Not Violate the Spending Clause

The EO Condition also does not violate the Spending Clause because it is unambiguous and is related to the purpose of the grants.

To start, the EO Condition is unambiguous. Like the Standard Conditions issued in prior years, the EO Condition merely requires the Plaintiffs to comply with Executive Orders in the same manner as they would have to follow any changes to federal statutes or regulations or intervening court decisions. The EO Condition here is as clear as those prior requirements and readily satisfies the Spending Clause standard. *See Newland*, 314 F.3d at 1067.

Plaintiffs also provide no specificity about why they believe the EO Condition is

---

[6] *See* U.S. Dep't of Homeland Sec, FY 2021 DHS Standard Terms and Conditions (Feb. 17, 2021), https://www.dhs.gov/sites/default/files/publications/fy_2021_dhs_standard_terms_and_conditions_version.pdf (last visited Oct. 22, 2025); U.S. Dep't of Homeland Sec, FY 2022 DHS Standard Terms and Conditions (Jan. 24, 2022), https://www.dhs.gov/sites/default/files/2022-01/fy_2022_dhs_terms_and_conditions_version_2_dated_jan_24_2022_508.pdf (last visited Oct. 22, 2025); U.S. Dep't of Homeland Sec, FY 2023 DHS Standard Terms and Conditions (Nov. 29, 2022), https://www.dhs.gov/sites/default/files/2023-01/FY%202023%20DHS%20Terms%20and%20Conditions%20Version%202%20Dated%20November%2029%202022.pdf (last visited Oct. 22, 2025).

18

ambiguous. Except for the Executive Orders related to immigration (which are not at issue in this Motion, *see* Mem. at 4 n.5) and the President's anti-discrimination efforts, Plaintiffs point to no Executive Orders related to grants that they are unsure apply. Instead, Plaintiffs chose to facially challenge the EO conditions without explaining what possible hypothetical ambiguities exist. Such "facial challenges are disfavored" because courts must examine "how a law works in all of its applications." *Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024) (explaining facial challenges in the First Amendment context). Plaintiffs provide no examples of Executive Orders that they believe may cause them harm, instead choosing to merely argue that the EO Condition is "capable of any number of readings and is extraordinarily broad" and that they "cannot possibly ascertain what it means to comply with all executive orders 'related to grants' that this Administration has issued or might issue in the future." Mem at 6, 16. Such compliance is commonplace for recipients, who are regularly required to ensure their programs comply with all federal law, even as it shifts when Congress passes laws or the Supreme Court interprets laws differently.

The EO Condition surpasses the "low-threshold" of being reasonably related to the purpose of expenditure. *See Becerra*, 284 F. Supp. 3d at 1034. DHS is required to ensure that all grants comply with federal law, and the EO Condition is another way to ensure that requirement is met.

**B.    All Challenged DHS Conditions Do Not Violate the APA**

**1.    Awards for Seven Grants Are Not Reviewable Because They Are Discretionary Grants Committed to Agency Discretion**

Plaintiffs are unlikely to prevail on their APA claim for seven of the challenged grants because they are discretionary. Those grants are:

(1) HMGP, which has governing regulations giving FEMA final authority to approve funding for all projects, 44 C.F.R. § 206.436(c), (g);

(2) SAFER, which allows FEMA to choose which grants to award on a competitive basis through a neutral peer review process, 15 U.S.C. § 2229a(a)(1)(G), (2);

(3) Assistance to Firefighters Grant ("AFG"), which FEMA awards on a competitive basis to fire departments and other eligible entities, *id.* § 2229(c)(1);

(4) FP&S Grants, which FEMA awards on a competitive basis to fire departments and other eligible entities, *id.* § 2229(d)(1);

(5) Transit Security Grant Program ("TSGP"), which allows FEMA discretion to choose "recipients of grants based solely on risk," 6 U.S.C. § 1135(a)(1), (c)(2);

(6) Port Security Grant Program ("PSGP"), which FEMA chooses based the most current risk assessments through a competitive selection process, 46 U.S.C. § 70107(a);

(7) STC, which is a competitive selection process chosen by the Countering Weapons of Mass Destruction Office in DHS, not FEMA, *see* 6 U.S.C. §§ 596, 596b.[7]

For these grants, Plaintiffs fail to demonstrate that there are standards for the Court to apply in reviewing the Anti-Discrimination and EO Conditions for those discretionary grants. Ordinarily, for discretionary grants, agencies are free to reject applications in what is a competitive process. And "before any review at all may be had, a party must first clear the hurdle of § 701(a)," *Heckler v. Chaney*, 470 U.S. 821, 828 (1985), which precludes review under the APA if the challenged agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Under § 701(a)(2), "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830. "In such a case," the relevant statutory provision "can be taken to have committed the decisionmaking to the agency's judgment absolutely." *Id.* (internal quotation marks omitted).

An agency's allocation of appropriated funds is typically and presumptively committed to agency discretion by law because "the very point . . . is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993); *see Milk Train, Inc. v. Veneman*, 310 F.3d 747, 748-51 (D.C. Cir. 2002); *Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1038 (9th Cir. 2013); *Serrato v. Clark*, 486 F.3d 560, 568-70 (9th Cir. 2007). This

---

[7] Because FEMA does not award STC funding, Plaintiffs' allegation that it awarded STC funding to LA City is inaccurate. *See* Compl. ¶ 159.

is why agencies grant-award decisions are presumptively unreviewable. *See Lincoln*, 508 U.S. at 191-92 (including "allocation of funds from a lump-sum appropriation" among the "administrative decision[s] traditionally regarded as committed to agency discretion" that have been held "to be presumptively unreviewable"); *see also Milk Train, Inc.*, 310 F.3d at 750–51 (applying *Lincoln* in the context of non-lump-sum appropriations).

Plaintiffs cannot overcome the presumption that the Anti-Discrimination and EO Conditions—which both merely reiterate that recipients must comply with federal anti-discrimination law and all executive orders—is unreviewable for the seven discretionary grants. For each of these grants, there is limited guidance for how the grants should be distributed. *See, e.g.*, 15 U.S.C. § 2229 (c)(1) (for AFG, "[t]he Administrator of FEMA may, in consultation with the chief executives of the States in which the recipients are located, award grants on a competitive basis"); 42 U.S.C. § 5170c(a) (for HMGP, "[t]he President may contribute up to 75 percent of the cost of hazard mitigation measures which the President has determined are cost effective and which substantially reduce the risk of, or increase resilience to, future damage, hardship, loss, or suffering in any area affected by a major disaster"). None limit FEMA's discretion to issue funding, much less do they prevent requiring compliance with federal anti-discrimination law or Executive Branch policy directives, making those decisions presumptively unreviewable. *Cf. Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62, 75-76 (D.D.C. 2018) (holding that decision to stop funding and recompete the funds is a "presumptively unreviewable" type of agency action, but holding that a denial to continue funding without explanation was arbitrary and capricious under the APA).

### 2.    Plaintiffs' APA Claim Also Fails on the Merits

Even if the Court were to reach the merits of Plaintiff's APA claims, they would fail. Plaintiffs' initial APA argument parrots their earlier claims that DHS violated by the Constitution by supposedly exceeding its authority to implement the Anti-Discrimination and EO Conditions. But that's wrong. As discussed above, FEMA is required to enforce all federal anti-discrimination laws and has the authority to require all recipients to follow executive orders, as it did in fiscal

years 2022 and 2023.

FEMA's implementation of the challenged conditions was also not arbitrary or capricious. Judicial review under the APA's arbitrary-and-capricious standard "is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). That review is "narrow." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). All that is required is for the agency to "act[] within a zone of reasonableness." *Prometheus*, 592 U.S. at 423.

Plaintiffs argue otherwise based on the mistaken premise that the policies are new. *See* Mem. at 20-21. Plaintiffs argue that agencies are "free to change [] existing policies" but must "'display awareness that' they are doing so, provide 'good reasons for the new policy,' and demonstrate that they have taken account of 'reliance interests' engendered by the prior policy." *Id.* at 21 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). But neither the Anti-Discrimination Condition nor the EO Condition is "new." Although both conditions have been worded differently in the past, DHS has long required recipients to comply with all anti-discrimination laws, *see, e.g.*, U.S. Dep't of Homeland Sec, FY 2016 DHS General Terms and Conditions (Jan. 29, 2016), https://www.dhs.gov/sites/default/files/publications/Fiscal%20Year%202016%20DHS%20Standard%20Terms%20and%20Conditions%20Version%206-0%20Dated%2001-29-2016_0.pdf (last visited Oct. 23, 2025) (requiring compliance with federal anti-discrimination laws and requiring recipients to provide information if they were accused or found to have violated any anti-discrimination law), and has required recipients to follow all executive guidance since at least 2021, *see supra* 17-18. There is thus no "new" policy.

Even if the policy were new, Plaintiffs never explain what reliance interests they had in the prior policy except to say that they had a reliance interest in not having to follow these conditions. *See* Mem. at 22. They do not explain how they could have the right to accept federal funds while impermissibly participating in stereotyping individuals based on their race, color, sex, or national origin or discriminating against them without satisfying the requisite level of scrutiny required by

the Constitution. *See Students for Fair Admissions*, 600 U.S. at 212 (outlining the Court's prior explanations of the dangers with race-based government action and why strict scrutiny must be applied); *see also United States v. Virginia*, 518 U.S. 515, 555 (1996) (gender-based classifications are subject to "heightened scrutiny"). Plaintiffs also do not explain what reliance interest they could have in being able to violate executive orders related to grants while participating in programs funded by the federal government. Any harm to the public safety of Plaintiffs' communities due to their choice to not accept federal funds with appropriate conditions is not caused by the federal government. *See* Mem. at 22 (arguing that Defendants "failed to consider how the conditions jeopardize and threaten" their ability to protect public safety). Instead, any harm is self-inflicted if Plaintiffs choose to reject the grants.

### III.    Plaintiffs Have Failed to Demonstrate Irreparable Harm

Plaintiffs seeking the extraordinary remedy of a preliminary injunction must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (citation omitted). The "possibility" of such harm is insufficient, *id.*, as is "speculative injury," *id.* at 21; Plaintiffs must show both immediacy and likelihood that they will be irreparably harmed absent emergency relief. *See Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir 1988).

Plaintiffs have failed to make that showing here because, fundamentally, the harms they assert are economic. *See, e.g.*, Mem. at 23 (describing the harms that would result from "[t]he loss of the funds . . . including by upending budgets, forcing the sacrifice of critical public safety upgrades intended to protect the community and first responders, and risking diminished community trust due to hampered community protection efforts"); *see also id.* (arguing that "[e]ven a temporary interruption in funding disrupts procurement and management of programs that help prevent the loss of life and property during natural disasters and man-made threats"). They seek the payment—on the terms that they prefer—of federal funds pursuant to their contracts with the federal government and, as discussed elsewhere, Plaintiffs can pursue such relief in the Court of Federal Claims. The associated injuries Plaintiffs assert are thus definitionally not irreparable, *see, e.g.*, *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320-21 (9th Cir. 1994); *Rent-A-*

*Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991), particularly because the Plaintiffs allege no "threat of being driven out of business." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) (citation omitted).

Plaintiffs also assert that they face harm from being put to the choice "between accepting unconstitutional conditions or risking the loss of hundreds of millions of dollars in federal grant funding." Mem. at 23. But that argument fails. There is no constitutional violation, and it is always the case that "if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds." *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013). If a party makes the voluntary choice to forego those funds, any resulting economic harm cannot constitute an irreparable injury attributable to the federal government. Nor do Plaintiffs demonstrate that the mere acceptance of terms they consider to be "unconstitutional"—but that generally require them to comply with otherwise applicable federal law—imposes any concrete, imminent harm necessitating extraordinary preliminary relief.

## IV. The Balance of the Equities Favors Denying the Motion

Plaintiffs must also demonstrate that "the balance of equities tips in [its] favor" and "an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citation omitted). These "factors merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

In arguing that the public interest weighs in their favor, Plaintiffs mostly repackage their arguments on alleged irreparable harm and on the merits. Those arguments fail. On the other hand, granting Plaintiffs' motion would significantly disrupt DHS's ongoing consideration of grant applications for the upcoming year. *See Trump v. Wilcox*, 145 S. Ct. 1415 (2025) (granting request for stay of injunction "to avoid [] disruptive effect[s]" on government operations). Further, a preliminary injunction risks irreparable harm to the government and to the public interest by requiring the payment of money that the government may never recover. *See NIH*, 145 S. Ct. 2658. This decision must "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). Therefore, the balance of the equities and public interest favor denying Plaintiffs' request for injunctive relief.

24

**V.        Any Injunctive Relief Should Be Narrowly Tailored**

If the Court were to provide injunctive relief (it shouldn't), the injunction should be narrowly tailored to provide only what "will offer complete relief to the plaintiffs before the court." *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025). In line with these principles, to the extent the Court intends to grant Plaintiffs' request for a preliminary injunction, any preliminary relief should be limited to address any established harms of the present Plaintiffs. In particular, that relief should flow only (1) to any Plaintiff that is able to demonstrate all the requirements for emergency injunctive relief; (2) only against any Defendant against whom all such requirements for emergency injunctive relief are met; and (3) only against any particular terms and conditions, imposed in specifically-identified grant programs, with respect to which any Plaintiff demonstrates all requirements for emergency injunctive relief. This is important here, where Plaintiffs lump together many unrelated parties (including DHS components not named in the Complaint), grant programs, and grant terms. And any injunction should, at most, enjoin only those portions of Defendants' identified grant conditions which can be read to require actions beyond complying with federal law (something Plaintiffs are independently required to do).

**VI.        Any Injunctive Relief Should Be Accompanied By A Bond.**

Any preliminary injunction should also be accompanied by a bond under Fed. R. Civ. P. 65(c). As the D.C. Circuit recently clarified, "injunction bonds are generally required." *Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025) (per curiam). The Court has broad discretion to determine the amount of an appropriate bond. If the Court were to enter an injunction, Defendants ask that the bond amount reflect the cost and disruption to DHS's administration to the grants at issue in this proceeding resulting from Plaintiffs' requested relief.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

DATED: October 25, 2025

Respectfully submitted,

*/s/ J. Stephen Tagert*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW WARDEN
Assistant Branch Director

CRAIG H. MISSAKIAN
United States Attorney

J. STEPHEN TAGERT
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street NW
Washington, DC 20005
Telephone: (202) 305-8486
stephen.tagert@usdoj.gov

*Counsel for Defendants*