1  TONY LOPRESTI, SBN 289269
County Counsel
2  KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
3  MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
4  RAPHAEL N. RAJENDRA, SBN 255096
HANNAH M. GODBEY, SBN 334475
5  Deputy County Counsels
70 West Hedding Street, East Wing, Ninth Floor
6  San José, California 95110-1770
Telephone: (408) 299-5900
7  E-Mail:    Raphael.Rajendra@cco.sccgov.org
               Hannah.Godbey@cco.sccgov.org
8
9

DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
DAVID S. LOUK, SBN 304654
STEVEN A. MILLS, SBN 328016
Deputy City Attorneys
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5408
Telephone:    (415) 355-3308
E-Mail:    David.Louk@sfcityatty.org
               Steven.Mills@sfcityatty.org

10 *Attorneys for Plaintiff*
*County of Santa Clara*

*Attorneys for Plaintiff*
*City and County of San Francisco*

11
12 *[additional counsel on signature page]*

13 UNITED STATES DISTRICT COURT

14 NORTHERN DISTRICT OF CALIFORNIA

15
16 COUNTY OF SANTA CLARA; CITY AND COUNTY OF SAN FRANCISCO, *et al.*,

17        Plaintiffs,

18    vs.

19 KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, *et al.*,

21        Defendants.

Case No. 3:25-cv-08330-WHO

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Hearing Date:    November 19, 2025
Time:    10:00 a.m.
Judge:    Hon. William H. Orrick
Place:    Zoom Videoconference

Trial Date:    None set

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION .................................................................................................... 1

ARGUMENT .......................................................................................................... 1

I.   The Court Has Jurisdiction to Review Plaintiffs' Claims. ....................... 1

   A.   Plaintiffs Have Standing for the Relief Sought. ........................... 1

   B.   The Tucker Act Does Not Divest This Court of Jurisdiction. ...... 3

II.   Plaintiffs Are Likely to Succeed on the Merits of Their Claims. ............ 4

   A.   The Unlawful DHS Conditions Are Unconstitutional. ................ 4

      1.   The Unlawful DHS Conditions Violate the Separation of Powers.. 5

      2.   The Unlawful DHS Conditions Violate the Spending Power. ........ 7

   B.   The Unlawful DHS Conditions Violate the APA. ...................... 10

      1.   The Adoption and Imposition of the Unlawful DHS Conditions Are Final Agency Actions that Are Not Committed to Agency Discretion. ....................................................................... 10

      2.   The Unlawful DHS Conditions Violate the APA on the Merits. ... 12

III.   Plaintiffs Will Suffer Immediate and Irreparable Harm Absent Relief. ... 13

IV.   The Equities Weigh Strongly in Plaintiffs' Favor. ............................... 14

V.   Plaintiffs' Prohibitory Preliminary Injunction is Narrow and Appropriately Tailored. ....................................................................... 14

VI.   The Court Should Not Require A Bond. .............................................. 15

CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Federal Cases**

*Ariz. Dream Act Coal. v. Brewer*
   757 F.3d 1053 (9th Cir. 2014) ....................................................................................14

*ASSE Int'l, Inc. v. Kerry*
   803 F.3d 1059 (9th Cir. 2015) ....................................................................................11

*Bostock v. Clayton County*
   590 U.S. 644 (2020)......................................................................................................9

*California v. EPA*
   72 F.4th 308 (D.C. Cir. 2023)......................................................................................8

*Carrillo-Gonzalez v. I.N.S.*
   353 F.3d 1077 (9th Cir. 2003) ....................................................................................12

*Chaly-Garcia v. United States*
   508 F.3d 1201 (9th Cir. 2007) ......................................................................................6

*City & Cnty. of S.F. v. Trump*
   783 F. Supp. 3d 1148 (N.D. Cal. 2025) ...............................................................13, 15

*City & Cnty. of S.F. v. Trump*
   No. 25-cv-01350-WHO, 2025 WL 1738675 (N.D. Cal. June 23, 2025)................10, 12

*City & Cty. of S.F. v. Trump*
   897 F.3d 1225 (9th Cir. 2018) ......................................................................................5

*City of Fresno v. Turner*
   No. 25-cv-07070-RS, 2025 WL 2721390 (N.D. Cal. Sept. 23, 2025 ................ *passim*

*City of Los Angeles v. Barr*
   929 F.3d 1163 (9th Cir. 2019) ......................................................................................7

*City of Seattle v. Trump*
   No. 2:25-cv-01435-BJR, 2025 WL 3041905 (W.D. Wa. Oct. 31, 2025) ...........6, 8, 18

*Clapper v. Amnesty Int'l USA*
   568 U.S. 398 (2013)......................................................................................................2

*Dalton v. Specter*
   511 U.S. 462 (1994)...................................................................................................5, 6

*Dep't of Com. v. New York*
   588 U.S. 752 (2019).....................................................................................................11

*Dep't of Educ. v. California*
   604 U. S. 650 (2025)......................................................................................................3

*Global Health Council v. Trump*
    153 F.4th 1 (D.C. Cir. 2025).................................................................................7

*Hernandez v. Sessions*
    872 F.3d 976 (9th Cir. 2017) ...............................................................................13

*Illinois v. FEMA*
    No. 25-206 WES, 2025 WL 2716277 (D.R.I. Sept. 24, 2025)...........................13, 14

*Illinois v. Noem*
    No. 1:25cv495 (Filed Sept. 29, 2025)....................................................................3

*Jajati v. U.S. Customs & Border Prot.*
    102 F.4th 1011 (9th Cir. 2024) .............................................................................11

*Lincoln v. Vigil*
    508 U.S. 182 (1993).............................................................................................11

*Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*
    729 F.3d 1025 (9th Cir. 2013) .............................................................................12

*Martin Luther King, Jr. Cnty. v. Turner*
    785 F. Supp. 3d 863 (W.D. Wash. 2025),
    appeal, No. 25-3664 (9th Cir. June 10, 2025); ................................................. *passim*

*Martin Luther King, Jr. Cnty. v. Turner*
    No. 2:25-cv-814, 2025 WL 2322763 (W.D. Wash. Aug. 12, 2025) .........................5

*Mayweathers v. Newland*
    314 F.3d 1062 (9th Cir. 2002) ...............................................................................8

*Melendres v. Arpaio*
    695 F.3d 990 (9th Cir. 2012) ............................................................................2, 14

*Milk Train, Inc. v. Veneman*
    310 F.3d 747 (D.C. Cir. 2002)..............................................................................12

*Murphy Co. v. Biden*
    65 F.4th 1122 (9th Cir. 2023),
    *cert. denied*, 144 S. Ct. 1111 (2024)......................................................................7

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*
    567 F.3d 521 (9th Cir. 2009) .................................................................................2

*Nat'l Institutes of Health v. Am. Pub. Health Ass'n*
    145 S. Ct. 2658, 2661 (2025)..................................................................................4

*Newsom v. Trump*
    141 F.4th 1032 (9th Cir. 2025) ...............................................................................7

*Pennhurst State Sch. & Hosp. v. Halderman*
    451 U.S. 1 (1981) .................................................................................................8

*Policy & Research, LLC v. United States HHS*
    313 F. Supp. 3d 62 (D.D.C. 2018) .................................................................12

*R.I. Coal. Against Domestic Violence v. Kennedy*
    No. 25-cv-342-MRD-PAS, 2025 WL 2988705 (D.R.I. Oct. 23, 2025). .........3

*San Francisco A.I.D.S. Found. v. Trump*
    786 F. Supp. 3d 1184 (N.D. Cal. 2025) ...........................................................9

*San Francisco Unified Sch. Dist. v. AmerCorps*
    784 F. Supp. 3d 1280 (N.D. Cal. 2025) ......................................................4, 11

*San Francisco Unified Sch. Dist. v. AmerCorps*
    789 F. Supp. 3d 716 (N.D. Cal. 2025) ........................................................9, 10

*Serrato v. Clark*
    486 F.3d 560 (9th Cir. 2007) .........................................................................12

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*
    600 U.S. 181 (2023) .........................................................................................9

*TransUnion LLC v. Ramirez*
    594 U.S. 413 (2021) .........................................................................................2

*United Aeronautical Corp. v. United States Air Force*
    80 F.4th 1017 (9th Cir. 2023) .........................................................................4

**Federal Statutes**

5 U.S.C.
    § 701(a)(2) ......................................................................................................11
    § 702 .................................................................................................................3
    § 706(2)(A)-(C) [Administrative Procedure Act] ...........................1, 3, 4, 10, 11, 12
    § 706(2)(A) ....................................................................................................12
    § 706(2)(C) ....................................................................................................12

28 U.S.C.
    § 1331 ...............................................................................................................3
    § 1491 [Tucker Act] .....................................................................................3, 4

31 U.S.C.
    §§ 3729–3733 [False Claims Act] ...............................................................5, 13

42 U.S.C.
    § 2000d et seq. [Civil Rights Act of 1964, Title VI] ...................................6, 10
    § 2000d .............................................................................................................6
    § 2000d-1 .....................................................................................................6, 10
    § 2000e et seq [Title VII, Civil Rights Act of 1964 § 7] ................................6

Public Law 93–344, July 12, 1974, 88 Stat. 297 [Impoundment Control Act] ...............................7

**Regulations**
2 C.F.R.
    § 200.208(a) ..........................................................................................................12
    § 200.211(c)(1)(ii) ...................................................................................................5
    § 200.300 ................................................................................................................5

Exec. Order No. 14332, 90 Fed. Reg. 38929 (Aug. 7, 2025) ........................................9

**Other Authorities**
Order, *National Ass'n of Diversity Officers in Higher Educ. v. Trump*,
    No. 25-1189 (4th Cir. Mar. 14, 2025), ECF No. 29 ..............................................10

**INTRODUCTION**

Plaintiffs seek a preliminary injunction to stop Defendants' unlawful policy of conditioning Plaintiffs' public safety and emergency management grant awards on unlawful terms. ECF No. 19. Congress created these grants and appropriated this critical funding to protect Plaintiffs' communities. But Defendants have hijacked these programs as a weapon to further the current Administration's anti-equity and anti-DEIA campaign. Defendants demand that Plaintiffs accept and implement new and ambiguous Discrimination and EO Conditions divorced from the laws enacted by Congress and interpreted by the courts, which usurps power in contravention of the Constitution and APA. Attempting to evade judicial review, Defendants try to repackage Plaintiffs' constitutional and statutory challenges as a contractual dispute for money. But they fail to engage with the agency action Plaintiffs challenge (agency policy to impose unlawful conditions on grants, not contractual termination or breach) and the relief Plaintiffs seek (prohibitory injunctive relief and an order setting aside the agency policy and the imposition of unlawful conditions on Plaintiffs' new grants).

Defendants' Opposition also fails on the merits. Defendants twist the plain language of the Unlawful DHS Conditions and ignore cited pronouncements from the Administration that demonstrate Defendants are arming themselves with boundless discretion to arbitrarily enforce the Unlawful DHS Conditions and rewrite federal spending and anti-discrimination law. Defendants fail to identify any authority to justify the conditions and in turn concede that the Administration's effort to redefine Executive authority is beyond legal limits. They also ignore Plaintiffs' extensive evidence of irreparable harm to their governance, programs, and public safety. Accordingly, the Court should issue a preliminary injunction.

**ARGUMENT**

**I.    The Court Has Jurisdiction to Review Plaintiffs' Claims.**

      **A.    Plaintiffs Have Standing for the Relief Sought.**

Plaintiffs' Motion demonstrated through evidence that Plaintiffs have standing. Mot. at 7-8. Defendants concede that Plaintiffs have standing to challenge conditions imposed on AFG, TSGP, US&R, PSGP, and STC, but dispute Plaintiffs' standing to challenge conditions imposed on SAFER, HSGP (including UASI and SHSP), EMPG, HMGP, and FP&S grants on the ground Plaintiffs have

not yet been awarded those grants. Opp. at 8-9. This narrow reading of Plaintiffs' standing is factually

wrong, distorts Plaintiffs' relief, and disregards evidence showing Plaintiffs' standing for all programs.

To begin, Defendants' Opposition ignores that Plaintiffs are challenging the *policy* of applying

the Standard DHS Terms to all of Defendants' grants. A plaintiff has standing for injunctive relief

where its injury "stems from" a written "policy" or "is part of a pattern of officially sanctioned . . .

behavior, violative of the plaintiffs' [federal] rights." *Melendres v. Arpaio*, 695 F.3d 990, 997-98 (9th

Cir. 2012) (cleaned up). It is undisputed that Defendants adopted the written Standard DHS Terms as

an official policy and are categorically imposing the Unlawful DHS Conditions on all of Defendants'

grants. And it is undisputed that Plaintiffs are harmed by this policy because they have received

awards that contain the conditions. That is enough to show standing.

But even if Plaintiffs had to demonstrate standing for each grant program despite their policy

challenge, they have done so for all of the programs at issue.[1] Plaintiffs are not required "to

demonstrate that it is literally certain that the harms they identify will come about." *Clapper v.

Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). Rather a "material risk of future harm can satisfy the

concrete-harm requirement," when "the risk of harm is sufficiently imminent and substantial."

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 415, 436 (2021). That standard is easily met here. For two

of the disputed programs, SAFER and HMGP, Defendants misstate the evidentiary record, which

shows at least one Plaintiff has been awarded a direct grant. *See* Louk Decl. Ex. 6 (Los Angeles's

SAFER award); Nutt Decl. ¶¶ 10-11 (Santa Rosa HMPG awards).[2] With respect to HSGP (UASI and

SHSP) and EMPG funding, Plaintiffs reasonably expect to receive millions pursuant to these programs

from their states based on predetermined allocations in the notices of funding opportunities ("NOFO"),

statutory entitlement, and long-standing practice. *See, e.g.*, Kim Decl. ¶¶ 8-14; Bowman Decl. ¶¶ 5-10;

Reed Decl. ¶¶ 16-24; RJN Ex. 5 at p. 54-55; RJN Ex. 6 at p. 65. Indeed, Defendants do not dispute that

---

[1] San Francisco did not expressly move on FP&S because San Francisco had not received an award at the time of filing. Due to the government shutdown, San Francisco has not yet been notified about the status. Any FP&S award is otherwise protected by Plaintiffs' policy challenge.

[2] "[I]n an injunctive case this court need not address standing of each plaintiff if it concludes that one plaintiff has standing." *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009).

it is reasonable for Plaintiffs to expect to receive both HSGP and EMPG funding through their states,[3]

(*see* Kim Decl. ¶ 13), or that the Standard DHS Terms—including Unlawful DHS Conditions—flow

through the states to subrecipients. RJN Ex. 1 at p. 1; *e.g.*, Supp. Louk Decl. Exs. 10-12.

**B.    The Tucker Act Does Not Divest This Court of Jurisdiction.**

Defendants' argument that the Tucker Act precludes this Court's jurisdiction rests on a fiction

that Plaintiffs seek to enforce contractual rights and an order directing monetary payments. Opp. at 5-

8. Not so. Plaintiffs do not challenge any grant terminations, do not advance any claim for breach of a

preexisting grant agreement, and do not seek to enforce any obligation to pay funds pursuant to federal

grant agreements. Indeed, Plaintiffs have not yet entered into contracts with Defendants.[4] Instead,

Plaintiffs claims challenge Defendants' use of an unlawful agency policy to impose unlawful grant

conditions, and Plaintiffs seek equitable relief to prevent Defendants from imposing unlawful

conditions and to set aside those provisions of the Standard DHS Terms. These claims "aris[e] under

the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, are subject to the APA's

waiver of sovereign immunity, 5 U.S.C. § 702, and thus are within this Court's jurisdiction.

This case is not transformed into one founded on a contract simply because Plaintiffs' harm

flows in part from possibly having to forgo funds to which they would otherwise be entitled without

such unlawful conditions. As Defendants' authority recognizes, "a district court's jurisdiction is 'not

barred by the possibility' that an order . . . may result in the disbursement of funds." *Dep't of Educ. v.*

*California*, 604 U. S. 650, 651 (2025) (citation omitted). Instead, the Tucker Act "'impliedly forbid[s]'

an APA action seeking injunctive and declaratory relief only if that action is a 'disguised' breach-of-

contract claim." *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1026 (9th Cir.

2023). Whether an "action is a 'disguised' breach-of-contract claim" depends on "(1) the source of the

---

[3] The total amount of FY 2025 HSGP-SHSP and HSGP-UASI funding that each state will receive—and therefore the total amount of such funding that Plaintiffs in this case may receive—is not yet fixed. Supp. Louk Decl. ¶ 4. California, Washington, and other states have challenged FEMA's allocation to the plaintiff states of less HSGP funding than the FY 2025 HSGP NOFO had projected. *See Illinois v. Noem*, No. 1:25cv495 (D.R.I. filed Sept. 29, 2025).

[4] One Plaintiff, the City of Tucson, inadvertently accepted its AFG award and sought to have that inadvertent acceptance rescinded. McDonough Decl. ¶ 13. For the same reasons discussed herein, even without a recission, Tucson's claim as to its AFG award is not subject to the Tucker Act. *See R.I. Coal. Against Domestic Violence v. Kennedy*, No. 25-cv-342-MRD-PAS, 2025 WL 2988705, at *4-5 (D.R.I. Oct. 23, 2025).

rights upon which the plaintiff bases its claims and (2) the type of relief sought (or appropriate)." *Id.* (citation omitted).

Plaintiffs satisfy both factors of that test. Here, the Constitution and the APA—not the grant awards that contain the Unlawful DHS Conditions—are the source of Plaintiffs' rights. Not a single case cited by Defendants precluded a challenge to the legality of conditions attached to new awards.[5] To the contrary, courts have consistently found that legal challenges to new grant conditions are not based on contract, and the equitable relief sought does not preclude jurisdiction under the Tucker Act. *See, e.g.*, *Martin Luther King, Jr. Cnty. v. Turner*, 785 F. Supp. 3d 863, 878 (W.D. Wash. 2025) ["*King County*"], *appeal docketed*, No. 25-3664 (9th Cir. June 10, 2025); *San Francisco Unified Sch. Dist. v. AmeriCorps*, 784 F. Supp. 3d 1280, 1292 (N.D. Cal. 2025) ["*SFUSD*"]; *City of Fresno v. Turner*, No. 25-cv-07070-RS, 2025 WL 2721390, at *6 (N.D. Cal. Sept. 23, 2025) ["*Fresno*"]; *see also Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2661 (2025) ["*NIH*"] (Barrett, J., concurring in part) ("That the agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim 'founded . . . upon' contract that only the CFC can hear."). There is no reason to reach a different result here.

## II.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims.

### A.    The Unlawful DHS Conditions Are Unconstitutional.

Defendants assert that the new grant conditions are both authorized and clear because they do nothing more than require compliance with federal anti-discrimination law, as has been required of (and agreed to by) grant recipients for years. *See* Opp. at 11. This assertion, which underlies Defendants' entire defense, grossly misstates the conditions. The EO and Discrimination Conditions do not merely require compliance with existing law as written by Congress and interpreted by the courts. Rather, as described in detail in Plaintiffs' Motion (*see* Mot. at 6-7, 13-15), and discussed further in Section II.A.2 below, they require recipients to abandon lawful DEIA programs and policies.

---

[5] *NIH*, 145 S. Ct. at 2660 (barring challenge to termination but preserving attack on agency guidance); *California*, 604 U.S. at 650-51 (concerning grant termination); *Climate United Fund v. Citibank, N.A.*, No. 25-5122, 2025 WL 2502881, at *1 (D.C. Cir. Sept. 2, 2025) (same); *Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985) (same); *United States Conference of Catholic Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 164 (D.D.C. 2025) (same); *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 64 (D.C. Cir. 2004) (reviewing breach under contract); *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021) (same).

Notably, Defendants do not engage with—and, importantly, fail to disclaim—the Administration's own pronouncements in the record, which demonstrate Defendants' intent to use these conditions, amplified by the poison pill of potential FCA enforcement, to mandate compliance with the Administration's unilateral, novel, evolving, and legally unsupported anti-DEIA agenda. As other courts have found, the conditions leave Plaintiffs "at the mercy of Defendants' interpretation [of those laws], regardless of how those laws are interpreted by the courts," even though Defendants' interpretations are often "inconsistent with well-established legal precedent." *Martin Luther King, Jr. Cnty. v. Turner*, No. 2:25-cv-814, 2025 WL 2322763, at *12 (W.D. Wash. Aug. 12, 2025). Defendants' other arguments about the constitutionality of the Unlawful DHS Conditions also fall flat, as discussed below.

### 1.    The Unlawful DHS Conditions Violate the Separation of Powers.

It is beyond debate that "Congress has the exclusive power to spend" and where Congress "has not delegated authority to the Executive to condition new grants," executive "power is at its lowest ebb." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1233 (9th Cir. 2018) (citation omitted). Plaintiffs' Motion demonstrated at length that none of the Congressional appropriations for the grant programs at issue authorized the imposition of the Unlawful DHS Conditions or conferred authority on Defendants to do so. Mot. at 8-12. Defendants ignore Plaintiffs' substantive analysis of the particular programs at issue, thereby conceding that the authorizing statutes do not support the Unlawful DHS Conditions. *See* Opp. at 12-14. Instead, Defendants grasp at irrelevant authorities to justify the conditions at issue, and contend that *Dalton v. Specter*, 511 U.S. 462 (1994), forecloses Plaintiffs' Separation of Powers claim. Both arguments fail.

**The Absence of Authority:** *EO Condition.* Defendants completely fail to identify *any* constitutional or statutory basis for imposing the EO Condition. *See* Opp. at 17-18. While Defendants cite to regulations, 2 C.F.R. § 200.211(c)(1)(ii) and 2 C.F.R. § 200.300, "an agency regulation cannot create statutory authority; only Congress can do that." *Fresno*, 2025 WL 2721390, at *10 (cleaned up); *see id.* at *15-16 (finding similar conditions likely unlawful). Similarly, Defendants point to prior administrative practice (Opp. at 18), but do not—because they cannot—offer any authority that such

prior practice can authorize agency action. Put simply, the fact that a condition was included in prior grants does not make it legal. Accordingly, the EO Condition fails.

*Discrimination Condition.* Defendants' attempt to salvage the Discrimination Condition, and its derivative DEI Disclosure Requirement, fares no better. Defendants claim that the Discrimination Condition is authorized by Title VI, which prohibits discrimination "on the ground of race, color, or national origin" in "any program or activity receiving Federal financial assistance," and permits agencies to issue implementing "rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance[.]" 42 U.S.C. §§ 2000d; 2000d-1; Opp. at 14. But nothing in Sections 2000d or 2000d-1 authorizes Defendants to impose the Unlawful DHS Conditions, which rewrite federal law to force compliance with the federal Administration's anti-DEIA agenda. *See infra* § II.A.2; Motion at 13-16; *City of Seattle v. Trump*, No. 2:25-cv-01435-BJR, 2025 WL 3041905, at *7-8 (W.D. Wa. Oct. 31, 2025) ["*Seattle*"] (terms of EO 14173, which requires agencies to impose the Discrimination Condition in all grants, not authorized by Title VI). Defendants' assertion that the Discrimination Condition does nothing more than require compliance with Title VI as it has been interpreted by the courts is undermined by the fact that a separate provision of the Standard DHS Terms expressly requires compliance with Title VI. *See* Standard DHS Terms §VII; *see also Chaly-Garcia v. United States*, 508 F.3d 1201, 1204 (9th Cir. 2007) (federal common law "presum[es] that every provision was intended to accomplish some purpose, and that none are deemed superfluous"). Defendants identify no constitutional or statutory authority allowing them to create new conditions that redefine federal law. And in any case, the Discrimination Condition has none of the procedural protections required by the plain language of the statute. *See* 42 U.S.C. § 2000d-1.

**_Dalton_**: Having identified no constitutional or statutory authority to justify the Unlawful DHS Conditions, Defendants claim that *Dalton* forecloses Plaintiffs' claims. Opp. at 13, 17-18. But that is wrong—descriptively and legally—based on controlling Ninth Circuit precedent the Opposition fails to disclose. In *Dalton*, the Supreme Court rejected a Separation of Powers claim where the President allegedly violated a statute that granted him unbridled authority over base closures, stating that not "every action by the President, or by another executive official, in excess of his statutory authority is

*ipso facto* in violation of the Constitution." 511 U.S. at 472. But Plaintiffs' Separation of Powers claim is distinct—here, Plaintiffs assert that Defendants lack *any* authority, constitutional or statutory, to impose the Unlawful DHS Conditions. *See, e.g.*, Mot. at 8. And that claim is proper under the binding Ninth Circuit precedent in *Murphy Co. v. Biden*, 65 F.4th 1122 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1111 (2024), that Defendants omit from their brief. In *Murphy*, the Ninth Circuit recognized that "[w]hile an action taken by the President in excess of his statutory authority does not necessarily violate the Constitution, specific allegations regarding separation of powers may suffice." *Id*. at 1130 (cleaned up). It thus held that plaintiffs state a viable constitutional claim where, as here, the claim does not arise from a statutory *violation*, and instead the challenged action lacks "both statutory authority and background constitutional authority." *Id*. (cleaned up); *Newsom v. Trump*, 141 F.4th 1032, 1046-47 (9th Cir. 2025) (distinguishing *Dalton* since the statute in *Dalton* "authorized unfettered discretion").[6] Because Plaintiffs' Separation of Powers claim does not turn on a mere statutory procedure complaint, as in *Dalton*, but instead turns on an absence of authority, Plaintiffs' claims may proceed under *Murphy* as an appropriate reading of *Dalton*.

### 2.    The Unlawful DHS Conditions Violate the Spending Power.

As Plaintiffs' Motion demonstrated, the Unlawful DHS Conditions violate the spending power because they are ambiguous and are not reasonably related to the funding programs at issue. Mot. at 12-19.[7] Defendants' Opposition does not cast doubt on the merits of Plaintiffs' claims.

Defendants' contention, based on out-of-circuit district court authority, that spending power constraints do not apply because they have "no application to Executive Branch decisions," Opp. at 14, has been rejected by the Ninth Circuit. *City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 n.6 (9th Cir. 2019) (finding "no reason" that spending power constraints do not apply to "agency-drawn conditions on grants"). *Barr* is controlling.

---

[6] In lieu of the Ninth Circuit's binding decision in *Murphy*, Defendants cite the out-of-circuit case *Global Health Council v. Trump*, but that case addressed a claim arising from an alleged violation of the Impoundment Control Act, which is irrelevant to this case. 153 F.4th 1 (D.C. Cir. 2025).

[7] Plaintiffs also argued that the Unlawful DHS Conditions violate the spending power's "independent constitutional bar" rule. Mot. at 18. Defendants did not address this.

The Opposition also distorts spending power precedent by arguing that "Congress must only make clear that acceptance of federal funds obligates States to comply with a condition. *Penhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981)." Opp. at 15. Under this interpretation of the law, the mere imposition of a condition would eliminate any claim to ambiguity as to its terms. But that is not the law. *Penhurst* instructs that the "legitimacy" of the spending power "rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" 451 U.S. at 17. Defendants' focus on the imposition of the condition ignores that "[t]here can, of course, be no knowing acceptance if a State . . . *is unable to ascertain what is expected of it*." *Id.* (emphasis added). Requiring Congress to "speak with a clear voice" allows local governments "to exercise their choice knowingly, cognizant of the consequences of their participation." *Id*. And Defendants' reliance on *Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002), changes nothing, since there, Congress expressly outlined the applicable legal standard when it conditioned funds by statute.

Defendants also erroneously argue that the Unlawful DHS Conditions are not ambiguous because the Discrimination Condition "simply requires recipients to certify their compliance with existing law," and the challenge to the EO Condition "is similarly misguided." Opp. at 12, 17-18. Not so. The EO Condition requires Plaintiffs to comply with all executive orders "related to grants"—but "an executive order is not 'law,' within the meaning of the Constitution," *California v. EPA*, 72 F.4th 308, 318 (D.C. Cir. 2023), and the EO Condition could itself be read to require funding recipients to accede to the Administration's unbounded, future interpretation of federal law. Mot. at 13-16; *accord Seattle*, 2025 WL 3041905, at *7-8. The Opposition does not reconcile the reality of the EO Condition's plain language with the spending power's limits on retroactive conditions. Nor is the Discrimination Condition limited to "existing law." Beyond the discussion above, *see supra* §II.A.1, the Discrimination Condition expressly incorporates the President's definition of "Discriminatory equity ideology" from Executive Order 14190 and codifies it as a legal requirement. Section 3 of the Discrimination Condition also grants the Secretary unilateral authority to determine whether a recipient has violated the certification requirements prohibiting programs that advance or promote DEIA or discriminatory equity ideology, with no qualifications based on existing law. These spending power concerns are exacerbated by the fact that the Discrimination and EO Conditions stack

ambiguity upon ambiguity through undefined terms, including the core concepts of DEIA and equity, which "are rife with vagueness and ambiguity, leaving grantees to speculate what is proscribed and what is permitted." *San Francisco Unified Sch. Dist. v. AmeriCorps*, 789 F. Supp. 3d 716, 746 (N.D. Cal. 2025); *see also Fresno*, 2025 WL 2721390, at *17. Defendants failed to grapple with this argument—perhaps because they, too, do not know what those terms are intended to mean.

Above all, the Opposition highlights the fiction that the Administration is *not* attempting to rewrite long-standing federal law. For example, it concedes that preexisting agency regulations make clear that grantees must comply with *Bostock*'s ban on "gender identity" discrimination, *see* Opp. at 16 n.5, but ignores that the Administration has instructed that discretionary grants cannot be used to support "denial by the grant recipient of the sex binary in humans or the notion that sex is a chosen or mutable characteristic."[8] It is entirely unclear how recipients could possibly comply with both. Defendants also offer no credible response to Plaintiffs' argument that the Discrimination Condition *is* directly rewriting anti-discrimination law by narrowly asserting that anti-discrimination laws "protect individual Americans" even though these laws prohibit national origin discrimination and protect *classes* of people. As further proof of the Administration's efforts to force its unlawful agenda, the same condition includes language—separately enjoined and vacated—that prohibits any program "that benefits illegal immigrants" (whatever those terms mean), even though governments by law cannot discriminate based on national origin. Nor do Defendants address the Bondi Memo—with which FEMA has instructed recipients to comply—that Plaintiffs argued creates confusion by seemingly recasting conduct courts have upheld as lawful as violations of federal antidiscrimination law. Mot. at 14. And the Opposition's primary reliance on *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023), to broadly cast doubt on all DEIA, ignores that the Supreme Court did not prohibit consideration of race or equity in *all* circumstances. *Id.* at 214-15, 230. Thus, the ambiguity injected into these grant programs stands in stark contrast to the challenges addressed in *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1220-21 (N.D. Cal. 2025) and the *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar.

---

[8] Executive Order No. 14332, *Improving Oversight of Federal Grantmaking*, 90 Fed. Reg. 38929, 38931 (Aug. 7, 2025).

14, 2025) (Stay Order at ECF No. 29), which predate the Bondi Memo and expressed qualifications based on the existing records that did not reflect implementation of the Executive Orders at issue.

Defendants fare no better in demonstrating that the Unlawful DHS Conditions are reasonably related to the programs at issue. Notably, the Opposition fails to grapple with Plaintiffs' arguments under the statutes authorizing the grant programs at issue, which often include provisions *favoring* accessibility or equity—rendering the Unlawful DHS Conditions not only unrelated to, but *inconsistent with* the relevant grant programs. Mot. at 18-19. No statutory authority was invoked to justify the EO Condition, and the Opposition fails to show how it is related to the underlying programs. With respect to the Discrimination Condition, the Opposition primarily relies on Title VI to suggest that nondiscrimination is always related to any program. But as explained, *supra* §II.A.1, Title VI does not confer the authority Defendants claim here to rewrite federal antidiscrimination laws. And the Discrimination Condition purports to prohibit recipients' DEIA programs across the board, not just those related to the funding at issue. In any event, Congress has required that enforcement "shall be consistent with achievement of the objectives of the statute authorizing the financial assistance." 42 U.S.C. § 2000d-1. Again, Defendants have failed to satisfy even that. Contrary to Defendants' claim that the Motion cites no case where a court has found terms unrelated, the court in *AmeriCorps* did reach this result. 789 F. Supp. 3d at 750; *see also, e.g.*, *City & Cnty. of S.F. v. Trump*, No. 25-cv-01350-WHO, 2025 WL 1738675 (N.D. Cal. June 23, 2025).

**B.    The Unlawful DHS Conditions Violate the APA.**

**1.    The Adoption and Imposition of the Unlawful DHS Conditions Are Final Agency Actions that Are Not Committed to Agency Discretion.**

Plaintiffs demonstrated that Defendants' decision to adopt the Unlawful DHS Conditions and apply them categorically to grant awards, as well as the decision to attach those conditions to Plaintiffs' awards, are final agency actions subject to judicial review under the APA. Mot. at 19-20. The Opposition failed to respond to this argument and has effectively conceded it. Instead, Defendants assert that Plaintiffs cannot pursue their APA claims for "seven of the challenged grants because they are discretionary" programs,[9] since the "allocation" of funds is "committed to agency discretion by

---

[9] This argument does not apply to HSGP (UASI and SHSP), EMPG, and US&R funding.

law" pursuant to 5 U.S.C. § 701(a)(2). Opp. at 19-20. But that is wrong. Section 701(a)(2)'s exception to the APA's "strong presumption" favoring judicial review is "read . . . quite narrowly" and applies only in those "rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019) (cleaned up). The bar applies only in those "rare instances" where there is "truly no law to apply." *Jajati v. U.S. Customs & Border Prot.*, 102 F.4th 1011, 1017 (9th Cir. 2024). And the "fact that a statute contains discretionary language does not make agency action unreviewable." *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1068 (9th Cir. 2015) (cleaned up).

This case does not present one of the "rare instances" in which there is "truly no law to apply" to overcome the strong and basic presumption of judicial review. *Jajati*, 102 F.4th at 1017. Contrary to the Opposition's suggestion, Plaintiffs have not challenged the "allocation" of funds or a decision to award appropriated funds in the first place. Defendants ignore that Plaintiffs are challenging the agency *policy* to adopt the new Unlawful DHS Conditions and the imposition of those new Unlawful DHS Conditions to Plaintiffs' awards. Imposing these new conditions is at odds with the statutory schemes that authorize the grants at issue. *See* Mot. at 8-12. Those statutes provide ample grounds to review Defendants' actions. *See ASSE Int'l, Inc.*, 803 F.3d at 1070-71 (agency regulations provided meaningful standards by which a court could review State Department's exercise of discretion); *King County*, 785 F. Supp. 3d at 884 (authorizing statutes provide sufficient guidance); *Fresno*, 2025 WL 2721390, at *6 (same); *SFUSD*, 784 F. Supp. 3d at 1289-90 (same). Accordingly, section 701(a)(2) does not preclude Plaintiffs' APA claims.

Defendants cite to *Lincoln v. Vigil*, 508 U.S. 182 (1993), for the proposition that "grant-award decisions are presumptively unreviewable." Opp. at 21. Setting aside that Plaintiffs are not challenging grant-award decisions, *Lincoln* does not stand for the proposition asserted. *Lincoln* involved cancellation of a program funded from a single "lump-sum appropriation" that covered all of the agency's activities. 508 U.S. at 185. Because the relevant statutes did not mention the program, the Court found "[t]he decision to terminate the Program was committed to the [agency's] discretion" by law. *Id.* at 193-94. In contrast, Plaintiffs here challenge agency policy to impose new conditions on grant programs developed and funded by Congress. Defendants' remaining authorities, which are

largely derivative of their constrained interpretation of *Lincoln*, are also unavailing.[10]

### 2. The Unlawful DHS Conditions Violate the APA on the Merits.

Plaintiffs have shown that the adoption and imposition of the Unlawful DHS Conditions is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," and "in excess of statutory . . . authority." 5 U.S.C. § 706(2)(A)-(C); Mot. at 19-23. Courts have repeatedly found that imposing grant conditions without statutory or constitutional authority, as Defendants have done here, violates the APA. *See City & Cnty. of S.F.*, 2025 WL 1738675, at *1; *Fresno*, 2025 WL 2721390, at *10- 12; *King Cnty.*, 785 F. Supp. 3d at 884-88; *AmeriCorps*, 789 F. Supp. 3d at 742-51. Defendants have not argued otherwise.

The Opposition fails to overcome Plaintiffs' showing that the Unlawful DHS Conditions are arbitrary and capricious. *First*, Defendants claim that the challenged conditions do not reflect new policies requiring a reasoned explanation under the APA. Opp. at 22. But as discussed *supra* at Section II.A.2, these conditions—which are more than mere wording changes—impose requirements that reflect the Administration's new interpretations of federal law that go well beyond what recipients have traditionally agreed to in the past.[11] "Accordingly, the [Unlawful DHS Conditions] reflect changes in agency position which require not only an explanation of reasoning but also consideration of reliance interests among other important factors." *Fresno*, 2025 WL 2721390, at *8. The record here provides no support for either, other than attorney argument, which is not evidence. *See Carrillo-Gonzalez v. I.N.S.*, 353 F.3d 1077, 1079 (9th Cir. 2003). *Second*, Plaintiffs' reliance interests are not in their ability to violate existing law, as Defendants bafflingly claim. Opp. at 22-23. Instead, Plaintiffs rely on their ability to secure this critical funding for key public safety programs, year over year, without being suddenly subject to unauthorized and unconstitutional conditions, and Defendants' actions are detrimental to Plaintiffs' ability to keep their communities safe. Defendants' flippant

---

[10] *See generally Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002) ("statutory reference point" supports judicial review); *Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1038 (9th Cir. 2013) (lack of specific language made action unreviewable); *Serrato v. Clark*, 486 F.3d 560, 568-69 (9th Cir. 2007) (funding from lump-sum appropriation that did not indicate how it was to be used); *Policy & Research, LLC v. United States HHS*, 313 F. Supp. 3d 62, 75-78 (D.D.C. 2018) (terminating and recompeting funding was committed to agency discretion).

[11] Defendants also ignore their own regulations requiring them to clarify why a condition is being imposed prior to doing so. *See* 2 C.F.R. § 200.208(a).

statement that Plaintiffs' harm is "self-inflicted" only underscores the absence of *any* reasoning and *any* balancing of interests that is core to the APA. Since Defendants have failed to provide any reasoned explanation for their change in policy or disregard of Plaintiffs' reliance interests, the Unlawful DHS Conditions are arbitrary and capricious. *Fresno*, 2025 WL 2721390, at *9; *King Cnty.*, 785 F.Supp.3d at 888-89; *Illinois v. FEMA*, No. 25-206 WES, 2025 WL 2716277, at *12 (D.R.I. Sept. 24, 2025).

## III.    Plaintiffs Will Suffer Immediate and Irreparable Harm Absent Relief.

Once again, Defendants' Opposition misconstrues Plaintiffs' claims in contending that Plaintiffs have not established a likelihood of immediate and irreparable harm. The crux of the Opposition rests on the mistaken view that the harms Plaintiffs seek to redress are purely economic. Opp. at 23. However, Defendants have put Plaintiffs in an impossible position of having to choose between accepting unconstitutional conditions, or risk losing the hundreds of millions of dollars in federal funding Congress appropriated for Plaintiffs *to use to protect their communities*.[12] "This choice causes irreparable harm because the Grant Conditions likely violate" various constitutional principles and "deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Fresno*, 2025 WL 2721390, at *19 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)). If Plaintiffs do accept unlawful conditions, they are subject to this constitutional injury and are still at risk of arbitrary enforcement and legal liability under the FCA.[13] If Plaintiffs refuse to accept this constitutional injury and risk, they face concrete, imminent, and irreparable harms that this Court has deemed sufficient in other cases. *See City & Cnty. of S.F. v. Trump*, 783 F. Supp. 3d 1148, 1202 (N.D. Cal. 2025). Plaintiffs face extreme budgetary uncertainty which is amplified by Defendants' conduct. Mot. at 23. Public safety upgrades and initiatives will be lost, community trust will be hampered, layoffs will occur, procurement and management of public safety initiatives are already hamstrung,

---

[12] Defendants misquote Plaintiffs' Motion and omits references to community safety concerns. *Compare* Mot. at 23:7-8 *with* Opp. at 24:5-6.

[13] Defendants' assertion that FCA liability is not relevant to ambiguity, *see* Opp. at 16, misstates the import of the FCA here. By requiring Plaintiffs to certify ambiguous conditions while threatening to wield the FCA as a "weapon," *see* Mot. at 15, Defendants compound Plaintiffs' injury by purposefully exposing them to taxing investigations and litigation, and the risk of treble damages, merely for accepting funds to protect their communities. *See Fresno*, 2025 WL 2721390, at *17 (crediting that concern).

initiatives protecting the most vulnerable will be sacrificed, and critical infrastructure will be more exposed. *Id.* at 23-24. Defendants' argument that Plaintiffs' "recourse is to decline the funds" strains credulity—especially where Congress has appropriated billions of dollars to *support* local disaster preparedness and emergency response to prevent and mitigate harms in the first place. *See FEMA*, 2025 WL 2716277, at *1. With the safety of their residents, communities, and first responders on the line, Plaintiffs have no such recourse, and instead face two "untenable options" without relief from this Court. *King Cnty.*, 785 F. Supp. 3d at 889-90.

## IV.    The Equities Weigh Strongly in Plaintiffs' Favor.

"[T]he public interest is served by giving Plaintiffs the budgetary clarity needed to deliver key public services to their constituents," which includes public safety. *Fresno*, 2025 WL 2721390, at *19. It is also "always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (cleaned up); *see also Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). Defendants' contention that relief will disrupt "ongoing consideration of grant applications" and risk non-repayment lacks any evidence or explanation. Opp. at 24. Nor is there any indication that Plaintiffs are violating antidiscrimination law, and so, according to Defendants, there is little risk that they will be harmed by enjoining the Unlawful DHS Conditions. Moreover, Defendants ignore Plaintiffs' evidence showing that the funding Plaintiffs seek to protect *actually benefits* Defendants by carrying out federal goals and public safety interests. Mot. at 25.

## V.    Plaintiffs' Prohibitory Preliminary Injunction is Narrow and Appropriately Tailored.

While Plaintiffs submitted a proposed order outlining their requested relief (ECF No. 19-49), Defendants have neither objected to the terms proposed by Plaintiffs nor cited any law inconsistent with Plaintiffs' proposal. The prohibitory injunctive relief that Plaintiffs seek is narrowly tailored to the harms caused by Defendants' imposition of new unlawful and ambiguous conditions without the authority to do so and is necessary to preserve the status quo "*before* the controversy arose." *Ariz. Dream Act Coal.*, 757 F.3d at 1061 (cleaned up) (emphasis added).

Any effective relief must enjoin Defendants from imposing or enforcing the challenged conditions against Plaintiffs in any circumstance, whether the condition is present in a pending or future grant award, existing programs using grant funds, or in a future grant application. As one court

recently held, "[t]o require instead, as the Government requests, that each Plaintiff specifically identify every grant which may be implicated is backwards because Plaintiffs are injured specifically by the uncertainty and broadness of the Grant Conditions' meaning and reach." *Fresno*, 2025 WL 2721390, at *20. Indeed, even in the weeks this case has been pending, Defendants have already issued another NOFO for the benefit of several Plaintiffs that contains the Unlawful DHS Conditions consistent with Defendants' policy, which Plaintiffs' proposed relief should and would reach.[14] To the extent Defendants argue that preliminary relief should be limited to the "present Plaintiffs," Defendants' position is too narrow. Defendants require Plaintiffs to pass on and police the Unlawful DHS Conditions to subrecipients and police subrecipients' conduct under those terms. Thus, relief to Plaintiffs' subrecipients is part and parcel of the complete relief needed for Plaintiffs. *See King Cnty.*, 785 F. Supp. 3d at 893-94 (including subrecipients). Similarly, relief needs to extend to those working in concert with Defendants to carry out the grant programs. *Id.*; *Fresno*, 2025 WL 2721390, at *20.

## VI. The Court Should Not Require A Bond.

The Court should deny Defendants' cursory request for a bond since it fails to articulate any harm from not imposing one. Opp. at 25. The public interest also favors an order enjoining the new unlawful conditions without undermining the protections of such an order with a bond or stay. *See City & Cnty of S.F.*, 783 F. Supp. 3d at 1203; *King Cnty.*, 785 F. Supp. 3d at 893. Alternatively, to the extent necessary, only a nominal bond should issue. *See, e.g.*, *Fresno*, 2025 WL 2721390, at *20 (imposing $100).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue a preliminary injunction enjoining Defendants as further specified in Plaintiffs' proposed order (*see* ECF No. 19-49).

---

[14] On October 28, FEMA issued a NOFO for the FIFA World Cup Grant Program, which will distribute Congressional appropriations to 2026 World Cup host locations. Supp. RJN Exs. 13-14. FEMA anticipates issuing $625 million to 11 Host City Committee Task Forces—including in Los Angeles and the Bay Area—which must be distributed to local governments. Recipients must comply with Unlawful DHS Conditions. *Id.* at 4, 22, 28. Several Plaintiffs will host World Cup events. *E.g.*, Reed Decl. ¶ 29; Chavez Decl. ¶ 3.

Dated:  November 4, 2025

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TONY LOPRESTI
County Counsel
KAVITA NARAYAN
Chief Assistant County Counsel
MEREDITH A. JOHNSON
Lead Deputy County Counsel
RAPHAEL N. RAJENDRA
HANNAH M. GODBEY
Deputy County Counsels

By:  /s/Raphael N. Rajendra
RAPHAEL N. RAJENDRA
Deputy County Counsel

Attorneys for Plaintiff
COUNTY OF SANTA CLARA


DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
MOLLIE M. LEE
Chief of Strategic Advocacy
SARA J. EISENBERG
Chief of Complex and Affirmative Litigation
DAVID S. LOUK
STEVEN A. MILLS
Deputy City Attorneys

By:  /s/Steven A. Mills

STEVEN A. MILLS
Deputy City Attorney

Attorneys For Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

By: /s/Sharanya Mohan

SHARANYA (SAI) MOHAN (SBN 350675)
ERIN MONJU**
NAOMI TSU**
TOBY MERRILL**
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
Tel: (510) 738-6788
sai@publicrightsproject.org
erin@publicrightsproject.org
naomi@publicrightsproject.org
toby@publicrightsproject.org

Attorneys for Plaintiffs CITY OF ALAMEDA, CITY OF
BELLINGHAM, CITY OF BERKELEY, CITY OF
CULVER CITY, KING COUNTY, COUNTY OF LOS
ANGELES, LOS ANGELES COUNTY FIRE
PROTECTION DISTRICT, COUNTY OF MARIN,
CITY OF OAKLAND, CITY OF PALO ALTO, CITY
OF PASADENA, CITY OF PETALUMA, PIERCE
COUNTY, CITY OF SACRAMENTO, CITY OF SAN
DIEGO, SAN DIEGO COUNTY, CITY OF SAN JOSE,
COUNTY OF SAN MATEO, CITY OF SANTA
MONICA, CITY OF SANTA ROSA, COUNTY OF
SONOMA, SONOMA COUNTY WATER AGENCY,
SONOMA VALLEY COUNTY SANITATION
DISTRICT, SONOMA COUNTY COMMUNITY
DEVELOPMENT COMMISSION, SNOHOMISH
COUNTY, CITY OF TUCSON


YIBIN SHEN
Alameda City Attorney

By: /s/Cara Silver

YIBIN SHEN (SBN 233545)
CARA SILVER (SBN 136992)
Special Counsel
DANIEL J. TURNER (SBN 336499)
Deputy City Attorney
2263 Santa Clara Avenue, Rm 280
Alameda, CA 94501
Tel: (510) 747-4750
yshen@alamedaca.gov
csilver@alamedaca.gov
dturner@alamedaca.gov

Attorneys for Plaintiff
CITY OF ALAMEDA

1

FARIMAH F. BROWN
Berkeley City Attorney

2

By: /s/Katrina Eiland

3

FARIMAH F. BROWN (SBN 201227)
City Attorney

4

KATRINA L. EILAND (SBN 275701)
Deputy City Attorney

5

STEPHEN A. HYLAS (SBN 319833)
Deputy City Attorney

6

2180 Milvia Street, Fourth Floor
Berkeley, CA 94704

7

Tel: (510) 981-6998
Fax: (510) 981-6960

8

fbrown@berkeleyca.gov

9

keiland@berkeleyca.gov
shylas@berkeleyca.gov

10

Attorneys for Plaintiff

11

CITY OF BERKELEY

12

13

LEESA MANION
King County Prosecuting Attorney

14

By: /s/David J. Hackett

15

DAVID J. HACKETT*
Executive General Counsel

16

ALISON HOLCOMB*
Deputy Executive General Counsel

17

Special Deputy Prosecuting Attorneys
Chinook Building

18

401 5th Avenue, Suite 800
Seattle, WA 98104

19

Tel: (206) 477-2720
David.Hackett@kingcounty.gov

20

aholcomb@kingcounty.gov

21

Attorneys For Plaintiff

22

MARTIN LUTHER KING, JR. COUNTY

23

24

25

26

27

28

1    HYDEE FELDSTEIN SOTO
     Los Angeles City Attorney

2
     By: /s/Michael J. Dundas

3        MICHAEL J. DUNDAS (SBN 226930)
         Chief Assistant City Attorney

4        JOSHUA M. TEMPLET (SBN 267098)
         Deputy City Attorney

5        Office of the Los Angeles City Attorney
         200 North Main Street, Room 800

6        Los Angeles, CA 90012
         Tel: (213) 978-8100

7        mike.dundas@lacity.org
         joshua.templet@lacity.org

8
         Attorneys For Plaintiff

9        CITY OF LOS ANGELES

10
     By: /s/Thomas J. Faughnan

11       THOMAS J. FAUGHNAN (SBN 155238)
         Senior Assistant County Counsel

12       BRIGIT GREESON ALVAREZ (SBN 237301) Deputy
         County Counsel

13       Office of the County Counsel
         648 Kenneth Hahn Hall of Administration

14       500 West Temple Street
         Los Angeles, CA 90012-2713

15       Tel: (213) 681-0408
         Tfaughnan@counsel.lacounty.gov

16       Bgreesonalvarez@counsel.lacounty.gov

17       Counsel for Plaintiffs

18       COUNTY OF LOS ANGELES and
         LOS ANGELES COUNTY CONSOLIDATED FIRE

19       PROTECTION DISTRICT

20
         BRIAN E. WASHINGTON

21       Marin County Counsel

22   By: /s/Kate K. Stanford

23       KATE K. STANFORD (SBN 302825)
         Deputy County Counsel

24       EDWARD F. SEARS (SBN 297775)
         Deputy County Counsel

25       3501 Civic Center Drive, Suite 275
         San Rafael, CA 94903

26       Tel: (415) 473-6117
         kate.stanford@marincounty.gov

27
         Attorneys for Plaintiff

28       COUNTY OF MARIN

RYAN RICHARDSON
Oakland City Attorney

By: /s/Ryan Richardson
    RYAN RICHARDSON (SBN 223548)
    City Attorney
    MARIA BEE (SBN 167716)
    Chief Assistant City Attorney
    JAIME HULING DELAYE (SBN 270784) Supervising
    City Attorney
    H. LUKE EDWARDS (SBN 313756)
    Deputy City Attorney
    DIVYA MUSINIPALLY (SBN 316114)
    Deputy City Attorney
    One Frank H. Ogawa Plaza, 6th Floor
    Oakland, California 94612
    Tel: (510) 238-3836
    Fax: (510) 238-6500
    ledwards@oaklandcityattorney.org

    Attorneys for Plaintiff
    CITY OF OAKLAND


MOLLY S. STUMP
City Attorney

By: /s/Mark Vanni
    MOLLY S. STUMP (SBN 177165)
    City Attorney
    CAIO A. ARELLANO (SBN 262168)
    Chief Assistant City Attorney
    MARK J. VANNI (SBN 267892)
    Assistant City Attorney
    CITY OF PALO ALTO
    250 Hamilton Ave., 8th Floor
    Palo Alto, CA 94301
    Tel: (650) 329-2171
    Fax: (650) 320-2646
    Molly.Stump@PaloAlto.gov
    Caio.Arellano@PaloAlto.gov
    Mark.Vanni@PaloAlto.gov

    Attorneys for Plaintiff
    CITY OF PALO ALTO

ERIC DANLY
City Attorney

By: /s/Eric Danly
ERIC DANLY (SBN 201621)
City Attorney
11 English Street
Petaluma, CA 94952
Tel: (707) 778-4362
EDanly@cityofpetaluma.org

Attorney for Plaintiff
CITY OF PETALUMA


MARY E. ROBNETT
Pierce County Prosecuting Attorney

By: /s/Jonathan R. Salamas
JONATHAN R. SALAMAS (WSBA # 39781)
Deputy Prosecuting Attorney / Civil**
930 Tacoma Avenue South, Suite 946
Tacoma, WA 98402-2102
Tel: 253-798-4862
Fax: 253-798-6713
jonathan.salamas@piercecountywa.gov

Attorney for Plaintiff
PIERCE COUNTY


SUSANA ALCALA WOOD
Sacramento City Attorney

By: /s/Katherine Underwood
ANDREA VELASQUEZ (SBN 249210)
Supervising Deputy City Attorney
KATHERINE UNDERWOOD (SBN 249308)
Senior Deputy City Attorney
915 I St Fl 4, Sacramento, CA 95814-2621
Tel: 916-808-5346
Fax: 916-808-7455
AVelasquez@cityofsacramento.org
KUnderwood@cityofsacramento.org

Attorneys for Plaintiff
CITY OF SACRAMENTO

HEATHER FERBERT
San Diego City Attorney

By: /s/Julie Rau
JEAN JORDAN (SBN 155009)
Acting Assistant City Attorney

JULIE RAU (SBN 317658)
Deputy City Attorney
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
Tel: (619) 533-5800

Attorneys for Plaintiff
CITY OF SAN DIEGO

NORA FRIMANN
San José City Attorney

By: /s/Elisa Tolentino
NORA FRIMANN (SBN 93249)
City Attorney
ELISA TOLENTINO (SBN 245962)
Chief Deputy City Attorney
200 E Santa Clara St., 16th Floor
San José, CA 95113-1905
Tel: 408-535-1900
Fax: 408-998-3131
cao.main@sanjoseca.gov

Attorneys for Plaintiff
CITY OF SAN JOSÉ

JOHN D. NIBBELIN
San Mateo County Counsel

By: /s/John D. Nibbelin
John D. Nibbelin (SBN 184603), County Counsel
Rebecca M. Archer (SBN 202743), Chief Deputy
Lauren F. Carroll (SBN 333446), Deputy
Savannah Eldridge (SBN 357723), Deputy
500 County Center, 4th Floor
Redwood City, CA 94063
Tel: (650) 363-4250
jnibbelin@smcgov.org
rmarcher@smcgov.org
lcarroll@smcgov.org
seldridge@smcgov.org

Attorneys for Plaintiff
COUNTY OF SAN MATEO

1    TERESA L. STRICKER
     Santa Rosa City Attorney
2
     By: /s/Teresa L. Stricker
3    _____
     TERESA L. STRICKER (SBN 160601)
4    City Attorney
     AUTUMN LUNA (SBN 288506)
5    Chief Assistant City Attorney
     HANNAH E. FORD-STILLE (SBN 335113)
6    Deputy City Attorney
     100 Santa Rosa Ave, Room 8
7    Santa Rosa, CA 95404
     Tel: (707) 543-3040
8    tstricker@srcity.org
     aluna@srcity.org
9    hfordstille@srcity.org

10   Attorneys for Plaintiff
     CITY OF SANTA ROSA
11

12
     JASON J. CUMMINGS
13   Snohomish County Prosecuting Attorney

14   By: /s/Bridget E. Casey
     _____
15   BRIDGET E. CASEY**
     REBECCA J. GUADAMUD**
16   REBECCA E. WENDLING**
     Snohomish County Prosecuting Attorney's Office
17   3000 Rockefeller Avenue, M/S 504
     Everett, WA 98201-4046
18   Tel: (425) 388-6392
     bcasey@snoco.org
19   rebecca.guadamud@co.snohomish.wa.us
     rwendling@snoco.org
20
     Attorneys for Plaintiff
21   SNOHOMISH COUNTY

22

23

24

25

26

27

28

ROBERT H. PITTMAN
Sonoma County Counsel

By: /s/Joshua A. Myers
JOSHUA A. MYERS (SBN 250988)
Chief Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, California 95403
Tel: (707) 565-2421
Fax: (707) 565-2624
joshua.myers@sonomacounty.gov

Attorney for Plaintiff
COUNTY OF SONOMA, SONOMA COUNTY
WATER AGENCY, SONOMA VALLEY COUNTY
SANITATION DISTRICT, SONOMA COUNTY
COMMUNITY DEVELOPMENT COMMISSION

*Application forthcoming for admission *pro hac vice*
**Application for admission *pro hac vice* granted

# FILER'S ATTESTATION

I, STEVEN A. MILLS, am the ECF user whose identification and password are being used to file this Reply in Support of Motion for Preliminary Injunction.  Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.

Dated:  November 4, 2025

By: /s/Steven A. Mills
STEVEN A. MILLS